ORIGINAL

June 05, 2006

Jeffrey D. Moffatt, Attorney
Attorney Leroy D. Pope, Petitioner
43625 N Sierra Hwy, Suite A
Lancaster CA 93534
(661) 945-6121
FAX (661) 945-3019
EMAIL: Jeffreymbajd@hotmail.com
Ref: AR 20050009400

FILED
JUN - 6 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LEROY D. POPE
Petitioner

V.

No. 06-446 C

SECRETARY OF VETERANS AFFAIRS, DEPARTMENT OF THE ARMY
Respondent

COMPLAINT

**CONSTITUTIONAL VIOLATION/ CORRECT/REINSTATE MILITARY RECORDS/BACKPAY AND CORRECTION OF INJUSTICES TO SERGEANT FIRST CLASS LEROY D. POPE**

**Opening Statement**

This complaint is to correct/reinstate military records for Separation of Sergeant First Class Leroy D. Pope, *(referred through out this document as SFC. Pope,):* retroactive from 31 August *2000.* This suit is also seeking back pay and correction of injustices suffered by SFC. Pope for the wrongful discharge, as well as the failure to abide by Military, Federal and State

Due process requirements, as well as the U.S. Governments failure to abide by regulatory and statutory requirements. This case is also based on Constitutional violations.

## 1. COURT REVIEW OF AN ARMY DISCHARGE BOARD

Court review of an Army Discharge Review Board, may be reviewed under the standards of the Administrate Procedure Act (arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and unsupported by substantial evidence on the whole record; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law) in the U.S. Court of Federal Claims 28.U.S.C.S 1346 (a)(2) ("Little Tucker act) and 149(a)(1) (" Big Tucker Act'). Jurisdiction in the U.S. Court of Federal Claims is possible since more than $400,000.00 for back pay, veterans' benefits, disability and other issues subject to remuneration exist.

## 2. INJUSTICES THAT SFC. POPE ENDURED WHILE ON ACTIVE DUTY

A few of these injustices range from SFC. Pope: **(1).** Not being present during a non-judicial Separation proceedings on or about 05 June 2000 **(2).** Separation proceedings, which took place during the time that SFC. Pope was on Line of Duty (LOD), due to injuries SFC. Pope sustained **(3).** False allegations made against SFC. Pope in the year of 2000, by a disgruntled "rejected" applicant of April 1997, among other things.

## 3. SUMMARY OF CASE

In February, 2006 a hearing in front of the Army Discharge Review Board was finally obtained. Despite Petitioner showing a recantation of claim from the Army's only supposed

witness, the Army Discharge Board held against Petitioner. The Army Discharge Review Board in their decision made a comment that records were incomplete to substantiate the allegations against Petitioner. The records were so incomplete as to be totally devoid of proof of the allegations against Petitioner. Despite this fact, the Army Discharge Review Board acted as a rubber stamp of the prior illegal and unlawful conduct. Although Petitioner can appeal this denial, because of the six year statute of limitations running on this case, and the inability for an appeal to have the power to grant back pay, it is prudent to make the case in the U.S. Court of Federal Claims.

## 4. STATUTE OF LIMITATIONS HAS NOT EXPIRED

Petitioner was dismissed from the Military effective 8/31/2000 by a document dated 6/29/2000. This request is being made within 6 years of the dismissal; as such this case is within the statute of limitations.

## 5. JURISDICTION

This case is being brought under the Tucker Act, 28 U.S.C. 1491 (1988) since this is a case partially revolves around suit for money which is founded upon (1) the Constitution, (2) an act of Congress, (3) an Executive Order, (4) a regulation of an Executive Department, or (5) any express or implied –in-fact contract wit the United States. Members of the Uniformed services claiming entitlements to military pay or other compensation for services actually performed can bring suit under the Tucker act, 28 U.S.C. 1491(a)(1)(1992).

**6. VETERAN'S DISABILITY BENEFITS**

Petitioner was serving on Active service as a reservist, and since Petitioner was disabled in the Line of Duty Veterans Benefits should be available to Petitioner. 38 U.S.C.S. 101(16); 38 C.F.R. 3.1 (k), 3.303(a) (2005). Given that the Country was preparing to enter a war footing, at the date of Petitioner's injury and later discharge, Petitioner will argue that this discharge occurred during a time of War. War was planned according to the Downing Street Memo as well as the Federal Energy Regulatory Commission. Decision documents planning for a takeover of Iraq, signed well before 8/2001, since the policy was discussed 5/17/2001, and the private discussions were made before the public statement in May.

Even if the injury is not deemed to have occurred during war time, because the injury happened while Petitioner was doing his military duties, the injury in the Line of Duty still satisfies the in line of duty requirement of 38.C.F.R. 3.303, 3.304 (2005).

