involuntarily released from FTNGD unless release is approved by the Secretary of the Army.

*(2)* Process recommendations for active duty length of service retirement actions per AR 635-100 (Officers) or AR 635-200 (Enlisted) AR 635-10 and this regulation.

*c.* The SPMO will initiate separation and REFRAD actions as soon as possible after approval.

d. AGR soldiers may request a release from active duty (REFRAD) physical prior to release from FTNGD. SPMO will advise AGR soldiers of this provision. However, failure to complete REFRAD examination will not be grounds for retention in AGR status on FTNGD.

**6-2. Medical separation**

a. AGR soldiers undergoing extensive medical treatment, or medical board proceedings for line of duty (LOD) related injuries or diseases will be retained in AGR status until final disposition by medical authorities.

b. AR 635-40 will be used to separate AGR soldiers as a result of physical disabilities.

**6-3. Voluntary separation**

a. Requests for voluntary separation will be forwarded through command channels to the SPMO.

*b.* NGR 600-100 and NGR 600-200 apply to pregnant soldiers requesting voluntary separation.

*c.* SPMO will ensure that service obligations are satisfied before approving requests for separation or retirement. See AR 351-1, paragraph 8-3.

*d.* SPMO will develop procedures to inform AGR soldiers of the provisions of AR 135-18 paragraph 2-3i prior to approval of requests for separation.

*e.* AGR soldiers will not be separated under provisions of this paragraph until final approval of The Adjutant General or a member of the primary staff as defined within this regulation.

*f.* SPMO will request separation orders IAW NGR 310-10. DD Form 214 will be prepared for AGR soldiers separated under provisions of this paragraph.

**6-4. Mandatory separation**

AGR soldiers will be separated without Board action for reasons stated below regardless of the expiration dates of their current periods of duty. Retention is not authorized. Separation for cause procedures need not be used. Soldiers will be given at least 30 days notice of separation.

a. Separation is required when--

*(1)* Officers reach MRD IAW NGR 635-100 or complete 20 years of Active Federal Service IAW AR 635-100.

*(2)* Enlisted AGR soldiers reach age 60. Extensions are not authorized.

*(3)* Enlisted AGR soldiers complete total years of Active Federal Service for current grade per table 5-1 of this regulation. Extensions must be approved by NGB-ARM, Washington, DC 20310-2500.

*(4)* Failure to obtain, or the loss of required security clearance.

*(5)* Conviction by civilian or military authorities for a disqualifying offense UP of NGRs 635-100, 600-100, 600-101, 600-200.

*(6)* AGR soldier has lost Federal recognition.

*(7)* Officers twice non-selected according to provisions of AR 135-155.

(8) Failure to successfully complete PDP requirements.

(9) AGR soldiers have been non-selected by an AGR continuation board.

(10)) Failure to meet MOS or AOC qualification standards.

*b*. AGR soldiers will not be separated under provisions of this paragraph until final approval by The Adjutants General.

**6-5. Separation for cause and procedures**

AGR soldiers will be involuntarily separated for cause from Full-Time National Guard Duty IAW the provisions and procedures of this paragraph. Adjutants General will review all recommendations for separation under this paragraph and will make the final determination. This authority will not be delegated. Adjutants General, as the approving authority, may not initiate separation actions under provisions of this paragraphs.

a. Guidelines for involuntary separation.

(1) Counseling or a letter of reprimand will be initiated by a commander or supervisor when an individual's degree of efficiency, manner of performance of duty, military conduct, or the commission of any derogatory act makes such action appropriate. Normally, counseling statement(s) or a letter of reprimand will be documented in individual's military records according to AR 600-37 before initiating involuntary separation actions against an AGR member, unless the reason for release would not require such action. Individuals being counseled will verify acknowledgment of counseling session(s).

(2) When deciding whether to initiate procedures for involuntary separation, the following factors may be considered:

(a) The seriousness of the events or conditions that form the basis for initiation of separa-proceedings. Also consider the effect of the member's continued retention on military discipline, good order, and morale.

(b) The likelihood that the events or conditions will continue or recur.

(c) Whether the actions of the member resulted or are likely to result in an adverse impact on accomplishment of unit missions.

(d) The member's ability to perform full-time support duties in a reasonable manner.

(e) The member's potential for further service.

(f) The member's military record. This includes past contribution to the ARNG, assignment, awards and decorations, evaluations, ratings, letters of commendation, letters of reprimand or admonition, counseling records, records of nonjudicial punishment, and records of involvement with civilian authorities; and any other matter deemed relevant by separation authority.

(g) Possibility of re-assigning member.

*b*. In addition to the provision of AR 135-18 paragraphs 5-1*b*(1) and 5-1c the following apply:

(1) Involuntary separation for cause recommendations will be made by the commander or supervisor at the level commensurate with the AGR soldier's full time duty position (FTS Staffing Guide Position).

(2) This commander or supervisor will refer the written recommendation for involuntary separation to the AGR soldier for comment.

(3) The AGR soldier will be given 15 days from receipt to rebut or comment and return the

recommendation to the commander who will forward through command channels to the Adjutant General.

*(4)* AGR soldiers may be given the opportunity but will not be required to request voluntary release in lieu of involuntary separation.

*(5)* AGR soldiers pending involuntary separation under this paragraph will be advised of and provided assistance, if they request, of a JAGC officer in preparing rebuttals. If JAGC assistance is not reasonably available, the 15 day provision in paragraph **6-5*a(3)*** may be waived by The Adjutant General.

*(6)* Include in orders for soldiers released from FTNGD a statement regarding entitlement to separation pay under **10 USC** 1174*(c)(1)* and *(2)* if applicable. See DODPM, paragraph **40422** and AR **37-104-3** paragraph **30-11**.

*(7)* The AGR Management Section will prepare DD Form **214** IAW AR **635-5** and AR **635-5-1**.

*c*. Reasons for involuntary separation under this paragraph include--

*(1)* Inappropriate professional and personal conduct.

*(2)* Moral or professional dereliction.

*(3)* Loss of professional qualifications required for the performance of assigned duties.

*(4)* Substandard duty performance.

*(5)* Acts of expressed sentiments of racism, sexism, or prejudice against ethnic or religious groups.

*(6)* Failure to attain and maintain medical, physical fitness and weight standards.

**6-6. Elimination or downgrade of SPMD position**

**AGR** soldiers affected by changes in FTS staffing guide requirements, end-strength and grade ceiling limitations will be administered as follows:

*a*. The SPMO will establish procedures to select fully qualified soldiers for reassignment from AGR soldiers affected by force structure changes or changes in FTS staffing guide requirements.

*b*. AGR soldiers may be retained in an excess or overgrade status, as appropriate, for not more than 1 year after the effective date established by NGB-ARM.

*c*. AGR soldiers carried in an excess or overgrade status due to force structure changes, or changes in FTS Staffing Guide requirements will be offered, in writing, the opportunity to fill vacant positions. These soldiers will be given priority over other soldiers in filling vacant, authorized positions for which they are qualified.

d. AGR commissioned and warrant officers carried in excess status and not reassigned to valid SPMD positions within 1 year after the effective dates established by NGB-ARM will be separated from the AGR Program.

e. AGR enlisted soldiers who are in overgrade status 1 year after the effective dates established by NGB-ARM will be reduced to the authorized military grade of the SPMD position or be separated from the AGR Program.

