UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Leroy Pope<br><br>PLAINTIFF(S),<br>v.<br>State of California, California Army National Guard, And Does 1 Through 10, Inclusive, DEFENDANT(S). | CASE NUMBER<br>CV- 01 -- 04163 RSWL (EX)<br><br>SUMMONS<br>First Amended Complaint |

TO: THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with this court and serve upon plaintiff's attorney

Leroy Pope, whose address is:

1886 Denwall Drive
Carson, CA 90746

An answer to the ☐ COMPLAINT, ☑ ______ AMENDED COMPLAINT, (1st, 2nd, etc.) ☐ COUNTERCLAIM, ☐ CROSS-CLAIM which is herewith served upon you within 60 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

CLERK, U. S. DISTRICT COURT
TERRY BAKER
SEAL

DATE: 24 2001

By ______
Deputy Clerk

*(SEAL OF THE COURT)*

LEROY POPE
1886 DENWAL DRIVE
CARSON, CA 90746
(310) 635-2253

FILED

01 JUL 24 PM 2:44

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LEROY POPE,<br>Plaintiff,<br>Vs.<br>STATE OF CALIFORNIA, CALIFORNIA ARMY NATIONAL GUARD, AND DOES 1 THROUGH 10, INCLUSIVE,<br>Defendants. | Case No.: CV 01-04163-LEW (EX)<br>FIRST AMENDED COMPLAINT FOR:<br>1. BREACH OF CONTRACT<br>2. FAILURE TO INVESTIGATE<br>3. FAILURE TO RESPOND TO REBUTTAL AND DENIAL OF RIGHT TO CONFRONT ACCUSER (S)<br>4. STATUTE OF LIMITATIONS VIOLATION<br>5. VIOLATION OF 42 U.S.C. SECTIONS 2000-e, ET SEQ.; DISCRIMINATION<br>6. VIOLATION OF 42 U.S.C. AMENDMENT 14 SECTION 1, DUE PROCESS<br>7. VIOLATION OF 42 U.S.C. SECTION 1983 & 1985<br>8. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |

PLAINTIFF LEROY POPE, HEREBY ALLEGES AS FOLLOWS:

JURISDICTION AND VENUE

1. THIS IS A CIVIL ACTION ARISING UNDER 42 U.S.C. AMENDMENT 14 AND 42 U.S.C. SECTION 2000e, ET SEQ., THIS COURT HAS FEDERAL

JURISDICTION OVER THIS ACTION. THIS COURT HAS PENDENT JURISDICTION OVER ANY STATE LAW CLAIMS ASSERTED HEREIN.

2. VENUE IS PROPER IN THIS DISTRICT UNDER 28 U.S.C. SECTION 1391, IN THAT THE CLAIMS AROSE IN THIS DISTRICT AND DEFENDANT (S) TRANSACTS GOVERNMENTAL BUSINESS IN THIS DISTRICT DIRECTLY OR THROUGH ITS AGENTS.

<u>SUMMARY OF THIS DISPUTE</u>

1. PLAINTIFF SERGEANT FIRST CLASS RECRUITER LEROY POPE, FOR THE CALIFORNIA ARMY NATIONAL GUARD, HEREINAFTER REFERRED TO AS "C.A.N.G." WAS RELEVANT TO THIS COMPLAINT. ACCUSATIONS WERE BROUGHT AGAINST SAID PLAINTIFF 1) AN INAPPROPRIATE RELATIONSHIP WITH A FEMALE APPLICANT WHO WAS DENIED ENLISTMENT INTO THE MILITARY, AND 2) ABUSE OF A GOVERNMENT VEHICLE. THE C.A.N.G. VIOLATED THEIR OWN FEDERALLY CHARTERED REGULATIONS, AND DENIED THE SAID PLAINTIFF FAIR AND EQUAL RIGHTS TO BE TRIED UNDER THE LAW. THE C.A.N.G. DENIED SAID PLAINTIFF A FAIR AND PROPER PRE-TRIAL HEARING, AS WELL AS A TRIAL ITSELF. THE C.A.N.G. FAILED TO FOLLOW PROCEDURE AND DENIED SAID PLAINTIFF FAIR AND EQUAL TREATMENT UNDER THE LAW. THE C.A.N.G. NEVER INVESTIGATED ALLEGATIONS AGAINST PLAINTIFF AND HAD NO SUPPORTING EVIDENCE. THEN WITHOUT DUE PROCESS OF LAW AND IN A DISCRIMINATING AND CONSPIRATORIAL

2. FASHION, THE C.A.N.G. INVOLUNTARILY SEPARATED SAID PLAINTIFF FROM THE MILITARY. THEREFORE, THIS ACTION IS

3. BROUGHT FORTH AGAINST THE DEFENDANT (S) C.A.N.G. FOR THE CAUSES OF ACTIONS CITED HEREIN.

THE PARTIES

3. PLAINTIFF SERGEANT FIRST CLASS RECRUITER LEROY POPE, IS A CITIZEN OF THE UNITED STATES, AND THE STATE OF CALIFORNIA, AND MAINTAINS HIS PRINCIPAL PLACE OF RESIDENCE IN CARSON, CALIFORNIA AT 1886 DENWALL DRIVE, CARSON, CA 90746.

4. DEFENDANT (S), THE C.A.N.G., IS A MILITARY AGENCY OF THE STATE OF CALIFORNIA, AND AN EXTENSION OF THE UNITED STATES MILITARY AND SUBJECT TO FEDERALIZATION IN NATIONAL WARTIME EVENTS, WITH ITS PRINCIPAL PLACE OF OPERATION BASED IN SACRAMENTO, CALIFORNIA, AT 9800 GOETHE ROAD, 95826-9101 AND THE STATE OF CALIFORNIA.

5. PLAINTIFF DOES NOT KNOW THE CURRENT CAPACITIES OR EXACT DUTY STATION NOR THE NAMES AND FULL CAPACITIES OF DEFENDANTS SUED HEREUNDER AS DOES 1 THOUGH 10, INCLUSIVE, THEREFORE, PLAINTIFF SUES EACH OF THEM BY FICTITIOUS NAMES. PLAINTIFF WILL SEEK ISSUE TO AMEND THIS COMPLAINT TO ALLEGE THE DOE DEFENDANTS' TRUE NAMES AND CAPACITIES WHEN THEY ARE ASCERTAINED. PLAINTIFF IS INFORMED AND BELIEVES, AND ON THAT BASIS ALLEGES, THAT EACH DOE DEFENDANT IS RESPONSIBLE IN SOME MANNER FOR THE ACTS AND LIABILITIES ALLEGED HEREIN AND ARE THE DEFENDANTS AND EACH OF THEM.

