orders, necessary to organize, discipline, and govern the National Guard." These regulations include Army Regulation 600-8-2, which specifically applies to the Army National Guard.

**II. Plaintiff's Claims Challenge Nonreviewable Military Personnel Decisions.**

The type of military determination underlying this case is not reviewable. Federal courts are extremely reluctant to interfere with the military's exercise of discretion in internal military matters and have afforded great deference to military personnel decisions. See, e.g., Goldman v. Weinberger, 475 U.S. 503 (1986); Orloff v. Willoughby, 345 U.S. 83 (1953). In addition to the concept of separation of powers, this deference is grounded in the fear that the review would interfere with the military's ability to maintain order and discipline. The federal courts "are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have." Chappell v. Wallace, 463 U.S. 296, 305 (1983). Therefore, the Constitution entrusts regulation and control of the military to the legislative and executive branches of the Government.

**A. Standard of Review**

The United States Court of Appeals for the Fifth Circuit, in Mindes v. Seaman, 453 F.2d 197 (5th Cir. 1971), formulated the test for determining judicial reviewability of military decisions that is most often used by other federal courts. The Mindes test is followed by the Ninth Circuit. See Christoffersen v. Washington State National Guard, 855 F.2d 1288 (9th Cir. 1988); Sandidge v. Washington, 813 F.2d 1025 (9th Cir. 1987); Wallace v. Chappell, 661 F.2d 729 (9th Cir. 1981), rev'd on other grounds, 462 U.S. 296 (1983).

The Mindes test involves a two-step threshold analysis. First, a court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intra service correction measures. Mindes, 453 F.2d at 201. Only after plaintiff has satisfied these two conditions of the first step may a court proceed to the second step. The second step requires the court to balance four factors to determine whether, as a policy matter, review should be granted. The four factors are:

(1) the nature and strength of plaintiff's challenge to a military decision . . . ;

(2) the potential injury to the plaintiff if review is refused . . . ;

(3) the type and degree of anticipated interference with the functioning of the military if review is granted . . . [and]

(4) the extent to which military expertise or discretion is involved.

Id. at 201-202.

**B. Plaintiff Cannot Meet the Threshold Reviewability Requirements under Mindes v. Seaman**

As a threshold matter, a plaintiff challenging a military personnel decision must first exhaust administrative remedies before seeking relief in the courts. Mindes, 453 F.2d at 197. Courts may interfere with the exhaustion of an administrative process only where the facts clearly establish that fundamental rights of a party are being harmed in a way that cannot be adequately redressed by allowing the administrative process to be completed. McGee v. United States, 402 U.S. 479 (1971); McKart v. United States, 395 U.S. 185, 194-95 (1969).

Uniformed members of the military have statutory remedies to correct racial discrimination in the military. See 10 U.S.C. §1552; Chappell v. Wallace, 462 U.S. 296, 303-05, 103 S.Ct. 2362, 2367-68, 76 L.Ed.2d 586 (1983) (noting applicability of §1552 to claims of racial discrimination by enlisted men and remanding for consideration of a claim of discrimination under 42 U.S.C. §1985(3)). In addition, the military itself provides members with several remedies. The military Equal Opportunity program provides a forum for complainants who feel that they have been the victim of discrimination. Service members may file complaints pursuant to Article 138 of the Uniform Code of Military Justice, 10 U.S.C. §938, or register a grievance with either the Inspector General or individual members of Congress. Army Board for the Correction of Military Records ("ABCMR") "may correct any military record . . . when . . . necessary to correct an error or remove an injustice." 10 U.S.C. §1552.

/ / /

Courts following Mindes require persons, such as plaintiff, who challenge adverse National Guard personnel actions, to resort first to this administrative remedy. See e.g., Williams v. Wilson, 762 F.2d 357 (4th Cir. 1985) (claim challenging National Guard member's separation dismissed under Mindes as nonreviewable due to failure to exhaust); Navas v. Gonzalez Vales, 752 F.2d 765 (1st Cir. 1985) (failure by National Guard member to resort first to ABCMR required dismissal under Mindes). See also Holdiness v. Stroud, 808 F.2d 417 (5th Cir. 1987) (requiring former Guard member to resort to ABCMR rather than bring action under 42 U.S.C. §§1983, 1985). Plaintiff fails to satisfy the Mindes threshold requirements and this Court should decline to review this case.

