Jeffrey D. Moffatt, Attorney
Attorney for Leroy D. Pope, Plaintiff
43625 N Sierra Hwy, Suite A
Lancaster CA 93534
(661) 945-6121
FAX (661) 945-3019
EMAIL: Jeffreymbajd@hotmail.com
Ref: AR 20050009400

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LEROY D. POPE,

Plaintiff

V.
THE UNITED STATES,
Defendant.

No. 06-446C

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

***(Honorable Judge Williams)***

## SUMMARY OF THE ARGUMENT

The Complaint should not be dismissed based on proper subject matter jurisdiction since Plaintiff has identified multiple money-mandating statutes providing for jurisdiction under the Tucker Act. Case law provides for the review of disability military decisions, which is one of the key points of this case. Additionally, case law provides for review of arbitrary and capricious decisions, as well as to determine if proper procedures were followed. The review of the failure of the military to follow proper procedures are jusdiciable and therefore reviewable. This reviewability gives Plaintiff yet another

argument that he is properly before the correct Court.

The National Guard is recognized as being part of the armed service branches under the Constitution. The National Guard, additionally, has been fully federalized, therefore removing any prior arguments of non reviewability of National Guard decisions.

Given the federalization of the National Guard has taken place; this case becomes a justiciable military personnel decision with economic components. The Court has jurisdiction over Mr. Pope's veterans' disability benefits claim; disability retirement claim; and constitutional claims because they are tied to a monetary benefit that is federally backed. The Federal Government, and more importantly this Court, oversees the misuse of Federal Money. Money transferred through States, still maintains the mandates of its Federal Origin. Federal Money transfers with it the requirement that due process be afforded, as well as an opportunity for one to have a redress of their grievances, and obtain financial remuneration.

Furthermore, Mr. Pope has a claim upon which relief can be granted because the Army National Guard has now been federalized to the point that Plaintiff can be alternatively viewed as a civil servant and this Court has authority to grant the requested relief. Even prior to the federalization National Guard members were given some reviewability to determine if the proper procedures were followed. In Plaintiff’s case, none of the procedures have been followed by Defendant.

**B.TOPICAL INDEX**


A. Summary of the Argument……………………………… 1
B. Topical Index ……………………………………… 3
C. Table of Authorities …………………………………… 4

D. Argument……………………………………………… 7

i. A VIABLE COMPLAINT IS ONLY REQUIRED TO CONTAIN A SHORT AND PLAIN STATEMENT 7

ii. MOTIONS TO DISMISS ARE DISFAVORED 7
iii. FAILURE TO SET FORTH CLAIM 7
iv. THE COURT DOES HAVE SUBJECT MATTER JURISDICTION OVER MR. POPE'S CLAIMS VIA MONEY MANDATING REQUIREMENTS OF THE TUCKER ACT AS MODIFIED BY FISHER AND WHITE MOUNTAIN APACHE TRIBE 8

v. FEDERAL COURT OF CLAIMS JURISDICTION VIA FISHER v. UNITED STATES, 8

vi. 10 U.S.C. § 1201 PROVIDES AT LEAST ONE BASIS FOR A TUCKER ACT CLAIM FOR PLAINTIFF. 12
vii. JUDICIAL REVIEW 15
viii. PLAINTIFF'S COMPLAINT CONTAINED AT LEAST FOUR DIFFERENT DUE PROCESS VIOLATIONS
ix. JUDICIAL REVIEW OF THE VETERANS ADMINISTRATION (VA) 15
x. STANDARD OF REVIEW 17
xi. FEDERAL JURISDICTION BASED ON FEDERAL FUNDING OF VEHICLES 17
xii. PLAINTIFF HAS STATED A MONEY-MANDATING STATUTE AS A SOURCE OF JURISDICTION UNDER THE TUCKER ACT 19
xiii. JURISDICTION EXISTS TO EXAMINE DISABILITY CLAIMS 20
xiv. DEFERENCE TO EXECUTIVE AUTHORITY DOES NOT EXTEND TO IGNORING BASIC DUE PROCESS CONSIDERATIONS 21
xv. JURISDICTION EXISTS TO EXAMINE FORCED RESIGNATION ATTEMPTS 21
xvi. JURISDICTION EXISTS TO EXAMINE DUE PROCESS CLAIMS 22

xvii. UNITED SALES V. UNITED STATES 34 FED CL.88 CONFERRED LIMITED DECLARATORY AUTHORITY ON THIS COURT OVER NON-MONETARY DISPUTES 23
xviii. DUE PROCESS FAILURES BY THE MILITARY ALLOW FOR A JUSTICABEL CONTROVERSY TO EXIST 25
xix. THE COURT OF CLAIMS HAS JURISDICTION IN MILITARY DISCHARGE CASES 25
xx. JURISDICTION EXISTS SINCE PLAINTIFF WAS DENIED A PHYSICAL EVALUATION FOR RETENTION, RETIREMENT AND SEPARATION HEARING 27
**xxi. U.S. CONST ART 11 SEC 2, cl. 1 PROVIDES FOR INCLUSION OF THE NATIONAL GUARD 28**
xxii. UNDER CERTAIN CIRCUMSTANCES, MEMBERS OF THE NATIONAL GUARD MAY SEEK FEDERAL BENEFITS TO WHICH THEY ARE ENTITLED 28
xxiii. TUCKER ACT CAN BE SATISFIED BY A RESERVE MEMBER OF THE MILITARY 28
xxiv. FIFTH AMENDMENT TAKING 30
xxv. THE COURT MAY CONSIDER ALL RELEVANT EVIDENCE, INCLUDING EVIDENCE OUTSIDE THE PLEADINGS WHEN RESOLVING A JURISDICTIONAL CHALLENGE 31
xxvi. BACK PAY ACT CAN BE CONSIDERED, UNDER HONDROS IN THE COURT OF CLAIMS 33
xxvii. MISQUOTE OF BACK PAY ACT BY DEFENDANT 33