Petitioner was discharged while still on a Leave of Disability from both the Army Reserve and the National Guard. This wrongful discharge resulted in a denial of benefits for my clients injury which was service related. The denial of medical benefits to a service Member violates Title 38, of the U.S.C. As soon as the discharge took place, Petitioner was denied access to the medical treatment he was receiving while on Active Service as a reservist, and LOD under the National Guard. This denial of treatment has caused Petitioner to continue to suffer medical complications through the present day.

7. <u>TIME OF WAR, BASED ON USS COLE</u>

On Oct. 12, 2000, the guided missile destroyer USS Cole pulled into harbor for refueling in

Aden, Yemen. Less than two hours later, suicide bombers Ibrahim al-Thawr and Abdullah al-Misawa approached the ship's port side in a small inflatable craft laden with explosives and blew a 40-by-40-foot gash in it, killing 17 sailors and injuring 39 others. If Petitioner would have been given his requested due process hearings, in 2000, he would have still been in the Military as of the Cole Bombing, which started the war on terror we, in the United States, have entered a war footing on. Because of this, Petitioner argues that the United States was on a war footing during which time he should have had due process hearings, if he were not railroaded out of the service. This war footing, allows Petitioner to argue that because of the War footing, and the eventual call of individuals Petitioner recruited for active duty, Petitioner's activities have a nexus with active service.

8. SPECIAL COMPENSATION

Under 10 U.S.C. Section 1413(a) Petitioner would qualify for twenty-five (25) years of service if Petitioner were not discharged, as well as qualify for a disability that is compensable under the laws of the Secretary of Veterans Affairs and (b) while engaged in hazardous service Petitioner was injured. Because of the erroneous discharge, Petitioner must wait for retirement until Petitioner reaches age sixty-five (65). Petitioner was injured in an Auto Collision on the streets of California, one of the most hazardous places to drive in the country. Petitioner was found not at fault by the law enforcement authorities of the cause of the auto collision. As such, Petitioner should be able to request Special Compensation under 10. U.S.C. S. Section 1413(a).

**9. MILITARY PAY**

This case is being requested for a (1) statutory and regulatory challenge to a service member's involuntary retirement, separation, or discharge; (2) claim for military retirement benefits; (3) challenge to imposition of certain non-judicial punishment for minor offenses, 38 CFR 3.451 Our authority to provide relief in this matter is governed by the terms of the Back Pay Act, 5 U.S.C. § 5596 (1976). The Act provides that on correction of an erroneous personnel action an employee of an executive agency of the federal government is entitled to receive "an amount equal to all or any part of the pay, allowances, or differentials, that the employee normally would have earned, **Polos v. United States, 231 Ct. Cl. 929.**

**10. ENLISTED PERSONNEL CLAIM**

The challenged adverse personnel action was grounded in either a statutory or regulatory violation; therefore this case satisfies Brigante v. United States, 35 Fed. Cl. 526, 529 (1996). Because Petitioner was dismissed early, this satisfies the requirements of Dodson, 988 F.2d at 1203-04 where an enlisted member's separation prior expiration of term of service is invalid solely if it (1) exceeds applicable statutory authority: (2) ignores procedural regulations to detriment of service member; or (3) violates minimum concepts of due process or basis fairness. Petitioner believes that his case satisfies one if not all three of these criteria.

Given that Petitioner was a member of the Army Reserve and the California National Guard; Petitioner is protected by the maxim, that the release from service must not violate service regulations or the Federal Constitution. 10 U.S.C. 681(a) (1992): Woodward v. United States, 871 F.2d 1068, 1072( Fed Cir. 1989). Since Petitioner's discharge did violate service

regulations as well as the Federal Constitution, Petitioner has standing.

**11. RETIREMENT BENEFITS AND OR SEVERANCE PAY**

SFC Pope, Petitioner, was injured while on active, and on LOD prior to his dismissal from the military. Petitioner never received a release from his treating military doctor, prior to the involuntary discharge. As such, he was injured while on active duty, and the Court of Federal Claims possess jurisdiction to entertain Secretary's decision not to appoint Petitioner to a disability list, 10 U.S.C. 1201-21 (1992); Sawyer v. United States, 930 F. 2d 1577.

**12. JURISDICTION FOR ADVERSE ACTIONS TAKEN UNDER THE UCMJ**

Under Burns v. Wilson, 346 U.S. 137 (1953), since Petitioner has exhausted all of his administrative remedies, the Court of Federal Claims may entertain collateral attacks for adverse actions taken, under the Uniform Code of Military Justice.