**6-7. Retirement processing**

Satisfactory service in AGR status, Full-Time National Guard Duty, is creditable as qualifying service for both Active Service (10 USC **1293**, **3911**, **3914**, and **3917)** and Non-Regular Service retirement (10 USC **1331**).

***a.*** AGR commissioned and warrant officers will retire after completing **20** years Active Federal

Service unless extended by proper authority. Requests for retirement will be processed IAW AR 635-100, 635-101.

*b.* Enlisted soldiers will retire in the grade held on the date of retirement IAW AR 635-200, chapter 12. Those who are eligible under 10 USC 3964 will be advanced to the highest grade held satisfactorily on active duty when their active duty plus retired service equals 30 years.

*c.* Officer retirement packets will be forwarded to NGB-ARP for initial processing and publication of retirement orders. In addition to documents required in AR 635-100 include--

(1) DA Form 1506 (Statement of Service).

(2) All DD Form 214's.

(3) All NGB Form 23's and/or other reserve forces component retirement point sheets.

d. AGR enlisted soldiers will submit requests for retirement IAW AR 635-200 and state policy to the Adjutant General who is the approval authority.

e. States make arrangements with servicing STA/STP for processing soldiers for final separation/ retirement (AR 635-10) and discharge from the State.

*f.* SPMO will notify AGR soldiers of 18 years active Federal service and basic retirement information and processing requirements.

**APPENDIX A**
**References**

***Section I***
***Required Publications***

AR 37-104-3
Military Pay & Allowances Procedures-Joint Uniform Military Pay System (JUMPS-ARMY)

*AR* 40-501
Standards of Medical Fitness.

*AR* 135-18
The Active Guard/Reserve (AGR) Program.

AR 350-15
The Army Physical Fitness Program.

AR 600-9
The Army Weight Control Program

AR 600-50
Standarads of Conduct for for DA Personnel.

*AR* 635-35
Separation Documents.

AR 635-5-1
Separation Program Designators.

*AR* 635-100
Personnel Separation Officer Personnel.

*AR* 635-200
Personnel Separations Enlisted Personnel.

NGR 600-101
Warrant Officers-Federal Recognition and Personnel Actions.

NGR 600-200
Enlisted Personnel Management.

NGR 635-100
Termination of Appointment and Withdrawal of Federal Recognition.

***Section II***
***Related Publications***
(A related publication is merely a source of additional information. The user does not have to read it to understand this regulation.)

DOD 5010.16c
Defense Management Education and Training.

**DA Pam 60-3**
Professional Development and Utilization.

**DA Pam 351-4**
U.S. Army Formal School Catalog.

**DA Pam 351-20-Series**
U.S. Army Correspondence Course Catalog.

**FORSCOM/TRADOC Reg 135-3**
United States Army Reserve School.

**FORSCOM/TRADOC Reg 350-2**
Reserve Component (U.S. Army) Training.

**FORSCOM Circular 351-Series**
FORSCOM/TRADOC Area NBC Schools Schedule Full-Time Support (FTS) Programs.

**FORSCOY Circular 351-Series**
FORSCOM/TRADOC Area NBC Schools Schedule FY _____.

**CPR 400, Chapter 410**
Training

**AR 15-6**
Boards, Commissions, and Committees Procedures for Investigating Officers and Boards of Officers.

**AR 25-400-2**
The Modern Army Record Keeping System (MARKS).

**AR 37-106**
Finance & Accounting for Installations; Travel & Transportation Allowances.

**AB 40-3**
Medical, Dental, and Veterinary Care

**AR 40-121**
Uniformed Services Health Benefits Program

AR **55-71**
Transportation of Personel Property and Related Services.

**AR 135-180**
Qualifying Service for Retired Pay Nonregular Service.

AR **135-200**
Active Duty for Training and Annual Training of Individual Members.

**AR 135-205**
Enlisted Personnel Management System.

**AR 210-50**
Family Housing Management

**AR 350-1**
Army Training

**AR 350-37**
Individual Training Evaluation Program (ITEP).

**AR 350-41**
Army Forces Training.

AR **351-1**
Individual Military Education and Training.

AR **600-8-1**
Army Casulty and Memorial Affairs and Line of Duty Investigations.

AR **600-8-2**
Suspension of Favorable Personnel Actions (Flags).

AR **600-20**
Army Command Policy and Procedures.

**AR 600-37**
Unfavorable Information

**AR 600-85**
Alcohol and Drug Abuse Prevention and Control Program.

**AR 600-105**
Flying Status for Nonrated Army Aviation Personnel.

**AR 600-106**
Aeronautical Designations and Flying Status for Army Personnel.

**AR 600-200**
Enlisted Personnel Management System.

**AR 611-101**
Commissioned Officer Specialty.

**AR 611-201**
Manual of Warrant Officer Military Occupational Specialities.

AR **611-112**
Enlisted Career Managemenat Fields and Military Occupational Specialities.

AR **612-10**
Reassignment Processing and Army Sponsorship and Orientation Program.

**AR 612-11**
The Army Sponsorship Program.

**AR 614-6**
**Permanent** Change of Station Policy.

**AR 614-200**
Selection of Enlisted Soldiers for Training & Assignment.

**AR 621-5**
Army Continuing Education System

**AR 623-1**
Academic Evaluation Reporting System.

AR **623-105**
Officer Evaluation Reporting System.

AR **623-205**
Enlisted Evaluation Reporting System.

**AR 630-5**
Leave, Passes, Permissive TDY, and Public Holidays.

AR **635-10**
Processing Personnel for Separation.

**AR 635-40**
Physical Evaluation for Retention, Retirement, or Separation.

AR **638-40**
Care and Disposition of Remains.

**AR 640-2-1**
Personnel Qualification Records.

AR **640-3**
Identification Cards, Tags, and Badges.

AR **640-10**
Individual Military Personnel Records.

AR **640-30**
Photograph for Military Personnel Files.

**AR 670-1**
Wear and Appearance of Army Uniforms and Insignia.

**AR 672-5-1**
Military Awards.

AR **675-5-2**
Decorations and Awards.