BACKGROUND OF THIS ACTION

6. ON NOVEMBER 4, 1999, MASTER SERGEANT STEWARD, SUPERVISOR FOR RECRUITING DISTRICT LYNWOOD CA ASKED ME ABOUT ALLEGATIONS THAT MS. PHILLMORE MADE ON NOVEMBER 4, 1999. THE PLAINTIFF TOLD HIM THAT THE ALLEGATIONS AGAINST HIM WERE FALSE AND MISLEADING. THE PLAINTIFF TOLD MASTER SERGEANT STEWARD THAT MS. PHILLMORE HAD BEEN RELEASED FROM UCLA MENTAL WARD DUE TO MENTAL DEPRESSION. PLAINTIFF EXPLAINED THAT MS PHILLMORE WAS MEDICAL REJECTED ON APRIL 9, 1997, AND HER STATUS WAS REJECTED/NON-APPLICANT, AND WILL REMAIN UNTIL **LA MEPS** DETERMINES HER BEING A QUALIFY APPLICANT ACCORDING TO REGULATIONS. SHE LATER ACCEPTED A BETTER JOB OFFER WITH THE LONG BEACH SCHOOL DISTRICT JUNE 1997, BEFORE HER SUBMITTING AN APPLICATION BEFORE SIGNING UP FOR THE MILITARY. THERE IS AN EMPLOYMENT VERIFICATION LETTER ON FILE SHOWING HER WORKING IN 1997. THE PLAINTIFF ALSO TOLD MASTER SERGEANT STEWARD THAT HE AND MS. PHILLMORE WERE IN A RELATIONSHIP FOR THE PAST TWO YEARS AND RELATIONSHIP ENDED BECAUSE OF MS. PHILLMORE'S HISTORY WITH MENTAL ILLNESS, SEXUAL MOLESTATION AND CRIMINAL ACTIVITY. MASTER SERGEANT STEWARD ALLEGED THAT THE PLAINTIFF WAS LYING WITHOUT ANY CONCLUSIVE FINDINGS, AND USED HIS OWN DESCRIPTION AND DEFINITION OF THE WORD APPLICANT. MASTER SERGEANT STEWARD COUNSELED PLAINTIFF CONCERNING THE ALLEGATIONS NONETHELESS, AND SAID THAT THERE WOULD BE A FOLLOW-UP INVESTIGATION.

7. DURING THE NEXT COUPLE OF MONTHS, THE PLAINTIFF SUFFERED THROUGH VERY DIFFICULT TIMES EMOTIONALLY, BECAUSE OF THE CONSTANT HARASSMENT BY MASTER SERGEANT STEWARD. THE PLAINTIFF WAS RECEIVING PHONE CALLS FROM FELLOW RECRUITERS STATING THAT MASTER SERGEANT STEWARD WAS SPREADING NEGATIVE AND INCORRECT INFORMATION ABOUT HIM.

8. ON JANUARY 10, 2000, PLAINTIFF MET WITH RECRUITING OFFICER CAPTAIN GIBBS AND MASTER SERGEANT STEWARD. CAPTAIN GIBBS SAID THE RECRUITING COMMAND GAVE HER CONTROL OVER THIS SITUATION AND THAT SHE WANTED PLAINTIFF TO REMAIN IN HER COMMAND. CAPTAIN GIBBS SAID THAT PLAINTIFF'S 10 YEARS OF EXPERIENCE IN RECRUITING HAD EARNED HIM TOP RECRUITER RECOGNITION FOR HIS ASSIGNED AREA. HER DECISION WOULD BE A LETTER OF REPRIMAND AND THERE WOULD BE AN INVESTIGATION. PLAINTIFF WAS INSTRUCTED TO FAX A LETTER TO CAPTAIN GIBBS ABOUT HIS RELATIONSHIP WITH MS. PHILLMORE.

9. ON MARCH 24, 2000, CAPTAIN GIBBS INFORMED THE PLAINTIFF THAT THE RECRUITING COMMAND WANTED HIM DISCHARGED FROM ACTIVE DUTY. CAPTAIN GIBBS AND MASTER SERGEANT STEWARD DID NOT KNOW OF ANY REGULATIONS THAT PLAINTIFF HAD VIOLATED, BUT THEY SAID THE PLAINTIFF WAS GUILTY OF THE ALLEGATIONS. CAPTAIN GIBBS SAID LIEUTENANT COLONEL SMITH WOULD INFORM THE PLAINTIFF ON WHAT REGULATION (S) WERE VIOLATED. SERGEANT SMITH IS A CAUCASIAN SOLDIER.

10. ON APRIL 2, 2000, THE PLAINTIFF MET WITH LIEUTENANT COLONEL SMITH FOR FIVE MINUTES AND HE INFORMED PLAINTIFF OF THAT

PLAINTIFF WAS BEING DISCHARGED FROM ACTIVE DUTY. COLONEL SMITH TOLD PLAINTIFF THAT PLAINTIFF WAS ENTITLED TO BE REPRESENTED BY LEGAL COUNSEL.

11. ON APRIL 6, 2000, WITH THE ASSISTANCE OF JUDGE ADVOCATE GENERAL OFFICER, MAJOR THOMPSON, A REBUTTAL WAS PREPARED AND SUBMITTED ON APRIL 14, 2000. THE PLAINTIFF TOLD MAJOR THOMPSON HE HAS WITNESSES AND EVIDENCE TO DISPUTE THE ALLEGATIONS. THE OFFICER TOLD PLAINTIFF THAT THE ALLEGATIONS AGAINST HIM ARE NOT FOUND IN NATIONAL GUARD REGULATION 600-5, FOR INVOLUNTARY SEPARATION. HE FURTHER STATED THAT UNLESS RECRUITING COMMAND HAS ITS OWN REGULATION, THE PLAINTIFF WAS INNOCENT. HE ALSO STATED THAT THE ALLEGATIONS ARE NOT SUFFICIENT CAUSE TO DISCHARGE ONE FROM ACTIVE DUTY BECAUSE THE FACTS SHOWED THAT THE PLAINTIFF BECAME INVOLVED WITH REJECTED/NON-APPLICANT PHILLMORE WHEN SHE NO LONGER DESIRED AN INTEREST IN THE C.A.N.G. HE FURTHER STATED THAT THE STAFF JAG OFFICE IS RESPONSIBLE FOR INVESTIGATING EVERYTHING THAT PLAINTIFF ALLEGES PERTAINING TO HIS REBUTTAL.