### C. The Mindes Factors Weigh Against Judicial Review.

Even if the plaintiff successfully satisfied the threshold prerequisites for review, application of the four factors of the Mindes test still weighs heavily against review. Using the Mindes factors, the Ninth Circuit has found that former National Guard members' challenges to their involuntary release were nonreviewable. See e.g., Christoffersen v. Washington State Air National Guard, 855 F.2d 1437 (9th Cir. 1988), cert. denied, 490 U.S. 1098 (1989) (nonretention of former officers and civilian technicians); Sebra v. Neville, 801 F.2d 1135 (9th Cir. 1986); see also Holdiness v. Stroud, 808 F.2d 417 (5th Cir. 1987) (constitutional and other challenges to involuntary discharge from Guard and resulting loss of employment as civilian technician held as non-justiciable because remedy sought would be too disruptive to the military); Navas v. Gonzalez Vales, 752 F.2d 765 (1st Cir. 1985) (nonretention of Guard officer). As discussed below, weighing the Mindes factors shows that if Plaintiff had met the Mindes threshold and exhausted his administrative remedies, his claims would still be nonreviewable.

#### 1. The Nature and Strength of Plaintiff's Claim

"A tenuous claim of any sort must be weighted in favor of declining review . . . ." Penagaricano v. Llenza, 747 F.2d at 61 (quoting Mindes).

Plaintiff makes a vague and general assertion that the defendants violated various Army Regulations, the Due Process Clause and section 2000e, et seq. The underlying allegations for all the claims are that plaintiff was involuntarily separated from military service based, at least in part, on his relationship with a recruit. Plaintiff admits that he had a relationship with this woman [FAC

4:15-19] and that the woman had been an applicant to the CNG [FAC 4:9-11]. Plaintiff acknowledges that after he was informed of the decision to separate plaintiff from service by Lt. Col. Smith [FAC ¶10], plaintiff, with the assistance of counsel, prepared and submitted a rebuttal. [FAC ¶12.]

In essence, plaintiff's current claims are based on the fact that his rebuttal was not deemed adequate to change the CNG's decision. He is seeking to have this court substitute its judgment for that of the CNG.

More importantly, however, the Ninth Circuit has specifically held that a service member of a State National Guard *may not maintain an action under Section 1983 against State or Federal National Guard officials.* Bowen v. Oisted, 125 F.3d 800 (9th Cir. 1997). Therefore, the strength of plaintiff's claims is indeed weak.

**2. The Potential Injury to Plaintiff if Review Is Denied**

Plaintiff's potential injury is thus primarily an economic one. Further, he can still apply to the Army Board for Correction of Military Records under 10 U.S.C. § 1552. If proper grounds for relief are presented, the ABCMR can provide relief as appropriate. Plaintiff also has the option of pursuing his claim with the California Board for Correction of Military Records (CMVC 474). Therefore, plaintiff can be made whole by properly availing himself of the administrative remedies available within the military. Consequently, the second Mindes factor also weighs against judicial review. See Christoffersen v. Washington State Air National Guard, 855 F.2d at 1444.

**3. The Type and Degree of Anticipated Interference With Military Function**

As a number of courts have recognized, judicial review of a military decision whether to retain a Guard member on qualitative grounds "would seriously impede the military in the performance of its vital duties." Christoffersen, 855 F.2d at 1444. Accord, Holdiness v. Stroud, 808 F.2d 417, 423 (5th Cir. 1987). "Judicial review could also impair the ability of the National Guard to make retention decisions based on subjective, though appropriate, criteria of military efficiency." Christoffersen, 855 F.2d at 1444. Retention decisions go to "the core of overall strategies of preparedness." Id. Thus, this Mindes factor weighs very strongly against review.

**4. The Extent to Which the Exercise of Military Expertise or Discretion is Involved**

Military personnel decisions "require a high degree of military discretion and expertise." Christoffersen, 855 F.2d at 1444. Even though plaintiff alleges general regulatory infirmities, as a practical matter, there is no way that judicial review could be limited to consideration of this aspect of plaintiff's claim. At some point the Court would have to substitute its own judgment for that of the Adjutant General when evaluating the decision to involuntarily separate the plaintiff from service. The court would have to intervene and determine who is entitled to receive Federal Recognition and who is suited for service in the ranks of the National Guard.