E. CONCLUSION 33

**F. Certification 35**

## B TABLE OF AUTHORITIES

Adkins v. United States 68 F.3d 1317, 1323 (Fed Cir. 1995) 25
Chambers v. United States 417 F. 3d 1218, 1227 (2005). 28

Collier v. United States, 56 Fed. Cl. 354. cited by Johnson v. United States, 79 F. Supp. 208, 211, 111 Ct. Cl. 750 (Ct. Cl. 1948) 31

Decatur v. Paulding, citied in FISHER v. UNITED STATES, 2-5082 UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT 402 F.3D 1167; 2005 U.S. APP. LEXIS 3911MARCH 9, 2005, **13**

Dehne, 970 F.2d at 890 28

Fidelity Construction Co. V. United States 700 F.2d 1379, 1387 (Fed Cir. 1983) 32

FISHER v. UNITED STATES, 2-5082 UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT 402 F.3d 1167; 2005 U.S. App. LEXIS 3911March 9, 2005, 9,20,21,24,26, 27, 28, 30

Haskins v. United States 51 Fed Cl. 818 (2002) 30

Hondros 720 F.2d at 303 32

**Johnson v. United States, 79 F. Supp. 208, 211, 111 Ct. Cl. 750 (Ct. Cl. 1948)** 31

Jordan v. United States, 205 Ct.Cl. 65 (1974) 26

Morfeld v. Kehm, 803 F.2d 1452, 1454 n.3 (8th Cir. 1986) 7

Murphy v. United States, 69 Fed. Cl. 593 (2006) 22,25

Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir. 1999). 29,33

Phillips v. United States 227 Ct. Cl. 532 (1981) 33

Sales v. United States, 34 Fed. Cl. 88 17,31

Sawyer v. United States, 930 F.2d 1577 (Fed. Cir. 1991 10,11

Scroggins v. United States 184 Ct. Cl. 530, 397 F.2d 295 (1968) 30

Smith v. United States 823 F.2d 532 32

Spagnola v. Stockman, 732 F.2d 908, 912 (Fed. Cir. 1984), 33

Ward v. United States 178 Ct. Cl. 210 (1967) 26,27

United States v. White Mountain Apache Tribe, 537 U.S. 465, 155 L. Ed. 2d 40, 123 S. Ct. 1126 (2003), 8

Wilson v. United States, 58 Fed. Cl. 760, 762 (2003) 32

In re Grand Jury Subpoena, Joshua Wolfe, No CR 06-909065 Mis MMC (MEJ), Northern District of California, U.S. District Court 18,20

Woodward v. United States, 871 F.2d 1068, 1072( Fed Cir. 1989). 33,34

**CONSTITUTIONAL CLAIMS**

U.S. Const art II, 2 cl. 1. 28,29

Fifth Amendment 31

**MISCELLANEOUS**

Administrative Procedure Act 5 U.S.C. § § 551-59, 701-06 14

(John B. McDaniel, The Availability and Scope of Judicial Review of Discretionary Military Administrative Decisions, 108 Mil. L. Rev. 89, 95 (1985)). 14

Daniel J. Meador, Judicial Review in Military Disability Cases, 33 Mil. L. Rev. 1 (1966)).. 13

Darrell L. Peck, The Justices and the Generals: The Supreme Court and Judicial Review of Military Activities, 70 Mil. L. Rev. 1, 78 (1975); 14

Richard J. Pierce, Jr., Administrative Law Treatise, § § 17.5-17.9 (4th ed. 2002)." 13

Fed. R. Civ. P. 8((a) (2). 7

5 U.S.C. 5596 19

10 U.S.C. § 1201 9,10,11

18 U.S.C. 844 (f)(1) 18

28.U.S.C. 1346 (a)(2) ("Little Tucker act) 13

28.U.S.C. 1491(a)(1) (" Big Tucker Act'). **12**

38 U.S.C. 101(16) **33,**34

38 C.F.R. 3.1 (k), 3.303(a) (2005). 33

NGR 600-5 dated 2-20-90 Chap 6-2 (a) (Line of Duty) 14

NGR 600-5 dated 2-20-90 Chap 6-5 (b) (JAG Assistance) 15

U.S.C. Title 32 dated 2004 Sec 842 Art 43 (Statue of Limitation) 15

AR 340-21 Privacy Act (Probable Causes) 15

War-wounded "overwhelming' army healthcare system, The Herald,
March 14, 2007 17

## ARGUMENT

### i. A VIABLE COMPLAINT IS ONLY REQUIRED TO CONTAIN A SHORT AND PLAIN STATEMENT

While a complaint is only required to contain a short and plain statement, that statement must be "of [a] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8((a)(2). Plaintiff's claim contains at least the plain statement that he is entitled to relief, and therefore he has satisfied Fed R. Civ. Proc 8 (a)(2)

### ii.MOTIONS TO DISMISS ARE DISFAVORED

Motions to dismiss a complaint after the plaintiff's opening statement are disfavored and rarely granted. See Morfeld v. Kehm, 803 F.2d 1452, 1454 n.3 (8th Cir. 1986) (because opening is overview, it need not cover every element or critical fact). Accordingly, the prospect of dismissal on opening exists only when, from all available indications, the case is doomed to defeat. Since Plaintiff shows case law in the complaint and this opposition that Plaintiff's case is viable, the case should not be dismissed.

### iii.FAILURE TO SET FORTH CLAIM

Case law does not require the opening to cover every element, Plaintiff however has stated at least the minimum elements to show that a legitimate case does in fact exist.

Plaintiff's case should continue to go forward, and Defendant's argument that Plaintiff has failed to set forth a claim should be seen to have no merit.

iv.**<u>THE COURT DOES HAVE SUBJECT MATTER JURISDICTION OVER MR. POPE'S CLAIMS VIA MONEY MANDATING REQUIREMENTS OF THE TUCKER ACT AS MODIFIED BY FISHER AND WHITE MOUNTAIN APACHE TRIBE</u>**

Plaintiff can establish the existence of a money-mandating law source in order for the Court of Federal Claims to have subject matter jurisdiction over the case under the Tucker Act.