**13. UNLAWFUL SEPARATION.**

In United States v. Wickersham, the United States Supreme Court held that a civilian employee's unlawful separation did not terminate his right to continue receiving statutory pay and allowances. Upon this basis, certain members of the Armed Forces may claim they have been unlawfully separated from the military and, consequently, have been denied military pay and allowances to which they are entitled. Id at 399-400.

**14. NATIONAL GUARD.**

Under certain circumstances, members of the National Guard may seek federal benefits to which they are entitled. Dehne, 970 F. 2d at 890.

## 15. MISCELLANEOUS STATUTES

The Court of Federal Claims possesses jurisdiction to determine the amount, if any, due to or from the United States by reason of any unsettled account of any officer or agent of, or contractor with, the United States, or a guarantor, surety, or personal representative of any such officer, agent, or contractor. 28 U.S.C. 1494, 2511 (1988).

Because the discharge from the California National Guard, while Petitioner was disabled and precluded from discharge, effects Petitioner's ability to qualify for Federal Retirement prior to age 65 from the Federal Government, whom is a guarantor of Petitioner's benefits for Federal Retirement.

## 16. NATIONAL GUARD EXCEPTION

Given that Petitioner's unit was activated for Federal Service, and the recruits that Petitioner was hired to obtain are now in Federal Service, not State Service, the Federalization of Petitioner's unit and of recruits Petitioner would have brought in, gives Federal Court of Claims jurisdiction. Given that President Bush, has made an executive Order, outside the consent of various State Governors to use National Guard Troops for Federal Boarder Patrol, as of the date of filing this Petition, this executive act shows that National Guards have now been federalized and have jurisdiction under the Federal Court of Claims.

## 17. CONSTITUTIONAL VIOLATIONS

Petitioner has been denied his Due process rights under both the 14th and 5th Amendments, by

Petitioner being discharged without being provided a proper hearing. Petitioner has also been denied his First Amendment rights freedom of expression and freedom of association. Petitioner has also been denied his Constitutional rights, by the unlawful taking of Petitioner's property including, but not limited to early retirement, disability benefits for the injuries Petitioner suffered while on duty, as well as the lost income Petitioner would have received if he had not been wrongfully discharged.

**18. SEVERAL VIOLATIONS SUFFERED BY PETITIONER**

1. NGR 600-5 dated 2-20-90 Chap 6-2 (a) (Line of Duty)
2. NGR 600-5 dated 2-20-90 Chap 6-5 (b) (JAG Assistance)
3. U.S.C. Title 32 dated 2004 Sec 842 Art 43 (Statue of Limitation)
4. AR 340-21 Privacy Act (Probable Causes)

**19. CONSENT FOR SUIT**

*Murphy* v. *United States*, 45 F.3d 520, 522 (1st Cir. 1995). The United States has consented, in the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.*, to be sued for damages for personal injury caused by "the negligent or wrongful act or omission" of a federal employee "while acting within the scope of his employment," provided that in the same circumstances a private employer would be liable for the acts of his employee under the local law. 28 U.S.C. §§ 1346(b), 2674, 2675(a). No explicit exception bars claims by or against military personnel.

**20. Background of Events**

On or about 22 September 2004, a Request for "Reconsideration" letter was sent to the California National Guard Adjunct General, 9800 Goethe Rd, Sacramento, CA 95826-9101.

Eventually, my office received a response from COL. Weir, claiming no acts of errors or omissions for the involuntary Separation of SFC. Pope Title 32, AGR/ARNG resulting in the August 2000 separation had occurred.

Amazingly, the Adjunct General acknowledges that Colonel William Francis Weir *(referred through out this document as COL. Weir)* would be responding to my inquiry of 22 September 2004. Thus, 15 October 2004, I responded with a written letter requesting that COL. Weir recuse himself with the matter as it relates to SFC. Pope, due to the "conflict of interest," which exists.

On or about 6 April 2000, Daniel T. Smith, LTC Recruiting Commander *(referred though out this document as LTC. Smith)* recommended the Separation of SFC. Pope, from the AGR Program for not good cause. LTC. Smith alleged three allegations against SFC. Pope, which were as follows:

(1) "Recruiting improprieties, which included an arrest for domestic violence (later dismissed);" **(DA Rejected, based on false domestic violence report).**

(2) "Abusing GSA vehicle privileges."

(3) "Living with and having sexual relations with an applicant;"

On or about 6 April 2000, LTC. Daniel T. Smith Recruiting Commander, *(referred through out this document as LTC. Smith),* forwarded DA form 2823 Separation papers sworn statement to COL. Weir, who acted as the presiding military judge for a sham non-judicial Separation proceedings of SFC. Pope.