**AR 700-84**
Issue and Sale of Personal Clothing.

**NGR 10-1**
Organization and Federal Recognition of ARNG Units.

**NGR 37-104-3**
Military Pay and Allowances - ARNG.

**NGR 40-3**
Medical Care for ARNG Members.

**NGR 40-501**
Examinations for Members of the ARNG.

**NGR 310-10**
Military Orders.

**NGR 350-1**
Training ARNG.

**NGR 351-1**
Individual Military Education and Training.

**NGR 351-5**
Officer Candidate Training.

**NGR 351-15**
U.S. Army Sergeants Major Academy.

**NGR 351-21**
Senior Services College.

**NGR 600-3**
Line of Duty Determinations.

**NGR 600-7**
Active Army Full-Time Manning Personnel.

**NGR 600-21**
Army National Guard Equal Opportunity Program.

**NGR 600-23**
Nondiscrimination in Federally Assisted Programs.

**NGR 600-100**
Commissioned Officers-Federal Recognition and Related Personnel Actions.

**NGR 600-105**
Aviation Services of Rated Officers.

**NGR 600-106**
Flying Status for Nonrated Army Aviation Personnel.

**NGR 601-1**
Recruting and Retention Resource Management.

**NGR 604-10**
Military Personnel Security Program.

**NGR 611-110**
Selecting, Processing, and Designating ARNG Aviators.

**NGR 635-101**
Efficiency and Physical Fitness Boards.

**NGR 635-102**
Officers and Warrant Officers Selective Retention.

**NGB Pam 37-100**
Army National Guard Management Structure.

**NG Pam 37-104-3**
Unit Level Military Pay Procedures, ARNG.

**NGB Pam 37-104-10**
State Level Military Pay & Allowances Procedures, ARNG.

**NGB Pam 600-8-1**
Standard Installation Division Personnel System.

**NGB Pam 600-8-3**
Standard Installation Division Personnel System.

**NGB Pam 600-15**
Army National Guard Incentive Program.

**NGB Pam 601-200**
Army National Guard Recruiting Program.

**NGB Pam 601-280**
Army National Guard Retention Program.

**HSC 40-21**
Health Service Regions and Health Service Areas.

**CTA 50-900**
Organizational Clothing and Equipment.

**DODPM**
Department of Defense Military Pay and Allowances Entitlements Manual.

**JFTR**
Joint Federal Travel Regulations.

## APPENDIX B

## Certificate of Agreement and Understanding

### *Section I. Applicability*

*a.* Army National Guard commissioned officers, warrant officers, and enlisted soldiers applying for initial entry into the Active Guard/Reserve (AGR) program must sign this certificate of understanding and agreement prior to issuance of AGR orders.

*b.* This form will be completed only once and will remain in force during the entire period the individual serves on Full-Time National Guard Duty, unless certificate is revised by CNGB. Individuals who incur a break in service of more than 24 hours will be required to complete a new certificate prior to issue of AGR orders.

*c.* A copy of this certificate will be given to the individual, and a copy will be filed permanently in the AGR Management files.

### *Section II - Active Guard Reserve (AGR) Condition6 and Obligations*

(Soldier will initial on appropriate line)

______ I am applying for an initial AGR Full-Time National Guard Duty under Title 32 USC 502(f).

______ If ordered to Full-Time National Guard Duty, I will not be reasigned for at least the first 18 months of my initial tour, except as prescribed in (7) below. If my current AGR tour is extended with my consent, or if I enter a subsequent AGR tour, I am aware that I may be reassigned without my consent and without geographical limitations within the boundaries of ____________________ to meet the needs of the service at that time, or at any time thereafter. I understand that failure to comply with orders may subject me to appropriate administrative action and proceedings under _________ Code of Military Justice.

____________ (All soldiers must initial this line). I understand that upon initial entry in the AGR program:

*a.* I will be subject to the ______________________ Code of Military Justice.

*b.* I will be managed under the regulations and policies that apply to the Army National Guard.

*c.* I will be eligible for consideration for retention on Full-Time National Guard Duty by meeting the requirements established for the AGR Program, provided an authorized AGR position is available.

*d.* I am aware that prior to completing my initial **3** years in the AGR program and every 5th year thereafter my records will be reviewed and evaluated by an AGR Continuation Board. This Board will make recommendstions to the State Adjutant General as to my continuation in the AGR Program. The decision of the Adjutant General as the approving authority is final. Recommendations will be based upon criteria established by regulations, manner of demonstrated performance, and compliance with AGR Program policies.

e. I am aware that the AGR Program will require successful completion of resident and non-resident courses of instruction given by military or civilian institutions. Residency at such institutions may require periods of time away from family and duty station. Failure to satisfactorily complete a course of instruction is grounds for separation from the AGR program.

f. I am aware that continuation in the AGR Program beyond my initial orders or any subsequent orders is neither mandatory nor automatic.

*g.* I am aware that during the first 18 months of my initial period of duty in the AGR Program, I will be subject to the following:

*(1)* If the ARNG seeks to utilize my services elsewhere as a result of my demonstrated ability, but not as a result of job elimination or promotion selection, and if such a transfer would require a Permanent Change of Station (PCS), I have the option to accept or decline the reassignment order.

*(2)* I am also aware that I may be subject to or may be offered the opportunity to relocate to another assignment and/or PCS to another AGR position for which qualified if my present FTS position is abolished or downgraded as a result of changes to force structure or manpower authorizations.

*(3)* I may be reassigned to another unit, location, or duty assignment when directed by the needs of the service. When possible, the reassignment will be to a position commensurate with the military grade established for the full-time support position and MOS. Reassignment beyond a reasonable commuting distance, requiring PCS according to the Joint Federal Travel Regulations, is not authorized during my stabilized tour of duty, except as provided in paragraph *g(1)* or *(2)* of this certificate.

*h.* I am aware that when I enter on Full-Time National Guard Duty I must enroll in the Army Standard Pay Method (SURE-PAY) program and that I will be paid via the Direct Deposit/Electronic Funds Transfer system to a financial institution of my choice for credit in my personal account.

*i.* I understand that entry on Full-Time National Guard Duty as an AGR soldier does not make me eligible for Active Duty Veteran's Administration educational benefits.

*j.* I am aware that my voluntary entry into the AGR Program does not guarantee that I will attain 20 years of Active Federal Service for retirement.

## *Section III*

I have been counseled on and understand all of the conditions and service requirements in this certificate. No other conditions or promises were made to me as a condition of my service on Full-Time National Guard Duty in the AGR Program.

| | | |
|---|---|---|
| *Date Signed* | *Typed or Printed Name & Rank* | *(Signature)* |
| *(Date)* | *Typed or Printed Name & Rank of Counselor* | *(Signature)* |

## GLOSSARY

### *Section I*
### *Abbreviations*

**AA**
Active Army

**AFS**
Active Federal Service

**AGR**
Active Guard/Reserve

**APFT**
Army Physical Fitness Test

**ARNG**
Army National Guard

**AT**
Annual Training

**CNGB**
Chief, National Guard Bureau

**DARNG**
Director, Army National Guard

**DODPM**
Department of Defense Pay Manual

**FTNGD**
Full-Time National Guard Duty

**FTRF**
Full-Time Recruting Force

**FTARF**
Full-Time Attrition Retention Force

**FTS**
Full Time Support

**FTUS**
Full Time Unit Support

**IAW**
In accordance with

**IDT**
Individual Duty Training

**IET**
Initial Entry Training

**ILO**
in lieu of

**MEPF**
Military Entrance and Processing Station

**MILPO**
Military Personnel Officer

**MOI**
Memorandum of Instruction

**MRD**
Mandatory Removal Date

**NGB**
National Guard Bureau

**OCS**
Officer Candidate School

**PCS**
Permanent Change of Station

**PDP**
Professional Development Program

**PFT**
Physical Fitness Training

**POTO**
Plans, Operations and Training Officer

**REFRAD**
Release from Active Duty

**SPMD**
Support Personnel Manning Document

**SPMO**
support Personnel Management Officer

**TAG**
The Adjutant General

### *Section II*
### *Terms*

**Active Guard/Reserve**
For the purpose of this regulation only, Active Guard/Reserve refers to Army National Guard soldiers serving on Full-Time National Guard Duty under section 502(f), title 32, United States Code. Soldiers are on FTNGD (other than for training or AD in the Active Army) for 180 days or more for the purpose of organizing, administering, recruiting, instructing, or training the Army National Guard.