12. ON OR ABOUT APRIL 14, 2000, MAJOR THOMPSON SAID THAT HE WOULD BE TALKING TO JAG MAJOR DANA ON APRIL 17, 2000, WHO IS REPRESENTING THE COMMAND AND INFORMED HIM THAT THESE ALLEGATIONS WERE NOT FOUND IN ARMY REGULATIONS. MAJOR THOMPSON NEVER SPOKE WITH JAG MAJOR DANA. MAJOR THOMPSON FAILED TO REPRESENT PLAINTIFF AND NEVER TRIED TO BRING ANY PARTIES TOGETHER TO

RESOLVE THE CHARGES AGAINST PLAINTIFF. THIS OFFICER MISLED THE PLAINTIFF INTO THINKING THAT COUNSEL WOULD REPRESENT HIM.

13. ON APRIL 26, 2000, THE PLAINTIFF MET WITH LIEUTENANT COLONEL SMITH TO RESPOND WITH HIS REBUTTAL. THIS OFFICER TOLD THE PLAINTIFF THAT HALF OF HIS COMMAND BELIEVED THE REBUTTAL TO BE TRUTHFUL BUT HE DID NOT BELIEVE THE PLAINTIFF. THE PLAINTIFF RELATED TO THIS OFFICER THAT HE HAD NOT BEEN FOUND GUILTY OF ANYTHING REGARDING THE ALLEGATIONS AGAINST HIM. IN CONCLUSION, COLONEL SMITH ACTED BEYOND HIS AUTHORITY BY PUNISHING THE PLAINTIFF FOR AN OFFENSE THAT HAD ALREADY PAST THE STATUTE OF LIMITATIONS. Note: ARMY REGULATION 27-10 STATED NO PERSON CAN BE PUNISHED FOR A NON-JUDICIAL OFFENSE THAT OCCURS MORE THAN TWO YEARS OF THE EVENT. THIS OFFICER SHOWED PREJUDICE BY PUNISHING THE PLAINTIFF FOR AN ALLEGED OFFENSES IN APRIL 1997, WHICH HE FAILED TO INVESTIGATE AND ACTED ABOVE THE LAW.

14. ON MAY 2, 2000, A LETTER WAS FORWARDED TO THE RECRUITING COMMAND STATING THAT THE PLAINTIFF WAS NOT GOING TO VOLUNTARILY RESIGN FROM ACTIVE DUTY BECAUSE THE C.A.N.G. HAD NOT SHOWN FAIRNESS AND THE COMMAND HAD NOT FOLLOWED ARMY REGULATION PROCEDURES.

15. ON JUNE 5, 2000, MAJOR GENERAL PAUL MONROE, JR. THE ADVOCATE GENERAL, SIGNED A LETTER STATING THAT HE WAS INVOLUNTARILY SEPARATING THE PLAINTIFF FROM ACTIVE DUTY ON AUGUST 31, 2000. GENERAL MONROE FAILED TO PROTECT THE BASIC RIGHTS OF THE PLAINTIFF.

HE ALLOWED HIS COMMAND TO ILLEGALLY SEPARATE THE PLAINTIFF FROM ACTIVE DUTY WITHOUT FOLLOWING ARMY REGULATION 27-10 PROCEDURES.

16. ON JUNE 26, 2000, PLAINTIFF SENT A CERTIFIED LETTER TO THE ADVOCATE GENERAL'S OFFICE. THE LETTER EXPLAINED HOW THE PLAINTIFF'S RIGHTS WERE VIOLATED, AND THE FAILURE OF THE CHAIN OF COMMAND TO WORK FROM THE BOTTOM UP. PLAINTIFF INFORMED THE ADVOCATE GENERAL'S OFFICE THAT HE HAD NOT BEEN GIVEN THE OPPORTUNITY TO BE REPRESENTED BY COUNSEL. THE PLAINTIFF ALSO REPORTED SEVERAL INCIDENTS OF DISCRIMINATION WITHIN THE COMMAND. MAJOR GENERAL MONROE FAILED TO RESPOND TO THE LETTER.

17. COLONEL WILLIAM F. WEIR WAS ASSIGNED AS STATE STAFF JUDGE ADVOCATE GENERAL OFFICER FOR THE CALIFORNIA ARMY NATIONAL GUARD. THIS OFFICER WAS RESPONSIBLE FOR THE BASIC SOLDIER RIGHTS. COLONEL WEIR VIOLATED ARMY REGULATIONS BY FAILING TO CONDUCT AN INVESTIGATION AND DENIED PLAINTIFF DUE PROCESS.

18. ON JULY 25, 2000, THE PLAINTIFF CONTACTED THE STATE SENATOR BOWEN'S OFFICER AND ASKED FOR ASSISTANCE IN CONTACTING THE C.A.N.G. IN REGARDS TO THE NON RESPONSIVENESS OF GENERAL MONROE TO THE PLAINTIFF'S LETTER DATED JUNE 26, 2000. ACTING ON BEHALF OF SERGEANT FIRST CLASS POPE, MARISELA CARABALLO, FIELD REPRESENTATIVE FOR SENATOR DEBRA BOWEN'S OFFICE ASKED THE NATIONAL GUARD WHY WAS THE PLAINTIFF DENIED DUE PROCESS. ON AUGUST 10, 2000, SENATOR DEBRA BOWEN'S OFFICE, TWENTY-EIGHT DISTRICT, CALIFORNIA LEGISLATURE, RECEIVED A LETTER FROM THE C.A.N.G. STATING THAT THEY DID NOTHING WRONG.

THE C.A.N.G. NEVER RESPONDED TO THE LACK OF DUE PROCESS ALLEGATION. AT THAT POINT, ALL MILITARY CHANNELS HAD BEEN EXHAUSTED. IN ADDITION, COLONEL WEIR ALSO TOLD THE STATE SENATOR REP. THAT HE DIDN'T KNOW WHY THE RECRUITING COMMAND DIDN'T OFFER SERGEANT POPE, THE PLAINTIFF, AN ARTICLE 15 HEARING.