"Courts must give great deference to the professional judgment of military authorities," Goldman v. Weinberger, 475 U.S. 503, 507 (1986), and this fourth Mindes factor also weighs heavily against review. See Christoffersen, 855 F.2d at 1444-1445. Accord, Penagaricano v. Llenza, 747 F.2d 55, 63 (1st Cir. 1984.) ("The decision . . . requires the highest degree of military discretion and expertise. Courts have traditionally deferred to the superior knowledge and experience of professionals in such matters as . . . retention decisions.").

**D. The Feres Doctrine Bars Claims Which are Incident to Military Service.**

In Feres v. United States, 340 U.S. 135 (1950) the plaintiff sued the United States government for claims brought under the Federal Tort Claims Act. The Supreme Court held that members of the armed services could not sue the government for injuries that "arise out of or are in the course of activity incident to service." Id. at 146. The Supreme Court reasoned that relations between the government and its military personnel were "distinctly federal in character," exclusively governed by federal law, and that a comprehensive government scheme was available for service-connected injuries.

In Chappell v. Wallace, 462 U.S. 296 (1983) five enlisted Navy personnel sued various officers, alleging that they had been discriminated against because of their race, color or previous condition of servitude and thereby deprived of their rights under the Constitution and the laws of the

United States.[2] They also alleged a conspiracy among the officers to deprive them of their rights in violation of 42 U.S.C. §1985. In Chappell, the Supreme Court expanded the Feres doctrine to extend not only to claims brought under the Federal Tort Claims Act, but to *any* actions brought by or against military personnel, provided that the incidents alleged implicated "inherently military" policy. Id. at 304.

The Supreme Court held that "the unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a Bivens-type remedy against their superior officers." Id. at 304. The Court reasoned that a comprehensive system of justice regulated military life, taking into account the special patterns that define the military structure. Accordingly, civilian courts could not review this peculiar military system:

> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which... grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to interfere in judicial matters. *Id.* at 301 (citing Orloff v. Willoughby 345 U.S. 83 (1953)).

The Supreme Court further reasoned:

> Congress has exercised its plenary constitutional authority over the military, has enacted statutes regulating military life, and has established a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the

---

2. The plaintiffs sued for damages pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), which establishes as a general proposition that victims of a constitutional violation perpetrated by a federal actor may sue the offender for damages in federal court, despite absence of explicit statutory authorization for such suits.

> military structure. The resulting system provides for the review and remedy of complaints and grievances such as those presented by respondents. Id. at 302.

Finally, the Supreme Court stated:

> It is clear that the Constitution contemplated that the Legislative Branch has plenary control over rights, duties, and responsibilities in the framework of the Military Establishment, including regulations, procedures, and remedies related to military discipline; and Congress and the Courts have acted in conformity with the view. Id. at 301.

In United States v. Stanley, 483 U.S. 669 (1987) the Supreme Court expanded Feres even further. It held that Feres applies not only to claims which potentially impact the officer/subordinate relationship, but to all activities "incident to service." Id. at 681.

In United States v. Johnson, 481 U.S. 681 (1987) the Supreme Court reaffirmed and again broadened the Feres doctrine. It held that Feres immunity extended to a Federal Tort Claims Act action brought by the widow of a Coast Guard pilot killed during the course of flying activities as a result of the negligence of civilian federal air traffic controllers. The Supreme Court reasoned that it did not want to "'involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness.'" Id. at 690. Thus,

> "[e]ven if military negligence is not specifically alleged in a tort action, a suit based upon *service-related activity* necessarily implicates the military judgments and decisions that are inextricably intertwined with the conduct of the military mission." Id. at 691 (emphasis added).

**E. The Feres Doctrine Has Been Extended to State National Guards.**

With each successive interpretation of the Feres doctrine, the scope of this immunity has broadened in recognition of Congress' plenary power over the United States military and the reserve components, of which the National Guard is an intrinsic part. Indeed, it is now well-settled that the traditional rule precluding review of military decisions applies to the National Guard, as well. See,

*e.g.*, Covington v. Anderson, 487 F.2d 660, 664 (9th Cir. 1973) (as an essential reserve component of the United States military, the National Guard is subject to the traditional rule against review of military decisions); Stauber v. Cline, 837 F.2d 395, 399 (9th Cir. 1988) ("It is beyond question that the Feres doctrine generally applies to claims brought by National Guard members.").