Recently, in <u>United States v. White Mountain Apache Tribe</u>, 537 U.S. 465, 155 L. Ed. 2d 40, 123 S. Ct. 1126 (2003), the Supreme Court restated the test for determination of whether a statute is money-mandating for Tucker Act jurisdictional purposes. After repeating the test from Mitchell II, the Court stated that:

"This "fair interpretation" rule demands a showing demonstrably lower than the standard for the initial waiver of sovereign immunity . . . . It is enough, then, that a statute creating a Tucker [*1174] Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be "lightly inferred," . . . a fair inference will do."

v. **FEDERAL COURT OF CLAIMS JURISDICTION VIA FISHER v. UNITED STATES,**

"For purposes of the case before us, however, this much is clear--under either the new or the old formulations Dr. Fisher has stated a claim that gives the Court of Federal Claims jurisdiction over his case." This was the holding of the U.S. Court of Appeals for the Federal Circuit. Plaintiff Pope contends that he also has jurisdiction here, based on Fisher, 2-5082 UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT 402 F.3D 1167; 2005 U.S. APP. LEXIS 3911MARCH 9, 2005,

vii**10 U.S.C. § 1201 PROVIDES AT LEAST ONE BASIS FOR A TUCKER ACT CLAIM FOR PLAINTIFF**.

Plaintiff alleges as did "Dr. Fisher alleges that 10 U.S.C. § 1201 provides the basis for his Tucker Act claim. Section 1201 enables the Secretary of a military branch to authorize disability retirement pay for service members on active duty. Subsection (a) provides in relevant part:"

"Upon a determination by the Secretary concerned that a member described in subsection (c) [i.e., on active duty] is unfit to perform the duties of the member's office, grade, rank, or rating because [**18] of physical disability incurred while entitled to basic pay . . ., the Secretary may retire the member, with retired pay . . ., if the Secretary also makes the determinations with respect to the member and that disability specified in subsection (b)."

10 U.S.C. §  1201(a). Subsection (b) requires the Secretary to make certain determinations, including that "the disability is of a permanent nature and stable," and that "the disability is not the result of the member's intentional misconduct or willful neglect."

Plaintiff should have a similar result of obtaining a money- mandating determination of Section 1201, as did Dr. Fisher. “In this case, Dr. Fisher has little difficulty establishing that §  1201 is understood as money-mandating. Section 1201 was the statute alleged to be money-mandating in Sawyer v. United States, 930 F.2d 1577 (Fed. Cir. 1991). Despite the presence of the word "may" in the statute, in Sawyer we determined that the Secretary has no discretion whether to pay out retirement funds once a disability is found qualifying. Id. at 1580. Thus, we held  [*1175]  that the statute is money-mandating because when the requirements of the statute are met--i.e., when the Secretary determines that a service member is unfit for duty because [**19]  of a physical disability, and that disability is permanent and stable and is not the result of the member's intentional misconduct or willful neglect--the member is entitled to compensation. See id.”

Plaintiff states that Defendant, by totally denying Plaintiff an opportunity to claim disability retirement, has violated Sawyer. Sawyer can be said to stand for the proposition that a rating or qualifying needs to be done. This ration or qualifying was totally denied to Plaintiff on his exit, despite the requirement to do so for one whom is on disability and active. Once the rating is done, then if the disability is determined to

be permanent and not the result of a member's intentional or misconduct actions, compensation should flow. By denying Plaintiff his discharge medical review, which would have shown Plaintiff still fully disabled, Plaintiff would have 1. been kept in the service, 2. qualified for his full retirement, 3. been able to obtain tax free disability retirement. 4. qualify for medical care without further administrative requests. Because of Defendant's actions, the rule of law under Sawyer was violated. Pursuant to this Sawyer violation the Court of Federal Claims possess jurisdiction to entertain Secretary's decision not to appoint Petitioner to a disability list, 10 U.S.C. 1201-21 (1992); Sawyer v. United States, 930 F. 2d 1577.

"The Government here argues that Sawyer should be understood differently. According to the Government, § 1201 is money-mandating only for service members who qualify for benefits under the statute, i.e., those members who have been found by the Secretary to be unfit for duty. But that understanding turns the law on its head--according to the Government the only persons entitled to judicial relief are those who do not need it because they were awarded disability status; those who were denied that status cannot get relief because they were denied what they sought." Fisher, supra. This "turning the statute on its head", according to the court's argument in Fisher, is the same argument Plaintiff has; however, Plaintiff's argument is stronger. Plaintiff argues that when one is denied a proper discharge review when he was on medical leave, and denied due process to correct this error, that denied individual, in this case Plaintiff, should be entitled to relief that will ultimately allow medical review, and then a financial determination, as well as a determination regarding the administrative and due process violations.

To disallow review and or recovery such as Defendant requests, should resulting in the court's previous statement "[s]uch a perverse understanding of Congress's purpose cannot be the law; it is inconsistent with the literal language of the statute and with our construction of the statute in Sawyer. The fact that the statute imposes requirements for the payment of money does not mean that only claimants who have been determined by a Government official to meet those requirements have a right to the money the statute provides. It is [**20] the statute, not the Government official, that provides for the payment. If the Government official's determinations under the statute are in error, the court is there to correct the matter, and to have the proper determinations made." Fisher supra. This same ability to correct the matter and make the proper determinations, are exactly what Plaintiff Pope is requesting.

"The Court of Federal Claims is fully empowered to grant such remedies." Fisher, here was requesting disability retirement pay. "Even if it can be said that the complaint was in artfully drafted, that does not change the basic thrust of the cause." Fisher, supra. Similarly, Plaintiff argues that this court has the ability to grant the disability retirement pay to Plaintiff, as the Federal Court of Appeals state the Federal Court of Claims could do with Fisher.