SFC. Pope's Separation was based on three alleged offenses. These documents show SFC. Pope was not provided with a Judge Advocate General (JAG) Lawyer or outside counsel to assist SFC. Pope, with defending the allegations made against him.

Also, documents will show that SFC. Pope did not waive any of his rights to Military Due processes and even if COL. Weir, acting as the Judge had asked SFC. Pope, to waive his rights, this waiver would have not been a legitimate waiver. However, since COL. Weir, took on the position to act as military judge he was then responsible for ensuring military "Due Process" was met and that he was not violating military due processes guaranteed to SFC. Pope.

Additionally, LTC. Smith and COL. Weir reviewed the Separation request and failed to request any corrections from the official company commander. Both LTC. Smith and COL. Weir failed to submit a corrective action plan and proceeded with the "sham" non-judicial proceeding. Along with, accelerating SFC. Pope's Separation from the Military. An extremely strange result for a nearly 20 year veteran whom was distinguished, decorated, on LOD and not medically released and has never received any negative NCOR's.

On or about April 2000, LTC. Smith and COL. Weir reviewed allegations number one through three in secret without JAG, outside counsel or SFC. Pope's presence. When MAJ. Thompson, JAG, initially looked at the matter, according to SFC. Pope, MAJ Thompson stated even if the acts occurred, which they did not; the claim was from 1997 and statutorily

barred from initiating any proceedings in 2000.

MAJ Thompson started from a position of amazement regarding unfounded allegations, given that they were not sworn statements in the claimant's hand writing, the claimant was not a military member, and the stale causes of action. Maj. Thompson then took a subsequent position to totally remove himself from the case, to not return calls and to not protest the sham that was taking place, upon pressure from LTC. Smith and COL. Weir

It was as if MAJ. Thompson was advised to get out of the way of the railroad forced retirement of my client SFC. Pope. The allegation were by a by a disgruntled military "rejected" applicant as of April 1997, who filed a false Domestic Violence report on or about in November 1999, against SFC. Pope. This rejected applicant stated she had never received counseling for mental issues, yet after a waiver was submitted for criteria consideration this rejected applicant admitted to prior psychological counseling. Therefore, the military had a record of mental issues prior to the filing of the false Domestic Violence Report. In addition, this rejected applicant of 1997 had been discharged from Harbor Mental Medical Center, the same month she was requested to make the allegations to Msgt. Steward, against SFC. Pope. Despite the allegations being tainted by the arguable claimant because of her known psychological issues, these three-year old allegations cannot be used against SFC. Pope in 2000, according to "USC Title 32 Sec S4~, Art 43 dtd 1-10-2004" which provide for a two year cut off.

On or about April 2000, LTC. Smith and COL. Weir, reviewed allegation number two also conducted in secret without JAG, outside counsel or within SFC. Pope's presence.

COL. Weir subsequently conducted a subsequent sham non-judicial/Administrative proceeding without the ability of SFC. Pope to have proof of his innocence brought in front of the sham hearing. COL. Weir indicated in his letter Nov 2004 that SFC. Pope did not have an attorney or legal counsel on record, essentially establishing that SFC. Pope was going to the proverbial lions den, without the aid of counsel. SFC. Pope was also denied the ability to assert documents showing his innocence. SFC. Pope was denied access to his own hearing, as the hearing was conducted in secrecy.

LTC. Smith and COL. Weir subsequently proceeded with DA form, 2823 unverified statement, which had several discrepancies that were not corrected before being admitted as admissible material evidence documents in a non-judicial proceeding against SFC. Pope. Again, LTC. Smith and COL. Weir refused to allow counsel in the non-juridical hearing and failed to make correction on separation causes according to military requirements.

**<u>21. Allegation Number One</u>**

LTC. Smith alleges SFC. Pope, "Recruiting improprieties which included arrest for domestic violence (later dismissed), as justification for SFC Pope's Separation. *Separated 31 August 2000.*

SFC Pope was never charged or criminally prosecuted by the civilian District Attorneys Office as it related to a civilian matter regarding a false report of Domestic Violence filed against SFC. Pope, November 1999.

On or about November 16,1999 Master Sergeant David E. Steward Jr., Recruiting NCOIC, initiated a call to a female civilian and asked if she would make a statement against a SFC. Pope. On or about November 17, 1999 a statement was prepared and typed by Msgt. Steward. This statement was not in the rejected applicant's handwriting, she only signed the prepared Msgt Steward document according to her subsequent statements. This rejected applicant now rejects the statement Msgt. Steward prepared against SFC. Pope.

Msgt. Steward's action initiated a solicited sworn statement and his error made ARNG the accused and this female civilian the witness. Also SFC. Popes did not have a prior statement or any prior alleged offences against him. This solicitation by Msgt. Steward to the civilian requesting a statement without establishing probable cause violated the Privacy Act.