**Adjutants General Primary Staff**
For the purposes of this regulation only, the Adjutants General primary staff is considered to be: The assistant TAG/TAGs, Chief of Staff, and SPMO.

**AGR Family Member**
For the purposes of this regulation a family member is defined as: A family relationship to an AGR soldier, including father, mother, son, daughter, brother, sister, uncle, aunt, first cousin, nephew, niece, husband, wife, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, stepfather, stepmother, stepson, stepdaughter, stepsister, half brother, or half sister.

**AGR Continuation Boards**
A board of officers, warrant officers, and/or NCO's appointed and convened by the Adjutant General to make findings and to recommend continuation in or separation from FTNGD.

**Applicant**
An individual who applies voluntarily for order to full-time National Guard duty in the Active Guard/Reserve Program.

**Career management**
A program for qualified AGR soldiers that provides for assignments to progressively more responsible positions.

**Career AGR Soldier**
A soldier serving on FTNGD in the AGR program who has successfully completed the initial 3 year period of service.

**Convening authority**
The separation authority. For the purposes of this regulation the separation authority for ARNG soldiers on FTNGD in the AGR program is the State Adjutants General, or when delegated their primary staff as defined in this regulation.

**Entry on duty date**
The date travel officially begins as specified in orders. The official travel date is determined by the mode of transportation authorized and actually used to comply with the reporting date shown on the order. See the DODPM and JFTR for rules and restrictions.

**Full-Time National Guard Duty (FTNGD)**
Training or other duty, except inactive duty, performed by a member of the Army National Guard of the United States or the Air National Guard of the United States as a member of the National Guard of a State, territory, or the Commonwealth, or the District of Columbia under sections 316, 502, 503, 504, or 505 of title 32, United States Code, with or without pay or for which the member has waived pay from the United States.

**Full-Time Support (FTS) Program**
Personnel assigned on a full-time basis for the purpose of organizing, administering, recruiting, instructing, or training the Army National Guard and the U.S. Army Reserve. These personnel include civilian personnel, members of the Active Army, and personnel serving

on Active Guard/Reserve status. The AGR Program is a an element of the Full-Time Support Program.

**Involuntary separation**
Separation from commissioned, warrant officer or enlisted status as a Reserve of the Army for cause (i.e., substandard performance of duty, moral or professional de-dereliction, or for security reasons) or for other than cause (i.e., force structure changes, or for changes in or elimination of FTS position).

**Order of Merit List (OML)**
A ranking of AGR soldiers best qualified for selection in descending order, from best qualified to least qualified. The OML is used to select the next best qualified soldier when the best qualified soldier, as determined by the selection board, becomes disqualified for initial entry on FTNGD.

**Overstrength**
Assigned strength which exceeds that authorized by the MTOE or TDA. Assignment of a soldier as overstrength may be the result of unit reorganization, inactivation, or relocation. It may also a result from assignment error, or as an authorized exception to policy to correct an injustice.

**Preponderance of evidence**
Evidence which, after consideration of the evidence presented, points to a certain conclusion as being more credible and probable than any other conclusion. Where the evidence is equally consistent with two or more opposing propositions, it is insufficient.

**Professional Development Program (PDP)**
A continuation of the Military Education Program (MEP) for AGR soldiers which was effective 20 February 1987. Successful completion of PDP requirements is required for tour continuation and for promotion consideration. The proponent is NGB-ARO-E.

**Promotion eligibility date (PED)**
The earliest date on which an officer who is recommended and selected may be promoted to the next higher grade.

**Selection boards**
A board of officers, warrant officers and/or NCOs appointed and convened by the Adjutant General for the purpose of fairly and thoroughly examining applicants credentials to determine the 'best qualified" applicant for an authorized AGR vacancy.

**Stabilized tour**
A stabilized tour is a tour for which a mandatory period of duty in certain geograghical area has been established.

**Support Personnel Manning Document (SPMD)**
Produced by the Support Personnel Information Management System (SPIMS) to document AGR positions.

**UCMJ**
ARNG personnel serving on FTNGD are not subject to the UCMJ, but may be subject to any code of military justice established by their State under provisions of title 32 United States code. Note: AGR soldiers ordered to duty under title 10 United States code are subject to the UCMJ.

By Order of the Secretary of the Army:

JOHN B. CONAWAY
Lieutenant General, USAF
Chief, National Guard Bureau

Official:

FRANK C. VAN FLEET
Colonel, GS
Executive, National Guard Bureau

Distribution: A

FILED

01 MAY -7 PM 3:44

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:

LEROY POPE
1886 DENWAL DRIVE
CARSON, CA 90746
(310) 635-2253

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LEROY POPE, Plaintiff, Vs. CALIFORNIA ARMY NATIONAL GUARD, MAJOR GENERAL PAUL MONROE, JR., COLONEL WILLIAM F. WEIR, COLONEL DANIEL SMITH, MAJOR THOMPSON, MASTER SERGEANT DAVID STEWART AND DOES 1 THROUGH 10, INCLUSIVE, Defendants. | Case No.: CV 01-04163 RSWL (Ex)<br>COMPLAINT FOR:<br>1. WRONGFUL INVOLUNTARY SEPARATION FROM ACTIVE DUTY CALIFORNIA ARMY NATIONAL GUARD, TITLE 32;<br>2. VIOLATION OF ARMY REGULATIONS 27-10;MILITARY JUSTICE<br>3. VIOLATION OF 42 U.S.C. SECTIONS 2000-e, ET SEQ.; DISCRIMINATION<br>4. VIOLATION OF 42 U.S.C. AMENDMENT 14 SECTION 1 DUE PROCESS; AMENDMENT 6<br>5. VIOLATION OF 42 U.S.C. SECTION 1983 & 1985<br>6. VIOLATION OF ARMY REGULATION 15-6<br>7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |

PLAINTIFF LEROY POPE, HEREBY ALLEGES AS FOLLOWS:

JURISDICTION AND VENUE

1. THIS IS A CIVIL ACTION ARISING UNDER 42 U.S.C. AMENDMENT 14 AND 42 U.S.C. SECTION 2000e, ET SEQ. PURSUANT TO 42 U.S.C. SECTION 1381a, TITLE



05/17/2001 09:51 FAX DISTRICT 001

XVI, THIS COURT HAS FEDERAL JURISDICTION OVER THIS ACTION. THIS COURT HAS PENDENT JURISDICTION OVER ANY STATE LAW CLAIMS ASSERTED HEREIN.

2. VENUE IS PROPER IN THIS DISTRICT UNDER 28 U.S.C. SECTION 1391, IN THAT THE CLAIMS AROSE IN THIS DISTRICT AND DEFENDANT (S) TRANSACTS GOVERNMENTAL BUSINESS IN THIS DISTRICT DIRECTLY OR THROUGH ITS AGENTS.