19. ON JUNE 18, 2000, THE PLAINTIFF FILED A COMPLAINT AGAINST THE C.A.N.G. WITH THE EQUAL EMPLOYMENT OPPORTUNITIES COMMISSION. DURING THIS TIME SERGEANT, TORRY RABB WAS A NATIONAL GUARD RECRUITER ASSIGNED TO MASTER SERGEANT STEWARD'S DISTRICT. THIS RECRUITER TOLD PLAINTIFF THAT MASTER SERGEANT STEWARD DID NOT REPORT ONE OF HIS CAUCASIAN RECRUITER THAT HAD A PREVIOUS COMPLAINT FILED AGAINST HIM FOR ALLEGEDLY HAVING SEXUAL RELATIONS WITH ONE OF HIS RECRUITS. THE PLAINTIFF ASKED SERGEANT RABB, HOW HE KNEW THIS INFORMATION TO BE TRUTHFUL. SERGEANT RABB RESPONDED BY SAYING THAT THE RECRUITER HAD TOLD HIM. THE PLAINTIFF ASKED SERGEANT RABB WHY HE WAS SHARING THIS INFORMATION. SERGEANT RABB REPLIED BY SAYING, "WHAT MASTER SERGEANT STEWARD AND THE RECRUITING COMMAND HAD DONE TO YOU WAS WRONGFUL." IT WOULD APPEAR THAT THE ACTIONS OF MASTER SERGEANT STEWARD WERE DISCRIMINATING IN NATURE AGAINST THE PLAINTIFF. SERGEANT STEWARD IS A CAUCASIAN SOLDIER WHO WITHHELD THIS INFORMATION FROM THE RECRUITING COMMAND TO PROTECT THIS CAUCASIAN RECRUITER. IN ADDITION, ON MARCH 24, 2000, SERGEANT FIRST CLASS JULIE SMITH AND THE PLAINTIFF MET WITH COLONEL

SMITH. SERGEANT SMITH WAS IN TROUBLE FOR ALLEGED FRAUDULENT ENLISTMENT. SHE ALLEGEDLY FALSIFIED A PARENT'S SIGNATURE TO GET A RECRUIT ENLISTED INTO THE NATIONAL GUARD. THE RECRUIT'S MOTHER FOUND OUT THE NEXT DAY AND CALLED THE RECRUITING COMMAND TO FOLLOW UP WITH A COMPLAINT. COLONEL SMITH TOLD THIS RECRUITER THAT HER ACTIONS AND CONDUCT WERE NOT INAPPROPRIATE AND SAID THAT SHE WOULD NOT BE DISCHARGED FROM ACTIVE DUTY. THIS ALLEGED ACTION BY THE RECRUITER WAS A FELONY. COLONEL SMITH SAID HE WOULD GIVE THE RECRUITER A SUPERVISION ARTICLE 15.

20. ON AUGUST 31, 2000, PLAINTIFF WAS DENIED MEDICAL TREATMENT FOR AN INJURY THAT WAS SUSTAINED IN GSA AUTOMOBILE ACCIDENT IN THE LINE OF DUTY ON DECEMBER 3, 1993 AND OCTOBER 3, 1999. THE COMMAND KNEW THAT THE PLAINTIFF WAS SUFFERING FROM NERVE DAMAGE AND A BULGED DISK. THE COMMAND KNEW THAT DOCTORS HAD PROPOSED SURGERY TO REPAIR THE PLAINTIFF'S NERVE DAMAGE. DR. RICHARD ALLEN, MAJOR, US AIR FORCE, INFORMED THE PLAINTIFF IN JUNE 2000 THAT A COMMANDER DOES NOT HAVE THE AUTHORITY TO DISCHARGE A PERSON THAT IS UNDER MEDICAL AUTHORITY.

21. IN A LETTER FROM THE E.E.O.C., DATED FEBRUARY 9, 2001, IT ADVISED THE PLAINTIFF THAT IT WOULD NOT BE ABLE TO COMPLETE ITS INVESTIGATION OF THE PLAINTIFF'S ALLEGATIONS WITHIN THE STATUTORY SIX MONTH PERIOD, AND THAT IT WAS STEPPING ASIDE TO ALLOW THE PLAINTIFF TO FILE A COMPLAINT AGAINST THE C.A.N.G. PURSUANT TO 42 U.S.C. 2000e et seq., FOR EMPLOYMENT

DISCRIMINATION BASED ON COLOR, CREED, ETC.. AND VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER THIS CODE.

22. ALL OF THE ABOVE ACTS BEGAN WITH THE ALLEGATIONS OF A PRIOR REJECTED/NON-APPLICANT WITH WHOM THE PLAINTIFF NO LONGER WANTED A RELATIONSHIP. THE ALLEGATIONS IN TURN SPARKED IMPROPER ACTIONS OF THE C.A.N.G. AND ITS OFFICERS FOR OTHER REASONS AS CITED IN THIS ACTION. PLAINTIFF WAS INVOLUNTARILY SEPARATED FROM ACTIVE DUTY AND MILITARY SERVICE WITHOUT DUE PROCESS, IN A CONSPIRATORIAL AND DISCRIMINATING MANNER. THIS SET OF ACTIONS IS THEREFORE BROUGHT AGAINST THE DEFENDANTS FOR THE CAUSES OF ACTION AS CITED.

23. THE PLAINTIFF REQUESTED TO HAVE A BOARD HEARING, **RESPONSE: DENIED,** PRETRIAL **RESPONSE: DENIED,** RIGHTS TO CONFRONT ACCUSER **RESPONSE: DENIED,** REQUEST TO HAVE WITNESS TO TESTIFY ON BEHALF OF PLAINTIFF REGARDING CHARGES OF FALSE ALLEGATIONS **RESPONSE: DENIED.**

24. ALL CHARGES BROUGHT AGAINST HIM BY THE ARMY NATIONAL GUARD, ENLISTED PERSONNEL, EVEN IN THE MILITARY ARE ENTITLED TO BASIC RIGHTS AND DEFENSES BEFORE THEY CAN BE PUNISHED FOR ANY ALLEGED ACTS. FAILURE TO ACT ACCORDING TO MILITARY REGULATION PURSUANT TO PROSECUTION WILL RESULT IN CHARGED BEING DROPPED AGAINST AN ACCUSED PARTY OR A SIGNIFICANT MODIFICATION IN THE SEVERITY OF PUNISHMENT THE ACCUSED FAVOR. IN INVOLUNTARILY SEPARATING SAID PLAINTIFF FROM SAID THE ARMY NATIONAL GUARD RECRUITER PROGRAM

WITHOUT COMMITTED THESE VIOLATIONS OF THE PLAINTIFF RIGHTS AS FOLLOWS:

a. FAILURE TO FULLY AND COMPLETELY GIVE NOTIFICATION AND EXPLANATION OF RIGHTS INVOLVING:

i. COMMANDER'S INTENT TO INITIATE PROCEEDINGS;

ii. THE FACT THAT THE IMPOSING COMMANDER INTENDS TO USE SUMMARIZED PROCEEDINGS AND THE MAXIMUM PUNISHMENTS IMPOSABLE UNDER PROCEEDINGS;

iii. THE RIGHTS TO REMAIN SILENT;

iv. OFFENSES THAT THE SOLDIER ALLEGEDLY HAS COMMITTED AND THE ARTICLES OF THE UCMJ (UNIFORMED CODE OF MILITARY JUSTICE) VIOLATED;

v. THE RIGHT TO DEMAND TRIAL;

vi. THE RIGHT TO CONFRONT WITNESSES, EXAMINE THE EVIDENCE, AND SUBMIT MATTERS IN DEFENSE, EXTENUATION, AND /OR MITIGATION;

vii. THE RIGHT TO APPEAL

b. FAILURE TO ADVISE RE DECISION PERIOD

i. OPPORTUNITY TO ACCEPT THE ARTICLE IN (MILITARY JUSTICE CHARGES)

ii. OPPORTUNITY TO REQUEST A REASONABLE TIME, NORMALLY 24 HOURS, TO DECIDE WHETHER TO DEMAND TRIAL BY COURT-MARTIAL AND TO GATHER MATTERS IN DEFENSE, EXTENUATION, AND/OR MITIGATION;

c. FAILURE TO GIVE A JUST AND COMPLETE HEARING.