Courts have expanded Feres to preclude claims by National Guardsmen brought under a variety of theories, including those brought under 42 U.S.C. §§1983 and 1985. See, *e.g.*, Martelon v. Temple, 747 F.2d 1348, 1349-51 (10th Cir. 1984) (National Guardsman's 42 U.S.C. §1983 claim challenging dismissal from the Guard barred pursuant to Chappell); Mollnow v. Carlton, 716 F.2d 627 (9th Cir. 1983) (court declined to review 42 U.S.C. §1985 claim, following the rationale of Chappell and Feres regarding the peculiar relationship between an enlisted man and his superiors, the effects on discipline by the maintenance of such suits, and Congress' use of its plenary authority over the military to establish a system of review and redress for the military).

In Wright v. Park, 5 F.3d 586 (1st Cir. 1993) a National Guard technician brought a civil rights action against military officers in the chain of command. Relying on Feres, Chappell and Stanley, the Court held that no Bivens remedy is available for injuries that arise out of or in the course of activity incident to military service. "We now join several of our sister circuits in accepting this bright-line rule as the definitive statement on the justiciability of civil rights claims in the military context, including the National Guard." Wright, supra, at 590. Moreover, although Wright's suit was brought under the Civil Rights Act rather than as a Bivens action, "...absent a specific statutory provision to the contrary, there is no principled basis for according state actors sued under 42 U.S. C. §1983 a different degree of immunity than would be accorded federal actors sued for an identical abridgement of rights under Bivens." Id. at 591.

The Ninth Circuit adopted the Wright position in Bowen v. Oistead, 125 F.3d 800 (9th Cir. 1997). "We agree with the First Circuit and believe that insofar as the Feres doctrine extends to the state National Guard units, it shields state military officers from constitutional claims brought under section 1983 to the same extent that it protects federal military personnel from defending against Bivens actions raising the very same claims." Id. at 803, FN2.

///

Bowen was a member of the National Guard (Alaska), who was separated from an Active Guard and Reserve tour of duty, as was plaintiff. Bowen challenged his termination by the State Adjutant General on theories of breach of contract, wrongful termination of employment, denial of administrative due process and state constitutional rights, denial of equal protection, and RICO violations, among others. With respect to Bowen's constitutional and tort claims, the Court stated:

> We endorse these holdings: Feres applies to the state National Guards and their members due to the integral role they play as part of the nation's defense force and the substantial degree to which the state National Guards are financed, regulated, and controlled by the federal government even when not called into active federal service. Consequently, under Stauber and the clear weight of authority in other circuits, Bowen's constitutional claims and claims sounding in tort are subject to the Feres doctrine. Id. at 805.

Applying Feres, the Court held that "the personnel decisions contested by Bowen in fact were made 'incident to service'" and were therefore barred. Ibid. The Court concluded: "In sum, the Feres doctrine is applicable 'whenever a legal action "would require a civilian court to examine decisions regarding management, discipline, supervision, and control of members of the armed forces of the United States."' (citations omitted.)" Id. at 804.

**F. Plaintiff's Claims Are Barred by the Feres Doctrine.**

It is unequivocal that the conduct about which Plaintiff complains was incident to his service as a Sergeant First Class in CNG. He alleges that he was involuntarily separated from service with CNG without proper attention to military regulations. His breach of contract claim, though not specific, must be based on his employment contract with the CNG.

The Feres doctrine is applicable to this case. It was inherently within the military's power to make a personnel decision regarding the appropriate disposition of the allegations against Plaintiff, whether they warranted nonjudicial punishment (Article 15), Court Martial or an administrative separation pursuant to National Guard Regualtion 600-5, as actually occurred. This case is non-justiciable because it would require this Court to examine CNG's decisions regarding management, discipline, supervision and control of a member of the military. Bowen v. Oistead,

supra, at 804-805. See also Stauber v. Cline, supra, at 398 (The Feres doctrine "...occupies a position comparable to a restriction on subject matter jurisdiction.... [T]he Feres doctrine has come to rest at least in significant part on the view that the judiciary ought not to intrude in military affairs.") Therefore, this case is barred by the Feres doctrine.

### G. Plaintiff, as a Member of the Military, Is Not Entitled to Recovery under Title Vii

Members of the armed forces, including the National Guard, are precluded from bringing claims under the provisions of Title VII. Hodge v. Dalton 107 R.3d 705 (9th Cir. 1997); Gonzalez v. Department of Army, 718 F.2d 926 (9th Cir. 1983). Plaintiff has listed a cause of action for discrimination in violation of 42 U.S.C. §§ 2000e et seq.[3] As set forth above, uniformed military personnel have alternative remedies for this type of claim.