## vii.JUDICIAL REVIEW

"Dr. Fisher notes that, contrary to the Congressional mandate of nonreviewability in the civilian cases, the broad language of the Tucker Act, specifically 28 U.S.C. § 1491(a)(2), argues in favor of judicial review."

The question of whether actions by administrative officers of the Government, acting under Article II of the Constitution, are subject to review by judicial officers, acting under Article III, has roots back to the Nineteenth Century. One of the earliest cases addressing the question, Decatur v. Paulding, 39 U.S. (14 Pet.) 497, 10 L. Ed. 559 (1840), was a military case involving the application of a federal pension statute to the widow of a member of the Navy.

"It would extend unduly this opinion to recite in detail the evolution of judicial review of administrative action during the more than 160 years since Decatur v. Paulding, including the impact of Congress' enactment in 1946 of the Administrative Procedure Act (the APA). 5 U.S.C. § § 551-59, 701-06. Today the doctrine of non-reviewability of executive action is understood to have lost much of its force; although the doctrine has occasional resurgences, it is now generally accepted that there is a presumption in favor of judicial review of administrative action except when Congress has expressly mandated otherwise. See generally Richard J. Pierce, Jr., Administrative Law Treatise, § § 17.5-17.9 (4th ed. 2002)."

“Judicial review of administrative decisions made by an agency of the military regarding service members has likewise undergone significant change. The APA itself provides exemption only for specified military functions, ((See 5 U.S.C. § 551(1)(F) (courts martial and military commissions); 5 U.S.C. § 551(1)(G) (military authority exercised in the field in time of war or in occupied territory)) leaving the general run of military administrative decisions presumably subject to the Act. (John B. McDaniel, The Availability and Scope of Judicial Review of Discretionary Military Administrative Decisions, 108 Mil. L. Rev. 89, 95 (1985)).

An exhaustive study based on an extensive review of Supreme Court decisions in the years since Decatur v. Paulding concluded that there are four established categories of legal challenges to military administrative personnel actions that are judicially reviewable: (1) lack of jurisdiction over the person; (2) violation of statutory authority; (3) violation of the military's own regulations; and (4) violation of the Constitution. (Darrell L. Peck, The Justices and the Generals: The Supreme Court and Judicial Review of Military Activities, 70 Mil. L. Rev. 1, 78 (1975); see also Daniel J. Meador, Judicial Review in Military Disability Cases, 33 Mil. L. Rev. 1 (1966)).

In each of these categories the issue is the one posed in Reaves v. Ainsworth: did the military stay within the scope of its lawful powers in its decision-making. “Peck, supra, at 78-79, notes as an exception a subset of the violation of the Constitution category, when the question raised is not whether the governing statute is unconstitutional, but whether the action taken pursuant to the statute is.

"The question of judicial reviewability becomes more difficult when the issue is whether the military decision, though within the scope of the authorized power, is on the merits arbitrary or capricious, or involves a denial of due process, or is unsupported or otherwise unlawful."

## viii. **PLAINTIFF'S COMPLAINT CONTAINED AT LEAST FOUR DIFFERENT DUE PROCESS VIOLATIONS**.

Plaintiff's claim, Item 18, page 9, covered four different due process violations. These are:

1. NGR 600-5 dated 2-20-90 Chap 6-2 (a) (Line of Duty)
2. NGR 600-5 dated 2-20-90 Chap 6-5 (b) (JAG Assistance)
3. U.S.C. Title 32 dated 2004 Sec 842 Art 43 (Statue of Limitation)
4. AR 340-21 Privacy Act (Probable Causes)

These four issues, and their respective violations, cover the due process violation requirement necessary for jurisdiction in this court. These violations are sufficient enough to provide the requisite notice to Defendant, such that the claims are kept alive.

## ix.**JUDICIAL REVIEW OF THE VETERANS ADMINISTRATION(VA)**

Recently it has come to National Attention the abysmal failure of VA run Walter Reed VA Medical Center, as well as the VA bureaucracy and substandard care. The VA has been federally mandated to provide a system for injured veterans to obtain care. This

federal mandate, as well as federal funding, should similarly satisfy the money mandating requirements needed for jurisdiction in this court.

Presently individuals that manage the VA have been forced to retire. Individuals whom have management ties to the VA Walter Reed hospital have similarly been ousted in the last 30 days. Plaintiff expects that the current head of the VA will be discharged by the time Congress and the Senate finish their respective investigations. Congress and the Senate are investigating the systemic violations as it relates to Veteran care, which in some instances amounts to less than third world treatment of some of our veterans.

Additionally "[t]here are only 30 physical evaluation staff to process disability claims for the 32,000 US casualties of the two wars and almost every medical holding facility for returning veterans lacks qualified staff." This statement provides a current basis on why even if the VA could have jurisdiction on this matter, to demand Plaintiff be put into an overburdened and poorly run operation is effectively a denial of due process as well as the Administrative Procedure Act. "The VA has now ordered a "full and immediate review" of facilities at its 1400 hospitals and clinics, while the White House has instructed the Pentagon to review its procedures for handling the wounded." Plaintiff advises this court, such an immediate offer to review all VA operations, tends to indicate that even the VA knows it is and has provided less than proficient medical care and administrative oversight. To force Plaintiff back into an acknowledged backwater system, denies Plaintiff a real opportunity to have his case heard, as well as be provided the proper medical care. "The US Army's healthcare system for wounded soldiers coming back from Iraq and Afghanistan has been "overwhelmed" by sheer numbers, according to a new government report by the service's inspector general." Plaintiff argues that

overwhelmed is too kind a word, but that this Court should assist in providing an opportunity to be heard by the previously voiceless veterans. War-wounded 'overwhelming' army healthcare system, The Herald, March 15, 2007

Defendant attempts to argue that Plaintiff, a disabled veteran whom has been mistreated by the military establishment, has no jurisdiction anyplace as to his inability to obtain benefits. Disallowing Plaintiff this forum to address his grievance, may set back the tidal wave of pending change regarding the VA bureaucracy and benefit system that is presently being investigate by Congress and the Senate. Alternatively, allowing Plaintiff's claim to go forward may assist in modifying a crumbling effort for the reform of the military and VA as it relates to benefits and medical care for injured veterans.

x.**STANDARD OF REVIEW**

Equitable and extraordinary relief is available after the amending of the Tucker act. United Sales v. United States, 34 Fed. Cl. 88 " In 1988, however, the Tucker Act was amended, conferring limited declaratory judgment authority on this court over non-monetary disputes. The amendment provides in pertinent part:

"(3) To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to

injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security."