Msgt. Steward, in fact signed the "Sworn Statement" as the person Administering the Oath, when in fact Steward, was not "appointed as investigating officers under article 32(b) of the Uniform Code of Military Justice (UCMJ)," to perform this judicial function.

The "Sworn Statement" authorized under AR 190-45, by SFC. Pope's accuser (non-military personnel) was never perfected under penalty and perjury of military law. Additionally the accuser did not swear to the charges under the "Sworn Statement" and the charges were not perfected before a commissioned officer authorized to administer an oath as required under Section 936 Article 136, UCMJ; R.C.M. 307. The lack of authenticity is compounded by the rejected applicant's position that the allegations contained in the supposedly "Sworn

Statement" are not accurate.

The "Sworn Statement" by SFC. Pope's accuser (non-military personnel), was not perfected in the accusers own handwriting, which gives rise to the lack of authenticity by SFC. Pope's accuser.

This Administration failed to make a ruling on correction of 'whom the accused" actually was. It was not the ARNG at all but a disgruntled civilian with an axe to grind against SFC. Pope, and the ax, which she chose to grind, was dated, erroneous, unsupported and contradicts the testimony of the same individual whom Msgt. Steward's document purports to represent.

In addition, SFC. Pope was never charged and criminally prosecuted by the California National Guard under an Article 15 as courts-martial either general, special courts-martial, summary courts-martial or courts-martial not exclusive. The civilian who filed the false Domestic Violence report on or about in November 1999, was by a disgruntled military "rejected" applicant of April 1997; civilian not employed by the Government. The matter before the District Attorneys office was investigated and rejected by the civilian District Attorneys Office, in November 1999, as a false Domestic Violence charge filed by a mentally challenged civilian. This same civilian is willing to testify as to these statements, for the benefit of my client, SFC. Pope. As previously mentioned, the Military had knowledge of Psychological issues of this rejected applicant from as far back as 1997. This knowledge is of Psychological issues is further compounded when it was discovered that this rejected applicant was released from the Harbor Mental Medical Center the same month and year that

Msgt. Steward had the Form 2823 signed. As such the rejected applicant lacked capacity to even sign a sworn statement at the time it was made.

SFC. Pope was never allowed the right to cross-examine his accused in a military Tribunal hearing or Administrative Separation Board. SFC. Pope was not allowed to examine any evidence to support this allegation and nor provided evidence of misconduct (DA Form 2823).

DA Form 2823 was then forwarded to COL Weir, wherein COL. Weir, acted as the presiding military judge over this "sham" non-judicial and administrative proceeding, which was operated totally in violation of military due processes. COL. Weir in error approved Separation DA Form 2823 against SFC. Pope, because of LTC. Smith's request. This action in itself should be grounds enough to allow my client a formal hearing, with the U.S. Court of Federal Claims.

**<u>22. Allegation Number Two</u>**

LTC. Smith alleges SFC. Pope abused "GSA vehicle privileges" as justification for SFC Pope's Separation. *Separated 31 August 2000.* This was for alleged violations in 1997, via Msgt. Steward's requested statement of a past and then present mentally challenged civilian, whom had just been released from a mental facility the same month and year the Msgt. Steward solicited "Statement" was prepared.

Military records show SFC Pope was on LOD for a GSA accident that occurred Oct 17, *1999*, in which SFC. Pope was not at fault. SFC Pope had an active DA form 2173 and was currently receiving medical treatment for work related injuries. Upon reviewing this request the military Judge did not rule that NGR 600-5 chap. 6-2 (a) dtd 2-20-90 required final medical disposition from the soldier's doctor as the Judge should have.

COL. Weir failed to inform LTC. Smith, that SFC. Pope was acting in Line of Duty and within Scope of Employment determined by federal law USC Clip 28 Sec '346(b), as an employee of the United States."

SFC. Pope equivocally denies to have used a GSA vehicle for personal use, at any given time, much less 3 years prior in 1997. There is no evidence to substantiate the alleged unauthorized use of a vehicle. LTC. Smith, acted outside his scope of employment as an investigating officer and did not allow SFC Pope to submit evidence on his behalf and nor was SFC. Pope, allowed to submit witnesses on his behalf, which is evident, that LTC. Smith was not conducting an impartial non-judicial and administrative proceeding against SFC. Pope. However, under article 32 SFC. Pope should have at least received military due process of law by affording SFC. Pope with a fair hearing and Administrative Separation Board review[s]. This due process was thwarted when MAJ. Thompson was chased off of the case by LTC. Smith and COL. Weir.