<u>SUMMARY OF THIS DISPUTE</u>

1. PLAINTIFF SERGEANT FIRST CLASS RECRUITER LEROY POPE, FOR THE CALIFORNIA ARMY NATIONAL GUARD, HEREINAFTER REFERRED TO AS "C.A.N.G." WAS RELEVANT TO THIS COMPLAINT. ACCUSATIONS WERE BROUGHT AGAINST SAID PLAINTIFF 1) AN INAPPROPRIATE RELATIONSHIP WITH A FEMALE APPLICANT WHO WAS DENIED ENLISTMENT INTO THE MILITARY, AND 2) ABUSE OF A GOVERNMENT VEHICLE. THE C.A.N.G. VIOLATED THEIR OWN FEDERALLY CHARTERED REGULATIONS, AND DENIED THE SAID PLAINTIFF FAIR AND EQUAL RIGHTS TO BE TRIED UNDER THE LAW. THE C.A.N.G. DENIED SAID PLAINTIFF A FAIR AND PROPER PRE-TRIAL HEARING, AS WELL AS A TRIAL ITSELF. THE C.A.N.G. FAILED TO FOLLOW PROCEDURE AND DENIED SAID PLAINTIFF FAIR AND EQUAL TREATMENT UNDER THE LAW. THE C.A.N.G. NEVER INVESTIGATED ALLEGATIONS AGAINST PLAINTIFF AND HAD NO SUPPORTING EVIDENCE. THEN WITHOUT DUE PROCESS OF LAW AND IN A DISCRIMINATING AND CONSPIRATORIAL FASHION, THE C.A.N.G. INVOLUNTARILY SEPARATED SAID PLAINTIFF FROM THE MILITARY. THEREFORE, THIS ACTION IS BROUGHT FORTH AGAINST THE DEFENDANT (S) C.A.N.G. FOR THE CAUSES OF ACTIONS CITED HEREIN.

THE PARTIES

4. PLAINTIFF SERGEANT FIRST CLASS RECRUITER LEROY POPE, IS A CITIZEN OF THE UNITED STATES, AND THE STATE OF CALIFORNIA, AND MAINTAINS HIS PRINCIPAL PLACE OF RESIDENCE IN CARSON, CALIFORNIA AT 1886 DENWALL DRIVE, CARSON, CA 90746.

5. DEFENDANT (S), THE C.A.N.G., IS A MILITARY AGENCY OF THE STATE OF CALIFORNIA, AND AN EXTENSION OF THE UNITED STATES MILITARY AND SUBJECT TO FEDERALIZATION IN NATIONAL WARTIME EVENTS, WITH ITS PRINCIPAL PLACE OF OPERATION BASED IN SACRAMENTO, CALIFORNIA, AT 9800 GOETHE ROAD, 95826-9101.

6. PLAINTIFF DOES NOT KNOW THE CURRENT CAPACITIES OR EXACT DUTY STATION OF DEFENDANTS PAUL MONROE, JR., WILLIAM F. WEIR, DANIEL SMITH, MR. THOMPSON AND DAVID STEWART NOR THE NAMES AND FULL CAPACITIES OF DEFENDANTS SUED HEREUNDER AS DOES 1 THOUGH 10, INCLUSIVE, THEREFORE, PLAINTIFF SUES EACH OF THEM BY FICTITIOUS NAMES. PLAINTIFF WILL SEEK ISSUE TO AMEND THIS COMPLAINT TO ALLEGE THE DOE DEFENDANTS' TRUE NAMES AND CAPACITIES WHEN THEY ARE ASCERTAINED. PLAINTIFF IS INFORMED AND BELIEVES, AND ON THAT BASIS ALLEGES, THAT EACH DOE DEFENDANT IS RESPONSIBLE IN SOME MANNER FOR THE ACTS AND LIABILITIES ALLEGED HEREIN AND ARE THE DEFENDANTS AND EACH OF THEM.

BACKGROUND OF THIS ACTION

7. ON NOVEMBER 4, 1999, MASTER SERGEANT STEWARD, SUPERVISOR FOR RECRUITING DISTRICT LYNWOOD CA ASKED ME ABOUT ALLEGATIONS THAT MS. PHILLMORE MADE ON NOVEMBER 4, 1999. THE PLAINTIFF TOLD HIM

THAT THE ALLEGATIONS AGAINST HIM WERE FALSE AND MISLEADING. THE PLAINTIFF TOLD MASTER SERGEANT STEWARD THAT MS. PHILLMORE HAD BEEN RELEASED FROM UCLA MENTAL WARD DUE TO MENTAL DEPRESSION. PLAINTIFF EXPLAINED THAT MS PHILLMORE WAS MEDICAL REJECTED ON APRIL 9, 1997, AND HER STATUS WAS REJECTED/NON-APPLICANT, AND WILL REMAIN UNTIL **LA MEPS** DETERMINES HER BEING A QUALIFY APPLICANT ACCORDING TO REGULATIONS. SHE LATER ACCEPTED A BETTER JOB OFFER WITH THE LONG BEACH SCHOOL DISTRICT JUNE 1997, BEFORE HER SUBMITTING AN APPLICATION BEFORE SIGNING UP FOR THE MILITARY. THERE IS AN EMPLOYMENT VERIFICATION LETTER ON FILE SHOWING HER WORKING IN 1997. THE PLAINTIFF ALSO TOLD MASTER SERGEANT STEWARD THAT HE AND MS. PHILLMORE WERE IN A RELATIONSHIP FOR THE PAST TWO YEARS AND RELATIONSHIP ENDED BECAUSE OF MS. PHILLMORE'S HISTORY WITH MENTAL ILLNESS, SEXUAL MOLESTATION AND CRIMINAL ACTIVITY. MASTER SERGEANT STEWARD ALLEGED THAT THE PLAINTIFF WAS LYING WITHOUT ANY CONCLUSIVE FINDINGS, AND USED HIS OWN DESCRIPTION AND DEFINITION OF THE WORD APPLICANT. MASTER SERGEANT STEWARD COUNSELED PLAINTIFF CONCERNING THE ALLEGATIONS NONETHELESS, AND SAID THAT THERE WOULD BE A FOLLOW-UP INVESTIGATION.

8. DURING THE NEXT COUPLE OF MONTHS THE PLAINTIFF WOULD SUFFER THROUGH VERY DIFFICULT TIMES EMOTIONALLY, BECAUSE OF THE CONSTANT HARASSMENT BY MASTER SERGEANT STEWARD. THE PLAINTIFF WAS RECEIVING PHONE CALLS FROM FELLOW RECRUITERS STATING THAT MASTER SERGEANT





05/17/2001 09:53 FAX
004

STEWARD WAS SPREADING NEGATIVE AND INCORRECT INFORMATION ABOUT HIM.

9. ON JANUARY 10, 2000, PLAINTIFF MET WITH RECRUITING OFFICER CAPTAIN GIBBS AND MASTER SERGEANT STEWARD. CAPTAIN GIBBS SAID THE RECRUITING COMMAND GAVE HER CONTROL OVER THIS SITUATION AND THAT SHE WANTED PLAINTIFF TO REMAIN IN HER COMMAND. CAPTAIN GIBBS SAID THAT PLAINTIFF'S 10 YEARS OF EXPERIENCE IN RECRUITING HAD EARNED HIM TOP RECRUITER RECOGNITION FOR HIS ASSIGNED AREA. HER DECISION WOULD BE A LETTER OF REPRIMAND AND THERE WOULD BE AN INVESTIGATION. PLAINTIFF WAS TOLD TO FAX A LETTER TO CAPTAIN GIBBS ABOUT HIS RELATIONSHIP WITH MS. PHILLMORE.