A HEARING MUST CONSIST OF THE FOLLOWING:

i. CONSIDERATION OF EVIDENCE, WRITTEN OR ORAL, AGAINST THE ACCUSED;

ii. EXAMINATION F AVAILABLE EVIDENCE BY THE SOLDIER;

iii. PRESENTATION BY THE SOLDIER OF TESTIMONY OF AVAILABLE WITNESS OR OTHER MATTERS, IN DEFENSE Extenuations, AND/OR MITIGATION;

iv. IMPOSITION OF PUNISHMENT OR TERMINATION OF THE PROCEEDINGS;

v. EXPLANATION OF RIGHT TO APPEAL

d. RIGHT TO COUNSEL

i. INADEQUATE ALLOWANCE OR ABRIDGED ACTIONS OF COUNSEL BY RECRUITING COMMAND.

SPECIFICALLY, THE PLAINTIFF CAN SHOW AND PROVE WITHOUT GREAT EFFORT THAT RECRUITING COMMAND DELIBERATELY, OR OTHERWISE WITH INEXCUSABLE NEGLIGENCE DID VIOLATE ARMY REGULATIONS 15-6 et seq. UNDER MILITARY JUSTICE GUIDELINES AND ESPECIALLY AS SUMMARIZED IN CHAPTER 3, SECTION III, PARAGRAPHS 3-14(Soldier entitled to a Preliminary Inquiry), 3-15 & 3-16(Commander's guide for notification and imposition) AND 3-18. ALSO AS SPECIFIED IN ARMY REGULATION 15-6 CHAPTER 1, SECTION I, 1-5, AND SECTION II, 5-6 COUNSEL A, B (2) et seq. PROOF OF VIOLATIONS OF THE FOLLOWING; 42 U.S.C. SECTIONS 2000e, et seq., DISCRIMINATION, VIOLATION OF 42 U.S.C. AMENDMENT 14, SECTION 1, DUE PROCESS, AMENDMENT 6, AND 42 U.S.C. SECTION 1983 & 1985.

**FIRST THROUGH THE EIGHT CAUSES OF ACTION**

25. (AGAINST ALL DEFENDANTS, FOR WRONGFUL INVOLUNTARY SEPARATION FROM ACTIVE DUTY OF CALIFORNIA ARMY NATIONAL GUARD) PLAINTIFF REFERS TO, RE-ALLEGES AND INCORPORATES BY REFERENCE ALLEGATIONS IN PARAGRAPHS 1 THRU 24 OF THIS COMPLAINT AS THOUGH FULLY SET FORTH HEREIN.

26. PLAINTIFF IS INFORMED, BELIEVES AND ALLEGES THAT THE DEFENDANTS AND EACH OF THEM KNEW OR SHOULD HAVE KNOWN THAT BY COMMITTING THE ACTS DESCRIBED HEREIN ABOVE, THAT SUCH ACTS CONSTITUTE WRONGFUL INVOLUNTARY SEPARATION FROM ACTIVE DUTY IN THE CALIFORNIA ARMY NATIONAL GUARD, BASED ON THE FOLLOWING;

A) ALL OF THE ACTS DESCRIBED HEREINABOVE.

**(SEE NEXT PAGE)**

**WHEREFORE, PLAINTIFF PRAYS FOR JUDGMENT AS FOLLOWS:**

**ON THE FIRST THROUGH EIGHT CAUSES OF ACTION:**

1. FOR COMPENSATORY DAMAGES IN THE SUM OF $1,536,000.00 FROM THE DEFENDANTS AND EACH OF THEM, OR THE MAXIMUM AMOUNT ALLOWABLE UNDER CURRENT LAW.
2. FOR PUNITIVE DAMAGES FROM THE DEFENDANTS AND EACH OF THEM ACCORDING TO PROOF; AND
3. FOR OUT-OF-POCKET EXPENSES, ACCORDING TO PROOF
4. FOR THE COST OF SUIT; AND
5. FOR SUCH OTHER RELIEF AS THE COURT DEEMS JUST AND PROPER.

DATED: July 20, 2001

Leroy Pope

LEROY POPE, Plaintiff, IN PRO PER

(SEE NEXT PAGE)

# VERIFICATION

LEROY POPE, THE PLAINTIFF ABOVE-NAMED, BEING SWORN, SAYS AS FOLLOWS:

I HAVE READ THE FOREGOING COMPLAINT AND KNOW THE CONTENTS THEREOF, AND THE CONTENTS ARE TRUE OF MY OWN KNOWLEDGE. I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA, THAT THE FOREGOING IS BOTH TRUE AND CORRECT.

DATED: July 20, 2004

Leroy Pope

LEROY POPE, Plaintiff, IN PRO PER

forward the record of proceedings to the gaining commander for appropriate disposition.

*c. Personnel of other armed forces.* An Army commander is not prohibited from imposing nonjudicial punishment on a military member of his or her command solely because the member is a member of another armed service. Other provisions of this regulation notwithstanding, an Army commander may impose punishment upon a member of another service only under the circumstances, and according to the procedures prescribed by the member's parent service. (In particular, see JAGMAN 0106 d. for Navy and Marine Corps personnel; paragraphs 2 and 2.2.1, AFI 51–202, for Air Force personnel; and MJM, Article 1–A–3 (c), for Coast Guard personnel.)

### 3–9. Minor offenses

Generally, the term " minor" includes misconduct not involving any greater degree of criminality than is involved in the average offense tried by summary court-martial (SCM). It does not include misconduct of a type that, if tried by GCM, could be punished by dishonorable discharge or confinement for more than 1 year (see para 1 e, Part V, MCM). This is not a hard and fast rule; the circumstances of the offense might indicate that action under Article 15 would be appropriate even in a case falling outside these categories. Violations of, or failures to obey general orders or regulations may be minor offenses if the prohibited conduct itself is of a minor nature even though also prohibited by a general order or regulation.