## III. DEFENDANTS ARE IMMUNE FROM LIABILITY PURSUANT TO THE ELEVENTH AMENDMENT

Plaintiff has named the State of California and the California National Guard, erroneously sued herein as California Army National Guard, as defendants in this case. The Federal Court is without jurisdiction as to these Defendants. Specifically, the Eleventh Amendment to the United States Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

In the absence of its consent, a state or any agencies or departments thereof are not only immune from suits brought against it by citizens of another state, but also from suits brought against it by its own citizens, even where suit is based on issues arising under federal law. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984); Actmedia, Inc. v. Stroh, 830 F.2d 957, 963

---

3. Plaintiff does not identify what protected class he is claiming as the basis for this cause of action. Defendants assume he is claiming racial discrimination, based on his amended allegations referencing treatment of caucasian recruiters.

(9th Cir. 1986.)

This Eleventh Amendment bar applies to both federal and pendant state claims for damages or other retroactive relief brought against the State or its officials in their official capacities. Pena v. Gardner, 976 F. 2d 469, 472-474 (9th Cir. 1992.); Edelman v. Jordon 415 U.S. 651, 667-668 (1974). Furthermore, a suit against a state agency is considered to be a suit against the state, and thus is barred by the Eleventh Amendment. Pennhurst State School & Hospital v. Halderman, supra, 465 U.S. at 100; Actmedia, Inc. v. Stroh, supra, 830 F.2d at 963.

Neither the State of California nor the United States Congress has provided consent or authorization for the State of California or any of its agencies, such as the CNG, to be sued in Federal Court with respect to the claims under 42 U.S.C. §§1983, 1985 and 2000e, presented by Plaintiff. Consent to be sued under the California Tort Claims Act does not impart the state's consent to be sued in federal court. Riggle v. State of California, 577 F.2d 579, 585 (9th Cir. 1978); see also Quern v. Jordon, 440 U.S. 332, (1979) (Congress did not abrogate the state's sovereign immunity when it enacted 42 U.S.C. §1983.).

The Eleventh Amendment bar has specifically been applied in a case involving the National Guard. In Jones v. New York State Division of Military and Naval Affairs, 166 F.3d 45 (1999), a Major in the New York State Army National Guard brought a §1983 action alleging he was removed from his position with the aviation service without due process. The Court held that the action was barred inasmuch as the New York State Army National Guard was a state agency entitled to Eleventh Amendment immunity, and the Major did not allege that New York had waived, or that Congress had abrogated, the State's sovereign immunity.

In light of the above, the Complaint must be dismissed.

///

///

///

///

///

///

**CONCLUSION**

For the foregoing reasons, Defendants State of California and the California National Guard, erroneously sued herein as California Army National Guard, respectfully request that the Court grant their motion.

Dated: August 13, 2001

Respectfully submitted,

BILL LOCKYER, Attorney General
of the State of California
LAURA LEE GOLD, Supervising
Deputy Attorney General
PATRICIA A. NEVONEN
Deputy Attorney General

By:____________________________
PATRICIA A. NEVONEN
Attorneys for Defendants State of California and California National Guard, erroneously sued herein as California Army National Guard

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name: **Leroy Pope v. California Army National**
No.: **CV 01-04163 RSWL (Ex)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On August 13, 2001, I served the attached **Notice of Motion and Motion to Dismiss; Memorandum of Points and Authorities** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 300 South Spring Street, Los Angeles, California 90013 addressed as follows:

**Leroy Pope**
**1886 Denwal Drive**
**Carson, CA 90746**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 13, 2001, at , California.

Yvette Wright — Declarant

[signature] — Signature

ORIGINAL

Priority ___
Send ✓
Enter ___
Closed ___
JS-5/JS-6 ✓
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES-GENERAL

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

CASE NO. CV 01-4163-RSWL DATE: September 10, 2001

TITLE: LEROY POPE v. CALIFORNIA ARMY NATIONAL GUARD, et al.

PRESENT: HONORABLE RONALD S.W. LEW, JUDGE

Kelly Davis
Deputy Clerk

Roger May
Court Reporter

ATTORNEYS FOR PLAINTIFFS:

Leroy Pope, pro se

ATTORNEYS FOR DEFENDANTS:

Patricia Nevonen

PROCEEDINGS: Defts' State of California and California National Guard's motion to dismiss

Counsel present and hearing held. Court rules as follows:

Court **GRANTS** defendants' motion to dismiss. Counsel for defense to prepare the order.