This case does not stand for the proposition that national defense and national security issues are to be automatically ruled in favor of the government, only that these cases may be given due regard. Plaintiff is only requesting that Defendant be held to some standard, other than that as King, such that Defendant is responsible to pay for damages it reasonably did cause Plaintiff to suffer.

## xi FEDERAL JURISDICTION BASED ON FEDERAL FUNDING OF VEHICLES

18.U.S.C. 844 (f)(1) criminalizes the following: maliciously damaging or attempting to damage by means of fire or an explosive, any vehicle in whole or in part owned or possessed by any institution or organization receiving Federal financial assistance. In re Grand Jury Subpoena, Joshua Wolfe, No CR 06-909064 Mis MMC (MEJ), Northern District of California, US District Court.

If the Federal Government can gain jurisdiction, as it has in the Wolfe case, by claimed possible damage, not actual damage other than a broken tail light, to a San Francisco police vehicle that was partially funded by the Federal Government, then Federal Jurisdiction should similarly be allowed in Plaintiff's case. In short, Plaintiff was injured while working in a National Guard provided vehicle, which was primarily funded by federal funds. After this injury, where Plaintiff was found to be the innocent party, Defendant manufactured claims of Plaintiff misusing an unidentified government vehicle

through alleged claims of a disgruntled ex girlfriend whom had just been discharged from a mental ward. This misuse claim was solicited and manufactured by Defendant, never proven, and later rescinded by the same disgruntled ex girlfriend whose testimony was used to create the issue. Plaintiff was, shortly after the accident, railroaded out of the service without an opportunity to have any administrative hearing.

Just as the Federal Government has bootstrapped federal jurisdiction in the Wolfe case, based on possible damage to a partially federally funded San Francisco Police vehicle, Plaintiff can similarly bootstrap federal jurisdiction to the injury he received while driving a federally funded vehicle. Also note, the burden satisfied in Wolfe was to a criminal case, rather than a civil case. Since the burden must have been met as to jurisdiction in a criminal matter, jurisdiction must certainly exist in a civil matter. Additionally, the complete lack of due process Plaintiff received is in violation of Federal Due Process, which again attaches to federally funded items.

## xii. PLAINTIFF HAS STATED A MONEY MANDATING STATUTE AS A SOURCE OF JURISDICTION UNDER THE TUCKER ACT

Plaintiff's complaint relies partly on the Back Pay Act, 5 U.S.C. § 5596, as one money-mandating basis for this Court's jurisdiction. Despite Defendant's contention, Plaintiff's reliance on the Back Pay Act is proper since the federalized National Guard is more akin to the civil service, than that of the Military. Mr. Pope avers he was serving as a full time employee in the AGR and was discharged from active service with the California National Guard. This National Guard status has now been federalized prior to the discharge of Pope. This argument is bolstered with the duel relationship National Guard

members have. Plaintiff can alternatively argue he was a civil servant.

Federal Jurisdiction can be gained by, not actual, but possible damage to a partially federally funded vehicle, as stated in the Wolfe case, infra. If federal jurisdiction can be bootstrapped on possible damage, i.e. the actual damage of a tail light, which is what occurred in Wolfe, of a partially federally funded vehicle ran and operated by city police officers, then federal jurisdiction can similarly be obtained for a primarily federally funded military force vehicle, such as the California National Guard vehicle that Plaintiff was injured in. If the vehicle Plaintiff was injured in has federal jurisdiction, then the damage Plaintiff received by the injury inside the vehicle, due to no fault of his own, should similarly be covered as a federal matter. It then flows that the railroading, denial of benefits and, denial of due process should also be primarily federal issues, which this court has jurisdiction over.

## xiii. **JURISDICTION EXISTS TO EXAMINE DISABILITY CLAIMS**

Plaintiff was on disability, dismissed while on disability without the proper medical discharge signed by a doctor and then, denied access to his prior medical care provider due to the removal. Plaintiff, using Fisher 2, is different in that Fisher was given three separate disability ratings. Plaintiff was on disability, dismissed while on disability without the proper medical discharge and thereby denied any rating obtained by Fisher while Fisher was active. FISHER, v. UNITED STATES 72 Fed. Cl. 88; 2006 U.S. Claims LEXIS 227, July 28, 2006 “n2 Under AFI 36-3212 paragraph 3.24.1, the Physical Evaluation Board ("PEB") may place a service member on the TDRL if it finds that the disability is "permanent in character, but not stable in degree." The

service member remains on the TDRL for a period of time for the purpose of allowing the condition to stabilize. At the end of the period, the service member is either given a disability rating and retired or reinstated into active duty". Plaintiff has an active case, where as the dilemma in Fisher, to put Fisher "back on TDRL was seen as moot". This issue, however, this would not be moot with Plaintiff's case and, therefore should be judicially determined via allowing the case to progress.

## xiv. **DEFERENCE TO EXECUTIVE AUTHORITY DOES NOT EXTEND TO IGNORING BASIC DUE PROCESS CONSIDERATIONS**

"[D]eference to Executive authority does not extend to ignoring basic due process considerations, however. When there is a question of whether reasonable process has been followed, and whether the decision maker has complied with established procedures, courts will intervene, though only to ensure that the decision is made in the proper manner." Fisher Appeals, Supra. Given that Plaintiff was not afforded the established procedures, the claim by Defendant of a non justiciable question fails, and Plaintiff should be allowed to have a determination as to the reasonable processes and procedures which should have been followed, but were not.