SFC Pope had two personal vehicles, which would remove the need to arguably use a GSA vehicle for personal use. This fact combined with the lack of particularity of the time of use,

which vehicle was being used. The Government never met any burden of proof, much less a preponderance of the evidence burden as grounds for a discharge.

The solicited not properly authenticated "Statement" alleged SFC. Pope, misusing GSA vehicle for personal usages in 1997 is totally un-credible, vague, ambiguous and inadmissible when made and has been challenged by the rejected applicant for some time. This statement didn't state when where or how SFC. Pope personally used and/or abused GSA vehicle privileges. As such no particularity was shown to verify the statement. The Administration did not call witness(s) in during the procedure. Given that SFC. Pope was not allowed to attend, nor did he have counsel, the claim of misuse could not be challenged during the"sham" non-judicial and administrative proceedings. LTC. Smith and COL. Weir failed to obtain evidence to show abuse of a GSA vehicle privileges. COL. Weir failed to ask LTC. Smith, who initiated the ruse, to show documentation of the alleged GSA vehicle abuse and what military regulation that SFC. Pope had violated. *This action in itself should be grounds enough to allow my client a formal hearing, with* U.S. Court of Federal Claims.

**23. Allegation Number Three**

LTC. Smith alleged SFC. Pope, "living with and having sexual relations with an applicant" as justification for SFC Pope's Separation. *Separated 31 August 2000.*

SFC Pope never lived with or had sex with an applicant during his military service. On or about *April 1, 1997,* the applicant attempted to gain entry into the military, but failed her physical exam with LA MEPS.

On or about *November 1999,* the applicant files a false report of Domestic Violence against SFC. Pope, and 31 August 2000, SFC. Pope is separated from the military by LTC. Smith, on a false Domestic Violence report filed with civilian authorities. As such the applicant has no "standing" as a civilian against SFC. Pope in his military capacity, as it relates to a civilian matter.

SFC. Pope is never allowed the right to cross-examine the applicant in a military Tribunal hearing or Administrative Separation Board. SFC. Pope is not allowed to examine any evidence to support this allegation. This is amazing that a civilian, former rejected applicant whom later recounted her previous statements, which started the Separation proceedings against SFC Pope, was not examined in person by a board hearing at all. As such, SFC. Pope was denied military due process of law, which taints the unjustified military Separation actions against my client, at this point. The alleged involvement with female military personnel never took place. My client states: involvement only took place with a disgruntled female who was a rejected" applicant of April 1997. This action in itself should be grounds enough to allow my client, SFC. Pope, a formal hearing, with U.S. Court of Federal Claims.

The alleged offenses items one (1) through three (3) also do not appear to have been reviewed and approved by any Board of Military Review, rather the alleged offenses were only determined by LTC. Smith and COL. Weir in their "sham" non-judicial/administrative proceeding for the Separation of SFC. Pope.

"Sham" non-judicial/administrative proceedings separated SFC. Pope, from AGR/ARNG without correcting any of these above-mentioned items one through three. COL. Weir the presiding military Judge assumed the role and duties of a company commander, which is un-precedented in the military. This created a "conflict of interest" within the proceedings against SFC. Pope. Wherein COL. Weir's judgment of the laws became skewed for 'what is acceptable for causes of separation' and 'what is allowed admissibly for administrative procedures.' COL. Weir's inability to abide by UCMJ is so blatant it verges on criminal conduct.

Allegations one through three require correction/reinstatement for causes and discrepancies, which were never corrected by LTC. Smith. Thus, DA FORM 2823 LTC. Smith invented the allegations and did not conduct a proper investigation against SFC. Pope, for separation from the military with good cause.

**24. Without Good Cause**

A. SFC. Pope was not made privy to essential documentary and real evidence to understand what was being charged with by unauthorized investigating officer LTC. Smith.

B. SFC. Pope was not able to enter any evidence in Camera" in the Ex parte procedure, which was again a violation of military due process procedures.

C. LTC. Smith and COL. Weir's proceedings failed to forward a single correction document to the company commander. LTC. Smith and COL. Weir made their own decisions to remove

SFC. Pope from his duty status prior to his 90 days ETS window. SFC. Pope's military records indicate SFC. Pope has met all military requirements and is qualified to reenlist in AGR/ARNG. In addition, SFC. Pope's military records will show SFC. Pope was a top recruiter for years and has 25 ribbons and commendations.

D. This apparent railroad of third world justice is compounded when records show SFC. Pope has never received a negative NCOER. To compound the injury LTC. Smith and COL. Weir wanted to prevent reenlistment of SFC. Pope. Thus, it's unfortunate, that SFC. Pope a top recruiter was removed from his duties in serving our country, arguably injuring the military as a whole. Given SFC. Pope's recruiting efforts have not been available to the military the military now faces a huge deficit of manpower because of failed recruiting efforts.