10. ON MARCH 24, 2000, CAPTAIN GIBBS INFORMED THE PLAINTIFF THAT THE RECRUITING COMMAND WANTED HIM DISCHARGED FROM ACTIVE DUTY. CAPTAIN GIBBS AND MASTER SERGEANT STEWARD DID NOT KNOW OF ANY REGULATIONS THAT PLAINTIFF HAD VIOLATED, BUT THEY SAID THE PLAINTIFF WAS GUILTY OF THE ALLEGATIONS. CAPTAIN GIBBS SAID LIEUTENANT COLONEL SMITH WOULD INFORM THE PLAINTIFF ON WHAT REGULATION (S) WERE VIOLATED.

11. ON APRIL 2, 2000, THE PLAINTIFF MET WITH LIEUTENANT COLONEL SMITH FOR FIVE MINUTES AND HE INFORMED PLAINTIFF OF THAT PLAINTIFF WAS BEING DISCHARGED FROM ACTIVE DUTY. COLONEL SMITH TOLD PLAINTIFF THAT PLAINTIFF WAS ENTITLED TO BE REPRESENTED BY LEGAL COUNSEL.

12. ON APRIL 6, 2000, WITH THE ASSISTANCE OF JUDGE ADVOCATE GENERAL OFFICER, MAJOR THOMPSON, A REBUTTAL WAS PREPARED AND SUBMITTED ON APRIL 14, 2000. THE PLAINTIFF TOLD MAJOR THOMPSON

HE HAS WITNESSES AND EVIDENCE TO DISPUTE THE ALLEGATIONS. THE OFFICER TOLD PLAINTIFF THAT THE ALLEGATIONS AGAINST HIM ARE NOT FOUND IN NATIONAL GUARD REGULATION 600-5, FOR INVOLUNTARY SEPARATION. HE FURTHER STATED THAT UNLESS RECRUITING COMMAND HAS ITS OWN REGULATION, THE PLAINTIFF WAS INNOCENT. HE ALSO STATED THAT THE ALLEGATIONS ARE NOT SUFFICIENT TO CAUSE ONE TO BE DISCHARGED FROM ACTIVE DUTY BECAUSE THE FACT SHOWED THAT THE PLAINTIFF BECAME INVOLVED WITH REJECTED/NON-APPLICANT PHILLMORE WHEN SHE NO LONGER DESIRED AN INTEREST IN THE C.A.N.G. HE FURTHER STATED THAT THE STAFF JAG OFFICE IS RESPONSIBLE FOR INVESTIGATING EVERYTHING THAT PLAINTIFF ALLEGES PERTAINING TO HIS REBUTTAL.

13. ON OR ABOUT APRIL 14, 2000, MAJOR THOMPSON SAID THAT HE WOULD BE TALKING TO JAG MAJOR DANA ON APRIL 17, 2000, WHO IS REPRESENTING THE COMMAND AND INFORMED HIM THAT THESE ALLEGATIONS WERE NOT FOUND IN ARMY REGULATIONS. MAJOR THOMPSON NEVER SPOKE WITH JAG MAJOR DANA. MAJOR THOMPSON FAILED TO REPRESENT PLAINTIFF AND NEVER TRIED TO BRING ANY PARTIES TOGETHER TO RESOLVE THE CHARGES AGAINST PLAINTIFF. THIS OFFICER MISLED THE PLAINTIFF INTO THINKING THAT HE WOULD BE REPRESENTED BY COUNSEL.

14. ON APRIL 26, 2000, THE PLAINTIFF MET WITH LIEUTENANT COLONEL SMITH TO RESPOND WITH HIS REBUTTAL. THIS OFFICER TOLD THE PLAINTIFF THAT HALF OF HIS COMMAND BELIEVED THE REBUTTAL TO BE TRUTHFUL BUT HE DID NOT BELIEVE THE PLAINTIFF. THE PLAINTIFF

RELATED TO THIS OFFICER THAT HE HAD NOT BEEN FOUND GUILTY OF ANYTHING REGARDING THE ALLEGATIONS AGAINST HIM.

15. ON MAY 2, 2000, A LETTER WAS FORWARDED TO THE RECRUITING COMMAND STATING THAT THE PLAINTIFF WAS NOT GOING TO VOLUNTARILY RESIGN FROM ACTIVE DUTY BECAUSE THE C.A.N.G. HAD NOT SHOWN FAIRNESS AND THE COMMAND HAD NOT FOLLOWED ARMY REGULATION PROCEDURES.

16. ON JUNE 5, 2000, MAJOR GENERAL PAUL MONROE, JR. THE ADVOCATE GENERAL, SIGNED A LETTER STATING THAT HE WAS INVOLUNTARILY SEPARATING THE PLAINTIFF FROM ACTIVE DUTY ON AUGUST 31, 2000. GENERAL MONROE FAILED TO PROTECT THE BASIC RIGHTS OF THE PLAINTIFF. HE ALLOWED HIS COMMAND TO ILLEGALLY SEPARATE THE PLAINTIFF FROM ACTIVE DUTY WITHOUT FOLLOWING ARMY REGULATION 27-10 PROCEDURES.

17. ON JUNE 26,2000, PLAINTIFF SENT A CERTIFIED LETTER TO THE ADVOCATE GENERAL'S OFFICE. THE LETTER EXPLAINED HOW THE PLAINTIFF'S RIGHTS WERE VIOLATED, AND THE FAILURE OF THE CHAIN OF COMMAND TO WORK FROM THE BOTTOM UP. PLAINTIFF INFORMED THE ADVOCATE GENERAL'S OFFICE THAT HE HAD NOT BEEN GIVEN THE OPPORTUNITY TO BE REPRESENTED BY COUNSEL. THE PLAINTIFF ALSO REPORTED SEVERAL INCIDENTS OF DISCRIMINATION WITHIN THE COMMAND. MAJOR GENERAL MONROE FAILED TO RESPOND TO THE LETTER.

18. COLONEL WILLIAM F. WEIR WAS ASSIGNED AS STATE STAFF JUDGE ADVOCATE GENERAL OFFICER FOR THE CALIFORNIA ARMY NATIONAL GUARD. THIS OFFICER WAS RESPONSIBLE FOR THE BASIC SOLDIER RIGHTS.

COLONEL WEIR VIOLATED ARMY REGULATIONS BY FAILING TO CONDUCT AN INVESTIGATION AND DENIED PLAINTIFF DUE PROCESS.