### 3–10. Double punishment prohibited

Several minor offenses arising out of substantially the same transaction or misconduct will not be made the basis of separate actions under Article 15, UCMJ. When punishment has been imposed under Articles 13 or 15, or the proceedings are terminated tantamount to a finding of not guilty, punishment may not be imposed for the same misconduct under Article 15. This does not restrict the right to prefer court-martial charges for a non-minor offense previously punished under the provisions of Article 15.

### 3–11. Restriction on punishment after exercise of jurisdiction by civilian authorities

Chapter 4 covers the limitations on nonjudicial punishment after exercise of jurisdiction by civilian authorities.

### 3–12. Statute of limitations

Nonjudicial punishment may not be imposed for offenses which were committed more than two years before the date of imposition. Computation of this two year limitation is in accordance with Articles 43(c) and (d), UCMJ. The period of limitations does not run when the soldier concerned is absent without authority; fleeing from justice; outside the territory where the United States has authority to apprehend; in the custody of civil authorities; or, in the hands of the enemy.

## Section III
## Procedure (para 4, Part V, MCM)

### 3–13. General

The authority to impose nonjudicial punishment charges a commander with the responsibility of exercising the commander's authority in an absolutely fair and judicious manner. (See also para 1d, Part V, MCM.)

### 3–14. Preliminary inquiry

*a.* The commander of the alleged offender must ensure that the matter is investigated promptly and adequately. The investigation should provide the commander with sufficient information to make an appropriate disposition of the incident. The investigation should cover—

(1) Whether an offense was committed.

(2) Whether the soldier was involved.

(3) The character and military record of the soldier.

*b.* Usually the preliminary investigation is informal and consists of interviews with witnesses and/or review of police or other informative reports. If, after the preliminary inquiry, the commander determines, based on the evidence currently available, that the soldier probably has committed an offense and that a nonjudicial punishment procedure is appropriate, the commander should (unless the case is to be referred to a superior commander (para 3–5)) take action as set forth in this section.

### 3–15. Commander's guide for notification and imposition

In all cases, other than summarized proceedings, commanders should use appendix B of this regulation as a guide in conducting the proceedings.

### 3–16. Summarized proceedings

*a. Preliminary inquiry.*

(1) A commander, after a preliminary inquiry into an alleged offense by an enlisted soldier may use summarized proceedings if it is determined that should punishment be found to be appropriate, it should not exceed—

*(a)* Extra duties for 14 days.

*(b)* Restriction for 14 days.

*(c)* Oral reprimand or admonition.

*(d)* Any combination of the above.

(2) DA Form 2627–1 (Summarized Record of Proceedings Under Article 15, UCMJ) will be used to record the proceedings. An illustrated example of a completed DA Form 2627–1 is shown at figure 3–1. The rules and limitations concerning punishments in section IV and provisions regarding clemency in section V are applicable.

*b. Notification and explanation of rights.* If an imposing commander determines that summarized proceedings are appropriate, the designated subordinate officer or noncommissioned officer (NCO) (para 3–18), or the commander personally, will notify the soldier of the following:

(1) The imposing commander's intent to initiate proceedings under Article 15, UCMJ.

(2) The fact that the imposing commander intends to use summarized proceedings and the maximum punishments imposable under these proceedings.

(3) The right to remain silent.

(4) Offenses that the soldier allegedly has committed and the Article(s) of the UCMJ violated.

(5) The right to demand trial (see para 4a(5), Part V, MCM).

(6) The right to confront witnesses, examine the evidence, and submit matters in defense, extenuation, and/or mitigation.

(7) The right to appeal.

*c. Decision period.* The soldier will be given the opportunity to—

(1) Accept the Article 15.

(2) Request a reasonable time, normally 24 hours, to decide whether to demand trial by court-martial and to gather matters in defense, extenuation, and/or mitigation. Because of the limited nature of the possible punishment, the soldier has no right to consult with legally qualified counsel.

*d. Hearing.* Unless the soldier demands trial by court-martial within the decision period, the imposing commander may proceed with the hearing (see para 3–18 g(1)). The hearing will consist of the following:

(1) Consideration of evidence, written or oral, against the soldier.

(2) Examination of available evidence by the soldier.

(3) Presentation by the soldier of testimony of available witnesses or other matters, in defense, extenuation, and/or mitigation.

(4) Determination of guilt or innocence by the imposing commander.

(5) Imposition of punishment or termination of the proceedings.

(6) Explanation of right to appeal.

*e. Appeal.* The appeal and the decision on appeal will be recorded in block 5, DA Form 2627-1. This will be done according to the procedures set forth in paragraph 3–32. The soldier will be given a reasonable time (normally no more than 5 calendar days) within which to submit an appeal (see para 3–29). The soldier may, pending submission and decision on the appeal, be required to undergo

DEPARTMENTS OF THE ARMY AND THE AIR FORCE
OFFICE OF THE ADJUTANT GENERAL
CALIFORNIA NATIONAL GUARD
9800 GOETHE ROAD - P.O. BOX 269101
SACRAMENTO, CALIFORNIA 95826-9101

CAAG-SJA 1 August 2001

MEMORANDUM FOR Department of the Army Litigation, Attention: Major Joseph Fetterman, 901 N. Stuart Street, Suite 400, Arlington, Virginia 22203

SUBJECT: Leroy Pope vs. California Army National Guard, et al.

1. The Adjutant General and I were served with an amended complaint today (Copy Enclosed). I assume that the U. S. Attorney is doing nothing in the way of providing representation since I have not heard anything in reply to my memorandum of 18 May 2001.

2. We are currently represented by Ms. Patricia Nevonen of the State Attorney General's Office (213) 897-9474. She is preparing a motion to dismiss.

WILLIAM F. WEIR
COL, JA, CANG
Staff Judge Advocate

Encl
as

*BILL LOCKYER*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

RONALD REAGAN BUILDING
300 SOUTH SPRING STREET, SUITE 5212
LOS ANGELES, CA 90013

Public: 213-897-2000
Telephone: 213-897-9474
Facsimile: 213-897-1071
E-Mail: patricia.nevonen@doj.ca.gov

August 13, 2001

Leroy Pope
1886 Denwal Drive
Carson, CA 90746

RE: **LEROY POPE v. CALIFORNIA ARMY NATIONAL GUARD**
**Case No. CV 01-04163 RSWL (Ex)**

Dear Mr. Pope:

Enclosed for your information and file is a copy of the **Notice of Motion and Motion to Dismiss; Memorandum of Points and Authorities** in the above matter.

As always, if you have any comments or questions, please do not hesitate to call.