✓ Docketed
___ Copies / NTC Sent
✓ JS - 5 / JS - 6
___ JS - 2 / JS - 3
___ CLSD

MINUTES FORM 11
CIV-GEN

INITIALS OF DEPUTY CLERK kd

18

BILL LOCKYER, Attorney General
of the State of California
LAURA LEE GOLD,
Supervising Deputy Attorney General
PATRICIA A. NEVONEN, (State Bar No. 90290)
Deputy Attorney General
300 S. Spring Street
Los Angeles, CA 90013-1230
Telephone: (213) 897-9474
Attorneys for Defendants State of California
and California National Guard

COPY

FILED
CLERK, U.S. DISTRICT COURT
SEP 27 2001
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

LODGED
01 SEP 18 PM 2:30
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

Priority ✓
Send ✓
Enter ✓
Closed ✓
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Leroy Pope, Plaintiff, v. State of California, California Army National Guard, and Does 1 through 10, Defendants. | CASE NO. CV 01-04163-RSWL(Ex)<br><br>~~[Proposed]~~ **ORDER OF DISMISSAL**<br><br>Date: September 10, 2001<br>Time: 9:00 AM<br>Place: Room 21<br>Judge: Ronald S. W. Lew<br>Date Action Filed: May 7, 2001 |

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

This matter came before the court for hearing on September 10, 2001 in Court Room 21 at 9:00 a.m. on Defendants' Motion to Dismiss. Patricia A. Nevonen, Deputy Attorney General, appeared for defendants State of California and California National Guard. Plaintiff appeared in propria personum.

Upon review of the papers filed in support of the motion and after oral argument, the Court orders that plaintiff's complaint is dismissed, with prejudice.

Dated: September 27, 2001

RONALD S. W. LEW
Ronald S. W. Lew

ENTERED
CLERK, U.S. DISTRICT COURT
SEP 28 2001
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

✓ Docketed
✓ Copies / NTC Sent
JS - 5 / JS - 6
JS - 2 / JS - 3
X CLSD

(19)

BILL LOCKYER, Attorney General
of the State of California
LAURA LEE GOLD,
Supervising Deputy Attorney General
PATRICIA A. NEVONEN, (State Bar No. 90290)
Deputy Attorney General
300 S. Spring Street
Los Angeles, CA 90013-1230
Telephone: (213) 897-9474
Attorneys for Defendants State of California
and California National Guard

COPY

FILED
CLERK, U.S. DISTRICT COURT
SEP 27 2001
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

LODGED
01 SEP 18 PM 2:33
CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES
BY

Priority ✓
Send ✓
Enter ✓
Closed ✓
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Leroy Pope,<br>Plaintiff,<br>v.<br>State of California, California Army National Guard, and Does 1 through 10,<br>Defendants. | CASE NO. CV 01-04163-RSWL(Ex)<br>~~[Proposed]~~ ORDER OF DISMISSAL<br>Date: September 10, 2001<br>Time: 9:00 AM<br>Place: Room 21<br>Judge: Ronald S. W. Lew<br>Date Action Filed: May 7, 2001 |

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

This matter came before the court for hearing on September 10, 2001 in Court Room 21 at 9:00 a.m. on Defendants' Motion to Dismiss. Patricia A. Nevonen, Deputy Attorney General, appeared for defendants State of California and California National Guard. Plaintiff appeared in propria personum.

Upon review of the papers filed in support of the motion and after oral argument, the Court orders that plaintiff's complaint is dismissed, with prejudice.

Dated: September 27, 2001

RONALD S. W. LEW
Ronald S. W. Lew

ENTERED
CLERK, U.S. DISTRICT COURT
SEP 28 2001
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY

✓ Docketed
✓ Copies / NTC Sent
___ JS - 5 / JS - 6
~~JS - 2~~ / JS - 3
X CLSD

(19)

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name: **Leroy Pope v. State of California, California Army National Guard**
No.: **CV 01-04163-RSWL (Ex)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On September 18, 2001, I served the attached **[Proposed] Order of Dismissal** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 300 South Spring Street, Los Angeles, California 90013 addressed as follows:

**Leroy Pope**
**1886 Denwal Drive**
**Carson, CA 90746**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on September 18, 2001, at , California.

| | |
|---|---|
| Yvette Wright | [signature] |
| Declarant | Signature |