## xv. **JURISDICTION EXISTS TO EXAMINE FORCED RESIGNATION ATTEMPTS**

Plaintiff was asked to resign but failed to do so. Plaintiff was denied an actual hearing, then forced out while on medical treatment via the failed forced resignation. Fisher cited Murphy, for the pretext of a forced resignation was not valid. "Murphy v. United

States, 69 Fed. Cl. 593 (2006), under the proposition that a service member can only voluntarily terminate his position by resignation or retirement is inapposite. Murphy dealt with a service member who resigned from her position and then later claimed that her resignation was involuntary due to duress." Here, Plaintiff was asked to resign, but failed to do so. Based on Plaintiff not following the forced resignation, he was denied an actual hearing, and then forced out, while on medical treatment for the injury he received in Defendant's primarily federally funded auto.

The denial of federal due process, combined with the fact Plaintiff's injury took place while driving a vehicle which was purchased with federal funds, allows Federal Jurisdiction. The same ability Murphy had to gain jurisdiction, should similarly be allowed to Plaintiff. The Fisher Court's view on Murphy, should not stop Plaintiff from similarly using the duress argument of Murphy to gain jurisdiction

## xvi. **JURISDICTION EXISTS TO EXAMINE DUE PROCESS CLAIMS**

Plaintiff states that this Court has jurisdiction for Due Process claims when they are tied to a money-mandating requirement. Here Plaintiff has, among other claims, a Fifth Amendment claim. Because of this Fifth Amendment claim, Plaintiff's case will not follow the Collier decision because Collier failed "to state a Fifth Amendment takings claim" Collier v. United States, 56 Fed. Cl. 354. cited by Johnson v. United States, 79 F. Supp. 208, 211, 111 Ct. Cl. 750 (Ct. Cl. 1948)

Similarly this court does have jurisdiction as to the failed payments of federal money to ultimately be received by Plaintiff which in fact, have passed through the States hands on disability benefits, and disability retirement into the State coffers. These funds, however, have not been transmuted, and still maintain their federal identity, as well as their respective federal mandated due process requirements.

## xvii. **UNITED SALES V. UNITED STATES, 34 FED. CL. 88 CONFERRED LIMITED DECLARATORY JUDGMENT AUTHORITY ON THIS COURT OVER NONMONETARY DISPUTES**

Additionally, United Sales v. United States, 34 Fed. Cl. 88 conferred limited declaratory judgment authority on this court over nonmonetary disputes.

"[W]hen important individual rights are at issue and are allegedly the subject of administrative abuse, it can be argued that some room must remain for effective judicial review--the fact that [**56] an administrative personnel decision is made by an agency that is part of the military as distinct from an agency in some other part [*1187] of the Executive branch should not per se immunize it from judicial scrutiny." The National Guard is a subset of the Military, and as such, the Executive branch should not be per se immunized from judicial scrutiny as to Plaintiff.

"First and most important is the fact that the issue before us is not one of military governance and authority going to the question of war fighting; the issue is an administrative one, the outcome of which results only in a grant or denial of disbursements Treasury

Looking then to the suggested factors to be balanced, the right asserted by Dr. Fisher is one to well-established pension benefits for those who suffer duty-related injury, and the denial of which would be a clear and specific financial injury. From the military side, the discretionary decision whether Dr. Fisher should be compensated for an alleged injury does not seem to be particularly a military discretion as such; its judicial review would not seem to intrude to any great extent on the needed prerogatives of the President in conducting military affairs. Nor is the expertise required to decide the case especially that of the military; to the extent courts are called upon to review medical decisions of all sorts to determine whether [**58] there has been an abuse of discretion, this one is not that different. Further, a decision in favor of Dr. Fisher does not interfere with a particularly military function--the same problem of eligibility for disability compensation arises in the civilian context as well, and since the issue is not whether Dr. Fisher should be returned to military duty but how if at all he should be compensated for past duty, any special requirements of the military community would not seem to be significantly implicated," Fisher Appeals, supra.

Having this court examine the procedures used, as stated in Fisher above, the issue is not whether Plaintiff "should be returned to military duty but how if at all he should be compensated for past duty, any special requirements of the military community would not seem to be significantly implicated."

## xviii. **DUE PROCESS FAILURES BY THE MILITARY ALLOW FOR A JUSTICABLE CONTROVERSY TO EXIST**

Due Process failures by the Military allow for a justiciable controversy to exist.

"[W]e have consistently noted that a challenge to a particular procedure followed by the military in rendering a decision may present a justiciable issue." Adkins v. United States, 68 F.3d 1317, 1323 (Fed. Cir. 1995). "Even when Congress has given the military discretion in conducting its affairs, the military is bound to follow its own procedural regulations should it choose [**27] to promulgate them." Murphy, 993 F.2d at 873 (citing Sargisson, 913 F.2d at 921). "A court may decide whether the military has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion." Id. at 873. "Such a case presents a justiciable controversy because the 'tests and standards' against which the court measures the military's conduct are inherent in the requirements of the applicable regulation itself." Adkins, 68 F.3d at 1323.

Similarly Plaintiff has a case which presents a justiciable controversy because the tests and standards against which the court measures the military's conduct are inherent in the requirements of the applicable regulation itself.

## xix. **THE COURT OF CLAIMS HAS JURISDICTION IN MILITARY DISABILITY DISCHARGE CASES**

"[T]he Court of Claims, not cited by either party, in which that court in military disability discharge cases did not limit its review, as was generally the case in military matters if any review was allowed, to the question of whether proper procedure was followed.