E. Allegation numbers 1 and 3 should have been ruled on "whom, the Accused' is according to the UCMJ. This unverified statement dated November 1999 was a solicited allegation by Msgt. Steward and signed by a disgruntled female whom was mentally challenged and just released from Harbor Mental Medical Center on Nov 3, 1999. This ruling was important because the act of omission initiated with Msgt Steward and the wrongdoing was followed by the failure to comply with Administrative procedures. Msgt Steward was not "appointed as investigating officer" under article *32 UCMJ* to perform this judicial function. This action alone was a violation of the Privacy Act because the soldier had no prior statement of any alleged offense. This was unprecedented position for the CA ARNG. (This female civilian has since rescinded her testimony and she is stating that

Msgt. Steward ARNG called her to initiate a complaint.)

F. Allegation number two (2) was an error SFC. Pope was alleged to "abusing GSA vehicle Privileges." This allegation was brought three (3) years after any alleged incident occurred. Actually no specific instances were alleged on the general statement of misuse of a GSA vehicle in 1997. Pope in 1999 October was placed on LOD and to date in 2005, Pope's military record still indicates that Pope is on LOD. This status alone would preclude allegation number two from even being prosecuted.

## 25. VIOLATIONS WHILE ON LEAVE OF DISABILITY FOR AN INJURY, WHICH TOOK PLACE WHILE ON ACTIVE DUTY

The "sham" non-judicial/administrative proceeding in this case denied my client, SFC. Pope, military due processes recourses of action.

This sham non-judicial/Administrative proceeding isolated itself from regulation, military and procedural laws that are part and parcel of serving in the Military. SFC. Pope was in a vehicle accident on Oct 17, 1999 and was placed on LOD due to injuries he sustained from the incident. Dr. Richard Allen MD, USAF Base was the primary medical doctor treating SFC. Pope for his injuries from this on duty incident. These injuries from the on duty incident consisted of severe bulging disks within SFC. Pope's back, being traumatized. The injuries to SFC. Pope's back, results in SFC. Pope, experiencing constant pain and is still affecting SFC. Pope, to day wherein the military doctors recommended surgery.

On or about June 29, 2000 Dr. David Llewellyn Neurology, San Diego Medical Base, recommended SFC. Pope, for continued medical treatment for his back injuries, again which

were caused while working for the Military. As such, the LOD, and subsequent injuries SFC. Pope sustained was job due to a job related injury while on duty with the military.

Recall, the "sham" non-judicial/administrative presiding officers: LTC. Smith and COL. Weir, were advised that SFC. Pope was on an active LOD and receiving Medical Treatment when the Separation proceeding was initiated against SFC. Pope. However, both LTC. Smith and COL. Weir, acted beyond the scope of their authority when they involuntarily Separated SFC. Pope from the military while SFC. Pope was on active LOD. Wherein, these actions by LTC. Smith and COL. Weir, is a direct violation of AGR and NGR 600-5 and such an involuntary separation is not allowed until a final medical disposition and release from a medical Doctor has been authorized and obtained.

SFC. Pope's "sham" non-judicial/administrative hearing violated multiple military regulations and the violated the spirit UCMJ, which is engrained and indoctrinated in every soldier.

**26. FLAWS OF THE ALLEGATION**

1. On Nov 3, 1997 this female civilian was released from a Harbor Mental Medical Center. for mental challenges and was very disgruntled toward SFC. Pope. Medical records have been obtained to verify the history of mental challenges this female civilian suffered from.

2. The claimed offenses supposedly occurred in 1997; as such the statute of limitations was expired due to lack of timeliness.

3. No dates of misuse or incidents of misuse were stated, only that a civilian claimed misuse of a vehicle owned by the Government.

4. The alleged and supposed victim, who made a military "sworn statement" never entered into the military by the mere definition of what constitutes military entrance. As such an individual with Mental Issues is disqualified from even being labeled an applicant for the Military. As such the claim that a member of the military verified any incident or even an applicant for the military is unfounded and signifies a deathblow to the sham preceding my client suffered.

**27. PROBLEMS EXISTING WITH THE DA FORM 2823**

1. DA form 2823 sworn statement was obtained without probable causes and used to involuntarily separate SFC. Pope in violation of the Privacy Act.

2. DA form 2823 sworn statement was the only material document allowed admissibly by the accuser and the Administrative proceeding shows prejudice toward SFC Pope's rights.

3. DA form 2823. The "Sworn Statement" by SFC. Pope's accuser (nonmilitary personnel), was never perfected under perjury as required by military law. Additionally the accuser did not swear to the charges under the "Sworn Statement" and the charges were not perfected before a commissioned officer authorized to administer an oath as required under Section 936 Article 136, UCMJ R.C.M. 307.