19. ON JULY 25, 2000, THE PLAINTIFF CONTACTED THE STATE SENATOR BOWEN'S OFFICER AND ASKED FOR ASSISTANCE IN CONTACTING THE C.A.N.G. IN REGARDS TO THE NON RESPONSIVENESS OF GENERAL MONROE TO THE PLAINTIFF'S LETTER DATED JUNE 26, 2000. ACTING ON BEHALF OF SERGEANT FIRST CLASS POPE, THE SENATOR OFFICE ASKED THE NATIONAL GUARD WHY WAS THE PLAINTIFF DENIED DUE PROCESS. ON AUGUST 10, 2000, THE SENATOR'S OFFICER RECEIVED A LETTER FROM THE C.A.N.G. STATING THAT THEY DID NOTHING WRONG. THE C.A.N.G. NEVER RESPONDED TO THE LACK OF DUE PROCESS ALLEGATION. AT THAT POINT, ALL MILITARY CHANNELS HAD BEEN EXHAUSTED.

20. ON JUNE 18, 2000, THE PLAINTIFF FILED A COMPLAINT AGAINST THE C.A.N.G. WITH THE EQUAL EMPLOYMENT OPPORTUNITIES COMMISSION.

21. ON AUGUST 31, 2000, PLAINTIFF WAS DENIED MEDICAL TREATMENT FOR AN INJURY THAT WAS SUSTAINED IN GSA AUTOMOBILE ACCIDENT IN THE LINE OF DUTY ON DECEMBER 3, 1993 AND OCTOBER 3, 1999. THE COMMAND KNEW THAT THE PLAINTIFF WAS SUFFERING FROM NERVE DAMAGE AND A BULGED DISK. THE COMMAND KNEW THAT DOCTORS HAD PROPOSED SURGERY TO REPAIR THE PLAINTIFF'S NERVE DAMAGE.

22. IN A LETTER FROM THE E.E.O.C., DATED FEBRUARY 9, 2001, IT ADVISED THE PLAINTIFF THAT IT WOULD NOT BE ABLE TO COMPLETE ITS INVESTIGATION OF THE PLAINTIFF'S ALLEGATIONS WITHIN THE STATUTORY SIX MONTH PERIOD, AND THAT IT WAS STEPPING ASIDE TO ALLOW THE PLAINTIFF TO FILE A COMPLAINT AGAINST THE C.A.N.G.



008

05/17/2001 09:54 FAX

PURSUANT TO 42 U.S.C. 200e et seq., FOR EMPLOYMENT DISCRIMINATION BASED ON COLOR, CREED, ETC... AND VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER THIS CODE.

23. ALL OF THE ABOVE ACTS BEGAN WITH THE ALLEGATIONS OF A PRIOR REJECTED/NON-APPLICANT WITH WHOM THE PLAINTIFF NO LONGER WANTED A RELATIONSHIP. THE ALLEGATIONS IN TURN SPARKED IMPROPER ACTIONS OF THE C.A.N.G. AND ITS OFFICERS FOR OTHER REASONS AS CITED IN THIS ACTION. PLAINTIFF WAS INVOLUNTARILY SEPARATED FROM ACTIVE DUTY AND MILITARY SERVICE WITHOUT DUE PROCESS, IN A CONSPIRATORIAL AND DISCRIMINATING MANNER. THIS SET OF ACTIONS IS THEREFORE BROUGHT AGAINST THE DEFENDANTS FOR THE CAUSES OF ACTION AS CITED.

24. THE PLAINTIFF REQUESTED TO HAVE A BOARD HEARING, **RESPONSE: DENIED,** PRETRIAL **RESPONSE: DENIED,** RIGHTS TO CONFRONT ACCUSER **RESPONSE: DENIED,** REQUEST TO HAVE WITNESS TO TESTIFY ON BEHALF OF PLAINTIFF REGARDING CHARGES OF FALSE ALLEGATIONS **RESPONSE: DENIED.**

24. ALL CHARGES BROUGHT AGAINST HIM BY THE ARMY NATIONAL GUARD, ENLISTED PERSONNEL, EVEN IN THE MILITARY ARE ENTITLED TO BASIC RIGHTS AND DEFENSES BEFORE THEY CAN BE PUNISHED FOR ANY ALLEGED ACTS. FAILURE TO ACT ACCORDING TO MILITARY REGULATION PURSUANT TO PROSECUTION WILL RESULT IN CHARGED BEING DROPPED AGAINST AN ACCUSED PARTY OR A SIGNIFICANT MODIFICATION IN THE SEVERITY OF

PUNISHMENT THE ACCUSED FAVOR; IN INVOLUNTARILY SEPARATING SAID PLAINTIFF FROM SAID THE ARMY NATIONAL GUARD RECRUITER PROGRAM WITHOUT COMMITTED THESE VIOLATIONS OF THE PLAINTIFF RIGHTS AS FOLLOWS:

a. FAILURE TO FULLY AND COMPLETELY GIVE NOTIFICATION AND EXPLANATION OF RIGHTS INVOLVING:

i. COMMANDER'S INTENT TO INITIATE PROCEEDINGS;

ii. THE FACT THAT THE IMPOSING COMMANDER INTENDS TO USE SUMMARIZED PROCEEDINGS AND THE MAXIMUM PUNISHMENTS IMPOSABLE UNDER PROCEEDINGS;

iii. THE RIGHTS TO REMAIN SILENT;

iv. OFFENSES THAT THE SOLDIER ALLEGEDLY HAS COMMITTED AND THE ARTICLES OF THE UCMJ (UNIFORMED CODE OF MILITARY JUSTICE) VIOLATED;

v. THE RIGHT TO DEMAND TRIAL;

vi. THE RIGHT TO CONFRONT WITNESSES, EXAMINE THE EVIDENCE, AND SUBMIT MATTERS IN DEFENSE, EXTENUATION, AND /OR MITIGATION;

vii. THE RIGHT TO APPEAL

b. FAILURE TO ADVISE RE DECISION PERIOD

i. OPPORTUNITY TO ACCEPT THE ARTICLE IN (MILITARY JUSTICE CHARGES)

ii. OPPORTUNITY TO REQUEST A REASONABLE TIME, NORMALLY 24 HOURS, TO DECIDE WHETHER TO DEMAND

TRIAL BY COURT-MARTIAL AND TO GATHER MATTERS IN DEFENSE, EXTENUATION, AND/OR MITIGATION;

c. FAILURE TO GIVE A JUST AND COMPLETE HEARING.

A HEARING MUST CONSIST OF THE FOLLOWING:

i. CONSIDERATION OF EVIDENCE, WRITTEN OR ORAL, AGAINST THE ACCUSED;

ii. EXAMINATION F AVAILABLE EVIDENCE BY THE SOLDIER;

iii. PRESENTATION BY THE SOLDIER OF TESTIMONY OF AVAILABLE WITNESS OR OTHER MATTERS, IN DEFENSE Extenuations, AND/OR MITIGATION;

iv. IMPOSITION OF PUNISHMENT OR TERMINATION OF THE PROCEEDINGS;

v. EXPLANATION OF RIGHT TO APPEAL

d. RIGHT TO COUNSEL

i. INADEQUATE ALLOWANCE OR ABRIDGED ACTIONS OF COUNSEL BY RECRUITING COMMAND.