Sincerely,

PATRICIA A. NEVONEN
Deputy Attorney General

For BILL LOCKYER
Attorney General

PAN:yw
Encl.

cc: Col. William Weir

**BILL LOCKYER, Attorney General of the State of California**
**LAURA LEE GOLD, Supervising Deputy Attorney General**
**PATRICIA A. NEVONEN,** (SBN 90290)
**Deputy Attorney General**
300 South Spring Street, Fifth Floor
Los Angeles, California 90013-1204
Telephone: (213) 897-9474

Attorneys for Defendants State of California and California National Guard, erroneously sued herein as California Army National Guard

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LEROY POPE,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA ARMY NATIONAL GUARD, MAJOR GENERAL PAUL MONROE, JR., COLONEL WILLIAM F. WEIR, COLONEL DANIEL SMITH, MAJOR THOMPSON, MASTER SERGEANT DAVID STEWART and Does 1 through 10, inclusive.<br><br>Defendants. | CASE NO. CV 01-04163 RSWL (Ex)<br><br>NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Filed concurrently with Request for Judicial Notice]<br><br>Date: September 10, 2001<br>Time: 9:00 a.m.<br>Room: 21, Fifth Floor |

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . 3

PRELIMINARY STATEMENT . . . . . 3

ARGUMENT . . . . . 4

I. BACKGROUND OF THE NATIONAL GUARD . . . . . 4

A. The National Guard as the Militia . . . . . 4

B. The National Guard of the United States as a Reserve component of the Armed Forces . . . . . 4

C. Federal authority over the National Guard . . . . . 4

II. PLAINTIFF'S CLAIMS CHALLENGE NONREVIEWABLE MILITARY PERSONNEL DECISIONS . . . . . 5

A. Standard of Review . . . . . 5

B. Plaintiff Cannot Meet the Threshold Reviewability Requirements under Mindes v. Seaman . . . . . 6

C. The Mindes Factors Weigh Against Judicial Review . . . . . 7

1. The nature and Strength of Plaintiff's Claim . . . . . 7

2. The Potential Injury to plaintiff if Review is Denied . . . . . 8

3. The Type and Degree of Anticipated Interference with Military Function . . . . . 8

4. The Extent to Which the Exercise of Military Expertise or Discretion is Involved . . . . . 9

D. The Feres Doctrine Bars Claims Which are Incident to Military Service . 9

E. The Feres Doctrine has been Extended to State National Guards . . . . . 11

F. Plaintiff's Claims are Barred by the Feres Doctrine . . . . . 13

G. Plaintiff, as a Member of the Military, is not Entitled to Recovery Under Title VII . . . . . 14

**TABLE OF CONTENTS (Cont'd)**

Page

III. Defendants are Immune from Liability Pursuant to the Eleventh Amendment . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

Actmedia, Inc. v. Stroh, 830 F.2d 957 (9th Cir. 1986.) .......... 14,15

Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971) .......... 10, 12

Bowen v. Oisted, 125 F.3d 800 (9th Cir. 1997) .......... 8, 12, 13

Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) .......... 5-6, 9-10, 12

Christoffersen v. Washington State Air National Guard, 855 F.2d 1437 (9th Cir. 1988), cert. denied, 490 U.S. 1098 (1989) .......... 5, 7-9

Covington v. Anderson, 487 F.2d 660 (9th Cir. 1973) .......... 12

Edelman v. Jordon 415 U.S. 651 (1974) .......... 15

Feres v. United States 340 U.S. 135 (1950) .......... 9-14

Goldman v. Weinberger, 475 U.S. 503 (1986) .......... 5, 9

Gonzalez v. Department of Army, 718 F.2d 926 (9th Cir. 1983) .......... 14

Hodge v. Dalton 107 R.3d 705 (9th Cir. 1997 .......... 14

Holdiness v. Stroud, 808 F.2d 417 (5th Cir. 1987) .......... 7, 8

Jones v. New York State Division of Military and Naval Affairs, 166 F.3d 45 (1999) .......... 15

Martelon v. Temple, 747 F.2d 1348 (10th Cir. 1984) .......... 12

Maryland v. United States, 381 U.S. 41 .......... 4

McGee v. United States, 402 U.S. 479 (1971) .......... 6

**<u>TABLE OF AUTHORITIES</u> (Cont'd)**


**<u>Page(s)</u>**

McKart v. United States,
395 U.S. 185 (1969) . . . . . . . . 6

Mindes v. Seaman,
453 F.2d 197 (5th Cir. 1971) . . . . . . . . 6-9

Mollnow v. Carlton,
716 F.2d 627 (9th Cir. 1983) . . . . . . . . 12

Navas v. Gonzalez Vales,
752 F.2d 765 (1st Cir. 1985) . . . . . . . . 7

Orloff v. Willoughby,
345 U.S. 83 (1953) . . . . . . . . 5, 10

Pena v. Gardner,
976 F. 2d 469 (9th Cir. 1992.) . . . . . . . . 15

Penagaricano v. Llenza,
747 F.2d 55 (1st Cir. 1984.) . . . . . . . . 7, 9

Pennhurst State School & Hospital v. Halderman,
465 U.S. 89 (1984) . . . . . . . . 14-15

Quern v. Jordon,
440 U.S. 332 (1979) . . . . . . . . 15

Riggle v. State of California,
577 F.2d 579 (9th Cir. 1978) . . . . . . . . 15

Sandidge v. Washington,
813 F.2d 1025 (9th Cir. 1987) . . . . . . . . 5

Sebra v. Neville,
801 F.2d 1135 (9th Cir. 1986) . . . . . . . . 7

Stauber v. Cline,
837 F.2d 395 (9th Cir. 1988) . . . . . . . . 12-14

United States v. Johnson,
481 U.S. 681 (1987) . . . . . . . . 11

United States v. Stanley,
483 U.S. 669 (1987) . . . . . . . . 11-12

Wallace v. Chappell,
661 F.2d 729 (9th Cir. 1981), rev'd on other grounds, 462 U.S. 296 (1983) . . . . . . . . 5

Williams v. Wilson,
762 F.2d 357 (4th Cir. 1985) . . . . . . . . 7

**<u>TABLE OF AUTHORITIES</u> (Cont'd)**

**<u>Page(s)</u>**

Wright v. Park,
5 F.3d 586 (1st Cir. 1993) . . . . 12

<u>FEDERAL STATUTES</u>

10 U.S.C.
§101(4) . . . . 4
§1552 . . . . 6, 8
§261 . . . . 4
§311(a) . . . . 4
§311(b) . . . . 4
§312 . . . . 4

32 U.S.C.
§101(2) . . . . 4
§110 . . . . 4

42 U.S. C.
§1983 . . . . 3, 12, 15
§1985 . . . . 6, 10, 12-13
§§2000e . . . . 14-15

Army and Air Force. U.S. Const. Art. 1,
§8, Cl. 16 . . . . 4

Army National Guard, 10 U.S.C.
§261(a)(1) . . . . 4

Army Reserve, 10 U.S.C.
§261(a)(2) . . . . 4

U.S.C.
§ 2000 . . . . 3

Uniform Code of Military Justice, 10 U.S.C.
§938 . . . . 6

**BILL LOCKYER, Attorney General**
**of the State of California**
**LAURA LEE GOLD, Supervising**
**Deputy Attorney General**
**PATRICIA A. NEVONEN,** (SBN 90290)
**Deputy Attorney General**
300 South Spring Street, Fifth Floor
Los Angeles, California 90013-1204
Telephone: (213) 897-9474