Instead, the court reviewed the merits of the military's decision, [**30] albeit applying a deferential standard of review." Fisher Appeals, Supra

"Ward v. United States, 178 Ct. Cl. 210 (1967), was the first of these cases in which the Government lost. Despite having had his right kidney surgically removed while on active duty, plaintiff was found [**32] physically qualified for release from active duty with no physical defects; that finding was affirmed by the Navy's review boards. After reviewing the record, the Court of Claims, citing to Towell and Furlong, concluded that "on the whole record, it is found that plaintiff was not physically fit for active duty at sea or on foreign service at the time of his release to inactive duty and that the decision of the Board for the Correction of Naval Records to the contrary is not supported by substantial evidence and is arbitrary." Id. at 219.

Jordan v. United States, 205 Ct. Cl. 65 (1974), followed the Ward model, reversing the Army's refusal to grant disability retirement pay to an Army sergeant who, at the time of his discharge, was deemed to be physically fit for duty. In a lengthy decision, the Court of Claims reviewed the medical history plaintiff presented and the records before the Army review boards, including the qualifications of the various doctors. The court concluded:

"Even though defendant's evidence in the instant case, considered of and by itself, might support the administrative decision by the Army to discharge plaintiff [**33] as physically fit, we find, as hereinafter discussed, that there is "opposing evidence [principally, plaintiff's medical record with the VA] so substantial in character" as

to detract from the weight of the evidence in support of the Army discharge, and to render it "less than substantial on the record as a whole."" Ward, supra.

## xx. JURISDICTION EXISTS SINCE PLAINTIFF WAS DENIED A PHYSICAL EVALUATION FOR RETENTION, RETIREMENT AND SEPARATION HEARING.

Plaintiff was denied a Physical Evaluation for Retention, Retirement, and Separation hearing. The Fisher case also focused on the separation physical one must have. Fisher supra, at foot note N6 "Physical Evaluation for Retention, Retirement, and Separation," was promulgated on June 14, 1994 pursuant to the Secretary of the Air Force's authority under 10 U.S.C. § 1201 (2000)." Plaintiff was denied such an evaluation. This denial was arbitrary, capricious, contrary to law, or unsupported by substantial evidence. Plaintiff went through the Board of Corrections. Plaintiff had requested that the Board of Corrections for the Army determine that the procedures during the separation were in error. The Board failed to make the requested ruling and denied Plaintiff's request. This denial by the Board should be reviewed to determine if the decision and the original action were arbitrary, capricious, contrary to law, or unsupported by substantial evidence. This review also gains jurisdiction in this Court.

Fisher, supra stated: "we review decisions of the Board to determine if they are "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Chambers v. United States, 417 F.3d 1218, 1227 (2005)."

**xxi. U.S. CONST ART II § 2, cl. 1 PROVIDES FOR INCLUSION OF THE NATIONAL GUARD**

"U.S. Const. art. II, § 2, cl. 1. The reference in the Constitution to the Army and Navy is understood to include the Air Force and other units of the military services." Because of this reference, Plaintiff, despite working for the National Guard should be given benefits in line to that of the Army and Navy.

xxii. **UNDER CERTAIN CIRCUMSTANCES, MEMBERS OF THE NATIONAL GUARD MAY SEEK FEDERAL BENEFITS TO WHICH THEY ARE ENTITLED**

Under certain circumstances, members of the National Guard may seek federal benefits to which they are entitled. Dehne, 970 F. 2d at 890. This case opens the door for at least some federal benefits to National Guard Members. This also opens up Federal Court Jurisdiction in obtaining those benefits. Plaintiff believes that Dehne, since it is cited as an authority in the practitioner's guide issued by this court, explicitly if not implicitly conveys this Court's jurisdiction under some circumstances.

xxiii. **TUCKER ACT CAN BE SATISFIED BY A RESERVE MEMBER OF THE MILITARY**

"In Palmer v. United States, 168 F.3d 1310 (Fed. Cir. 1999), we held that a claim by a reserve officer that he had been improperly removed from his billet, thus denying him opportunities for pay, stated a cause of action under the cited pay statute, and thus conferred jurisdiction under the Tucker Act on the Court of Federal Claims. Id. at 1313. The ultimate conclusion in the case was that the money-mandating statute, applied to the facts proven, did not afford the remedy claimed. That was held to be a failure on the

plaintiff's part to state a claim on which relief could be granted, and not a jurisdictional defect." Fisher Appeals, Supra. Plaintiff, however has stated a claim that relief can be granted, thus both jurisdiction and the ability to offer the requested relief can be heard in the Federal Court of Claims.

The authority of the Federal courts to protect individual rights and to decide controversies--"the judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States . . ." U.S. Const. art. III, § 2, cl. 1.--must be balanced against the authority of other constitutional decision makers.

"[I]t is clear from [**35] this review that the controlling precedents entitle a discharged service member to judicial review on the merits of the question of eligibility for disability retirement pay. The cases are consistent that this review is conducted under a deferential standard of review, essentially the standard under which administrative agency decisions are reviewed: whether the decision is arbitrary or capricious, unsupported by substantial evidence, or otherwise not in accordance with law." Fisher Appeals, Supra

Haskins v. United States, 51 Fed. Cl. 818 (2002), in which a discharged veteran's suit against the Army for medical retirement with full disability pay was found justiciable (though the veteran lost on the merits).

Fisher Appeals, supra stated, and Plaintiff believes that "the case before us stands outside these admonitions--the issue is not the composition of the military, but the society's legal obligations to those who are no longer within the military forces. We are compelled by logic and the force of precedent to conclude that this question is properly subject to judicial review, and that a deferential standard of review strikes the correct balance here. (Of course, courts can provide review only so long as there [*1183] are tests or standards by which the decision can be measured.)"

The Court of Claims in Scroggins v. United States, 184 Ct. Cl. 530, 397 F.2d 295 (1968), "[T]here remained a residual level of review despite the statute: disability decisions could be reviewed under a highly deferential standard to determine whether there had been "a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative decision." Id. at 297 (internal quotation marks omitted)." This substantial deviation from procedural rights similarly gives Plaintiff the ability to have the Court of Claims review that deviation.