4. DA form 2823 "Sworn Statement" was not procured under penalty of perjury under

Military law. The unverified source of information is therefore in a sham hearing still hearsay or at best, insufficient facts to reach a fair conclusion prima facia. Wherein military due processes allows allegations to at least be admitted or denied. The fact no initial investigation was held, compounded by the following:

a. COL. Weir's failure to investigate;

b. Intimidating MAJ. Thompson to abandon representation of SFC. Pope;

c. Denying SFC. Pope an open hearing;

d. Denying SFC. Pope to be present during the hearing;

e. Allowing a secret hearing based on hand written and sworn statements;

f. Having a separation while SFC was on Active LOD;

g. Violating the statute of limitations period in any of the allegations actually took place.

h. Ramping up the penalty for supposed violation of these alleged allegations past what was being issued elsewhere under COL. Weir's command.

5. NGR 600-200 dtd 971002 Chap 2 Sec I 2-29 (e) PG 25 Multiple Waivers was never allowed to be a material document. The complaining female civilian failed a LA MEPS physical on April 10, 1997 and a waiver request was sent in for criteria consideration. Immediately this witness she confessed about not being truthful about history of mental counseling lied about cashing stolen checks, pending opened investigation from Santa Ana

police department and committed a lured act at a concert in July 1997 which resulted in an alleged Rape. All (4) NGR enlistment criteria implied ineligibly for enlistment. As such the female civilian whom initiated the case was never considered in the Military. The analysis COL. Weir has used and alleged in the separation, which is being challenged, is primarily based on the premise that this female was in fact in the military. Since the woman in question was never in the military at all, this in itself strikes yet another death blow in the allegations and sham administrative proceeding my client was prejudiced by.

**28. Violation of Law or Regulations**

a. NGR 600-5 dtd 2-20-90 Chap 6-2 (a) (Line of Duty)

b. NGR 600-5 dtd 2-20-90 Chap 6-5 (b) (JAG Assistance)

c. U.S.C. Title 32 dtd 2004 Sec 842 Art 43 (Statue of Limitation)

d. AR 340-21 Privacy Act (Probable Causes)

**29. Exhausted Administrative Remedies by my Client**

a. AR 15-185 ABCMR Chap 2 Sec II 2-3 (b)

b. AR 15-180 ADRB Chap 2 Sec II

c. AR 27-10 Chap 3 Sec 43-2 C (b) PG 21

Military regulations listed above implied that a solider not in Federal service Title 10 ARNG at the time of discharge need not to apply for a processing request.

e. Certified Letter dated July 2000, by SFC. Pope appealing the wrongful separation was forward to CA OTAG and COL. Weir signed for the letter and never responded.

e. Certified Letter dated September 2001, by SFC. Pope appealing the wrongful separation was forwarded to CA OTAG and COL. Weir signed for the letter and did not respond to this letter as well.

f. A complaint letter dated Sep 29, 2004 forward to CA OTAG: Command said there is no wrong doing on the Military's part.

g. NGR 600-200 dated Chap 8-14 (b) If it is determined that a solider has been discharge in error to obtain discharge order can be reinstated in their last duty status.

**30. Conclusion**

The simplicities of alleged allegations were never proven and not substantiated under any legitimate military separation process, much less the proper Military Due Processes. My client has brought as one of the causes of action wrongful separation so that the military records can be corrected/reinstated, along with being afforded back pay, retirement and Veterans benefits. The Administrative proceedings are designed to allow an open channel for a soldier appealing a wrongful separation or failure to respond. A certified letter dated July 2000 is an indication of vendetta against my client. SFC Pope has twenty (20) years creditability, no negative NCOER's and was not justified to be treated in a third world justice like manner.

This Petition is to correct/reinstate military records for Separation of SFC. Pope, retroactive

effective 31 August *2000,* wherein the above depiction has merit and shows injustices towards SFC. Pope.

Petitioner faced a sham involuntary separation, and only recently was SFC Pope given an opportunity to challenge the separation. Despite the lack of evidence in Petitioner's Military file, the Army Discharge Review Board decided not to grant the requested modification in upgrading Petitioner's discharge. Petitioner must bring this case, in the Jurisdiction of the U.S. Court of Federal Claims, so as to protect Petitioner's ability to have a correction/reinstatement of SFC Pope's Military Records with back pay, retirement benefits, and Veterans benefits.

WHEREFORE, Petitioner requests a judgment against The United States in the amount of $400,000.00.

Respectfully submitted,

Jeffrey D. Moffatt, Attorney
U.S. Court of Federal Claims
Attorney for Petitioner Leroy D. Pope