SPECIFICALLY, THE PLAINTIFF CAN SHOW AND PROVE WITHOUT GREAT EFFORT THAT RECRUITING COMMAND DELIBERATELY, OR OTHERWISE WITH INEXCUSABLE NEGLIGENCE DID VIOLATE ARMY REGULATIONS 15-6 et seq. UNDER MILITARY JUSTICE GUIDELINES NOW CHANGED TO ARMY REGULATIONS 27-10 AND ESPECIALLY AS SUMMARIZED IN CHAPTER 3, SECTION III, PARAGRAPHS 3-14(Soldier entitled to a Preliminary Inquiry), 3-15 & 3-16(Commander's guide for notification and imposition) AND 3-18. ALSO AS SPECIFIED IN ARMY REGULATION 15-6 CHAPTER 1, SECTION I, 1-5, AND SECTION II, 5-6 COUNSEL A, B

(2) et seq. PROOF OF VIOLATIONS OF THE FOLLOWING; 42 U.S.C. SECTIONS 2000e, et seq., DISCRIMINATION, VIOLATION OF 42 U.S.C. AMENDMENT 14, SECTION 1, DUE PROCESS, AMENDMENT 6, AND 42 U.S.C. SECTION 1983 & 1985.

**FIRST THROUGH THE SEVENTH CAUSES OF ACTION**

25. (AGAINST ALL DEFENDANTS, FOR WRONGFUL INVOLUNTARY SEPARATION FROM ACTIVE DUTY OF CALIFORNIA ARMY NATIONAL GUARD) PLAINTIFF REFERS TO, RE-ALLEGES AND INCORPORATES BY REFERENCE ALLEGATIONS IN PARAGRAPHS 1 THRU 24 OF THIS COMPLAINT AS THOUGH FULLY SET FORTH HEREIN.

26. PLAINTIFF IS INFORMED, BELIEVES AND ALLEGES THAT THE DEFENDANTS AND EACH OF THEM KNEW OR SHOULD HAVE KNOWN THAT BY COMMITTING THE ACTS DESCRIBED HEREIN ABOVE, THAT SUCH ACTS CONSTITUTE WRONGFUL INVOLUNTARY SEPARATION FROM ACTIVE DUTY IN THE CALIFORNIA ARMY NATIONAL GUARD, BASED ON THE FOLLOWING;

A) ALL OF THE ACTS DESCRIBED HEREINABOVE.

**WHEREFORE, PLAINTIFF PRAYS FOR JUDGMENT AS FOLLOWS:**

**ON THE FIRST THROUGH SEVENTH CAUSES OF ACTION:**

1. FOR COMPENSATORY DAMAGES IN THE SUM OF $1,536,000.00 FROM THE DEFENDANTS AND EACH OF THEM, OR THE MAXIMUM AMOUNT ALLOWABLE UNDER CURRENT LAW.

2. FOR PUNITIVE DAMAGES FROM THE DEFENDANTS AND EACH OF THEM ACCORDING TO PROOF; AND

3. FOR OUT-OF-POCKET EXPENSES, ACCORDING TO PROOF

4. FOR THE COST OF SUIT; AND

5. FOR SUCH OTHER RELIEF AS THE COURT DEEMS JUST AND PROPER.

DATED: MAY 7, 2001

LEROY POPE, Plaintiff, IN PRO PER

(SEE NEXT PAGE)

**VERIFICATION**

LEROY POPE, THE PLAINTIFF ABOVE-NAMED, BEING SWORN, SAYS AS FOLLOWS:

I HAVE READ THE FOREGOING COMPLAINT AND KNOW THE CONTENTS THEREOF, AND THE CONTENTS ARE TRUE OF MY OWN KNOWLEDGE. I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA, THAT THE FOREGOING IS BOTH TRUE AND CORRECT.

DATED: MAY 7, 2001

Leroy D Pope

LEROY POPE, Plaintiff, IN PRO PER

U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
0923 3785

*Employment Litigation Section*
*P.O. Box 65968*
*Washington, DC 20035-5968*

February 9, 2001

Mr. Leroy D. Pope
1886 Denwall Dr.
Carson, CA 90746

Re: EEOC Charge Against California Army National Guard
No. 340A11362

Dear Mr. Pope:

Because you filed the above charge with the Equal Employment Opportunity Commission, and the Commission has determined that it will not be able to investigate and conciliate that charge within 180 days of the date the Commission assumed jurisdiction over the charge and the Department has determined that it will not file any lawsuit(s) based thereon within that time, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice. If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney. If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires. Your request to the Court should be made well before the end of the time period mentioned above. A request for representation does not relieve you of the obligation to file suit within this 90-day period.

The investigative file pertaining to your case is located in the EEOC Los Angeles District Office, Los Angeles, CA.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

John Ashcroft
Attorney General

by Karen L. Ferguson

Karen L. Ferguson
Civil Rights Analyst
Employment Litigation Section
Civil Rights Division

cc: Los Angeles District Office, EEOC
California Army National Guard



05/17/2001 09:56 FAX

015

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE

Pursuant to the Local Rules Governing Duties of Magistrate Judges, the following Magistrate Judge has been designated to hear discovery motions for this case at the discretion of the assigned District Judge:

- ☐ Robert N. Block (RNBx)
- ☐ Rosalyn M. Chapman (RCx)
- ☐ Elgin Edwards (EEx)
- ☒ Charles F. Eick (Ex)
- ☐ Stephen J. Hillman (SHx)
- ☐ Ann I. Jones (AIJx)
- ☐ Jeffrey W. Johnson (JWJx)
- ☐ Stephen G. Larson (SGLx)
- ☐ James W. McMahon (Mcx)
- ☐ Margaret A. Nagle (MANx)
- ☐ Arthur Nakazato (ANx)
- ☐ Brian Q. Robbins (BQRx)
- ☐ Carolyn Turchin (CTx)
- ☐ Andrew J. Wistrich (AJWx)
- ☐ Carla M. Woehrle (CWx)
- ☐ Ralph Zarefsky (RZx)

Upon the filing of a discovery motion, the motion will be presented to the United States District Judge for consideration and may thereafter be referred to the Magistrate Judge for hearing and determination.

The Magistrate Judge's initials should be used on all documents filed with the Court so that the case number reads as follows:

CV- 01-04163 RSWL (Ex)

---

NOTICE TO COUNSEL

A COPY OF THIS NOTICE MUST BE SERVED WITH THE COMPLAINT ON ALL DEFENDANTS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEROY Pope<br><br>PLAINTIFF(S),<br>v.<br>California Army National Guard, Major General Paul Monroe Jr., Colonel William F Hert, Colonel Daniel Smith, Major Thompson, Master Sergeant David Stewart DEFENDANT(S).<br>and DOES 1 Through 10 | CASE NUMBER<br>CV- 01-04163 RSWL (Ex)<br><br>SUMMONS |

TO: THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney LEROY Pope, whose address is:

1886 Denwall Drive
Carson CA 90746

An answer to the ☑ COMPLAINT, ☐ ______ AMENDED COMPLAINT, (1st, 2nd, etc.)
☐ COUNTERCLAIM, ☐ CROSS-CLAIM which is herewith served upon you within 60 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

CLERK, U. S. DISTRICT COURT

DATE: MAY -7 2001

By [signature]
Deputy Clerk

*(SEAL OF THE COURT)*

CV-1A (01/01) SUMMONS