Attorneys for Defendants State of California and California National Guard, erroneously sued herein as California Army National Guard

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LEROY POPE,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA ARMY NATIONAL GUARD, MAJOR GENERAL PAUL MONROE, JR., COLONEL WILLIAM F. WEIR, COLONEL DANIEL SMITH, MAJOR THOMPSON, MASTER SERGEANT DAVID STEWART and Does 1 through 10, inclusive.<br><br>Defendants. | CASE NO. CV 01-04163 RSWL (Ex)<br><br>NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>[Filed concurrently with Request for Judicial Notice]<br><br>Date: September 10, 2001<br>Time: 9:00 a.m.<br>Room: 21, Fifth Floor |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on at a.m. in Courtroom of the above-entitled court, located at 312 N. Spring St., Los Angeles, California, Defendants State of California and California National Guard, erroneously sued herein as California Army National Guard, will move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure rule 12(c).

This Motion will be made upon the following grounds:

The court lacks subject matter jurisdiction because Plaintiff's allegations are incident to his military service, and are thus non-justiciable, pursuant to the Feres doctrine. Feres v. United States 340 U.S. 135 (1950).

1. The State of California and the California National Guard is immune from liability pursuant to the Eleventh Amendment.

2. Plaintiff's claims are barred due to his failure to exhaust his administrative remedies.

This Motion will be based on this Notice of Motion and Motion for Judgment on the Pleadings, the Memorandum of Points and Authorities filed in support thereof, on such oral and documentary evidence as shall be introduced at the time of the hearing, and on all papers and pleadings on file herein.

This Motion is made following the Defendants' written communication to Plaintiff on August 3, 2001, and written communication received by Defendants' counsel on August 9, 2001. The parties were unable to resolve the issues.

Dated: August 13, 2001

Respectfully submitted,

BILL LOCKYER, Attorney General
of the State of California
LAURA LEE GOLD, Supervising
Deputy Attorney General
PATRICIA A. NEVONEN,
Deputy Attorney General

By: [signature]
PATRICIA A. NEVONEN
Attorneys for Defendants State of California and California National Guard, erroneously sued herein as California Army National Guard

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

In this breach of contract and tort action, Plaintiff, a Sergeant First Class in the California Army National Guard branch of the California National Guard ("CNG"), alleges eight counts based on his involuntary separation from CNG. [See First Amended Complaint ("FAC"), page 14, lines 1-6.] His claims include breach of contract, "failure to investigate," "failure to respond to rebuttal and denial of right to confront accuser," statute of limitations violation, discrimination in violation of U.S.C. § 2000-e, et seq., due process violations, violation of 42 U.S.C. §§ 1983 and 1985 and intentional infliction of emotional distress. Plaintiff seeks damages for the alleged claims arising from his involuntary separation from the military.

The Defendants named in the FAC are moving parties State of California and the CNG.[1]

The gravamen of Plaintiff's FAC is that he was involuntarily separated from military service and that Defendants did not follow military regulations in processing the involuntary separation. Plaintiff, as shown in the FAC, was a recruiter for the CNG. The conduct for which plaintiff was separated from service included improper relations with a female recruit, adultery and improper use of military property. Plaintiff admits that he had a two year relationship with the woman, but denies she was a recruit at the time of the relationship. He contends that all other allegations were unfounded.

Plaintiff's FAC is replete with references to military regulations under which he was allegedly denied his rights. [Uniform Code of Military Justice (FAC ¶24 a iv), opportunity to accept article Article 15 punishment in military justice charges (FAC ¶24 b i), opportunity to request court martial (FAC ¶24 b ii),violation of Army Regulation 15-6 et seq. soldier entitled to preliminary inquiry and commander's guide for notification and imposition. (FAC ¶24, p.13 l. 14-22.)

It is clear from the allegations made in the First Amended Complaint that the wrongful acts

---

1. The State of California was first named as a defendant in the first amended complaint. The original complaint named numerous individual defendants, identified by their military rank. These individuals were all deleted both from the caption and the section entitled "The Parties" on page 3 of the First Amended Complaint.

about which Plaintiff complains are incident to his military service. Consequently, his claims are non-justiciable.

## ARGUMENT

### I. BACKGROUND OF THE NATIONAL GUARD

#### A. The National Guard as the Militia

"The National Guard is the modern Militia reserved to the States" by the Militia Clauses. Maryland v. United States, 381 U.S. 41, 46, vacated and modified on other grounds, 382 U.S. 159 (1965). The militia includes all able-bodied males between the ages of 17 and 45, with some exceptions (see 10 U.S.C. §312), who are, or have declared the intention of becoming, citizens of the United States, as well as female citizens who are commissioned officers of the National Guard. 10 U.S.C. §311(a). The militia is divided into two classes: the organized militia, which consists of the National Guard and the Naval Militia, and the unorganized militia, which includes all other members of the militia. 10 U.S.C. §311(b). Although States are not required to maintain National Guard units, every State has a National Guard.

#### B. The National Guard of the United States as a Reserve Component of the Armed Forces

Congress has exercised its extensive constitutional powers over matters of national defense by establishing the Armed Forces of the United States. 10 U.S.C. §101(4); 32 U.S.C. §101(2). Each of these services has a reserve component. 10 U.S.C. §261. The reserve components of the Army are the Army National Guard, 10 U.S.C. §261(a)(1), and the Army Reserve, 10 U.S.C. §261(a)(2).

All persons enlisted in a State National Guard unit are simultaneously enlisted in the National Guard of the United States ("NGUS"). Perpich v. Department of Defense, 110 S. Ct. at 2425; 32 U.S.C. §301.

#### C. Federal Authority over the National Guard

Congress has authority to organize, arm, and discipline the National Guard. In general, the organization and composition of the National Guard is required to be the same as that prescribed for the Army and Air Force. U.S. Const. Art. 1, §8, Cl. 16; 32 U.S.C.§104(b).

Under 32 U.S.C. §110, Congress requires the President "to prescribe regulations, and issue