## xxiv. FIFTH AMENDMENT TAKING

Here, Plaintiff has alleged a Fifth Amendment claim. The Collier decision was fatal because Collier failed "to state a Fifth Amendment takings claim". Johnson v. United States, 79 F. Supp. 208, 211, 111 Ct. Cl. 750 (Ct. Cl. 1948).

Plaintiff was within his last window of opportunity for retirement and or promotion, but instead was removed from service via blatant due process violations. Plaintiff believes

that this satisfies the requirement showing a reduction in his "duly appointed emoluments or position" to establish subject matter jurisdiction under the Back Pay Act, as recited in Collier v. United States, 56 Fed. Cl. 354. Plaintiff further asserts that by Defendant not properly following procedure, they were able to railroad Plaintiff out of the service just in time to prevent Plaintiff from claiming full retirement. Additionally, this retirement would have been disability retirement, having with it a tax free benefit. By Defendant doing the above actions and more, they have deprived Plaintiff of primarily Federal funds and Federal benefits, which allows a legitimate Fifth Amendment claim to exist.

## xxx. **THE COURT MAY CONSIDER ALL RELEVANT EVIDENCE, INCLUDING EVIDENCE OUTSIDE THE PLEADINGS WHEN RESOLVING A JURISDICTIONAL CHALLENGE**

Amazingly, Defendant's counsel cited the following in it's boiler plate 12b6 motion " Further, the Court may consider all relevant evidence, including evidence outside the pleadings when resolving a jurisdictional challenge." Wilson v. United States, 58 Fed. Cl. 760, 762 (2003) Plaintiff contends that by the expanded version of looking at relevant evidence combined with looking at the pleadings, the jurisdictional challenge Defendant proffers is nothing more than a ruse to deny Plaintiff's Fifth Amendment claim, thereby granting him a jurisdictional ticket to this Court of Claims forum.

Also, amazingly enough, Defendant cites Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983). For the following proposition of limiting jurisdiction,

when a five year more recent case, United Sales v. United States, 34 Fed. Cl. 88 provides for the expansion, in even non monetary disputes. " In 1988, however, the Tucker Act was amended, conferring limited declaratory judgment authority on this court over nonmonetary disputes." As such, the limiting nature of Fidelity, infra, has been expanded by the Congressional expansion of Tucker, as well as the case law in Sales, infra. This expansion has been at least from 1988. This expansion is yet another reason to allow Plaintiff's case to progress.

## xxxi. **BACK PAY ACT CAN BE CONSIDERED, UNDER HONDROS IN THE COURT OF CLAIMS.**

Smith v. United States, , 823 F.2d 532 Judge Adams, in his concurring opinion in Hondros, 720 F.2d at 303, thought the Court of Claims "intimated by its construction of Phillips v. United States, 227 Ct. Cl. 532 (1981), that it [the Court of Federal Claims] could consider a backpay claim based on Smith's wrongfully withheld career position once he had received a career appointment." Despite the failure of Smith to obtain his Back Pay, due to a pleading error by not citing a money mandating requirement. Plaintiff states that Federal Money when misused satisfies the money mandating requirement set forth in Spagnola v. Stockman, 732 F.2d 908, 912 (Fed. Cir. 1984), for those payments or benefits which were required by law. Plaintiff also makes a similar claim as Smith in that the misuse of federal money, as to Plaintiffs retirement, benefits, promotion and the car Plaintiff was driving, as well as the fictitious car he was claimed to

misuse without dates, or times, or exact car types allows Plaintiff to similarly satisfy the money mandating requirement of Spagnoal, supra.

When due process is violated with Congressionally mandated federal funds, the Money Mandating requirement exists, which will then allow the two legged table to gain its third and arguably fourth leg. This sprouting of stability allows for the Back Pay act to be other than a hollow statute. Arguing otherwise will never allow the Back Pay act to be other than a legal book entry with no ability for injured Federal Employees to obtain remuneration in the Federal System

## xxxii. MISQUOTE OF BACK PAY ACT BY DEFENDANT

Amazingly, Defendant uses Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir. 1999). as an authority (quoting 37 U.S.C. § 204(a)). "Full time active duty service members are entitled to the pay corresponding to their rank until they are properly separated from the service." The key here is that Plaintiff was never properly separated, and he worked full time. This failure to properly separate Plaintiff allows Plaintiff to claim back pay until he is properly separated. Recall proper separation for a military member on disability requires a medical discharge signed by a doctor, which was never done in this case. Since Plaintiff was never properly separated, he should still be entitled to wages. Given the Federalization of the National Guard, Plaintiff can argue his relationship as being similar to Full time, thus qualifying under Palmer for back pay.

E. CONCLUSION

Plaintiff has jurisdiction in this Court, and the Petition identifies significant and substantial viable claims. Because of these reasons the case should go forward and not be dismissed. Given that Petitioner was a member of the Army Reserve and the California National Guard; Petitioner is protected by the maxim, that the release from service must not violate service regulations or the Federal Constitution. 10 U.S.C. 681(a) (1992): Woodward v. United States, 871 F.2d 1068, 1072( Fed Cir. 1989).

Petitioner was serving on Active service as a reservist, and since Petitioner was disabled in the Line of Duty Veterans Benefits should be available to Petitioner. 38 U.S.C.. 101(16); 38 C.F.R. 3.1 (k), 3.303(a) (2005).

Plaintiff requests the case for disability benefits, medical benefits and back pay to continue in accordance with the Congressionally mandated authority provided for in this Court.

Plaintiff requests that this case not be dismissed because this Court has proper jurisdiction.

Respectfully submitted,

05/22/07 s/Jeffrey D. Moffatt

Admitted U.S. Supreme Court and U.S. Court of Federal Claims
Attorney for Plaintiff Leroy Pope
(661) 945-6121 / Fax (661) 945-3019
43625 N Sierra Hwy, Suite A.
Lancaster, CA 93534
**E-mail Address: jeffreymbajd@hotmail.com**

F. CERTIFICATE **OF FILING**

I hereby certify that on May 22, 2007, a copy of the foregoing "PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System.