IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LEROY D. POPE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | No. 06-446 C |
| v. | ) | (Judge Coster Williams) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Plaintiff's complaint should be dismissed pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), for lack of jurisdiction over the subject matter, and Rule 12(b)(6), for failure to state a claim upon which relief can be granted. Plaintiff claims he is entitled to back pay, reinstatement in the National Guard Active Guard/Reserve (AGR) program, disability retirement, and Veterans' Benefits from the Department of Veterans Affairs (VA). Compl., at 1, ¶ 1. Plaintiff fails to identify a money mandating statute for his back pay claim. The Court also lacks jurisdiction over Mr. Pope's disability retirement and Veterans' Benefits claims as he has not followed the procedural requirements for such relief. Furthermore, this Court does not have jurisdiction over his Due Process claims. Finally, plaintiff fails to state a claim upon which relief can be granted because the Army Discharge Review Board lacked the authority to grant the relief that he requested.

**ARGUMENT**

I. The Court Does Not Have Subject Matter Jurisdiction Over Mr. Pope's Claims

Mr. Pope's opposition to the Government's motion to dismiss consists of random

assertions and arguments that fail to establish a proper jurisdictional basis for his claims before this Court. Mr. Pope argues that his complaint is viable because it "contains at least the plain statement that he is entitled to relief, and therefore has satisfied Fed. R. Civ. Proc 8 (a)(2) [sic]." Pl. Opp'n to Def. Mot. To Dismiss, at 7 (hereinafter "Pl. Opp'n"). Plaintiff's assertion that the requirements of Rule 8(a) have been met, however, does not satisfy his obligation to plead and prove jurisdiction. As established in our opening brief, jurisdiction in this Court must be construed strictly and all conditions placed upon such a grant must be satisfied before this Court may accept jurisdiction. United States v. Mitchell, 455 U.S. 535, 538 (1980). A plain statement that plaintiff is entitled to relief is insufficient to meet jurisdictional requirements.

Similarly, plaintiff's assertion that "[m]otions to dismiss a complaint after the plaintiff's opening statement are disfavored and rarely granted," is misplaced. Pl. Opp'n at 7 (citing Morfeld v. Kehm, 803 F.2d 1452, 1454 n.3 (8th Cir. 1986)) (emphasis added). Morfeld deals with a motion for a directed verdict under Rule 50(a) after an opening statement during a trial, not a motion to dismiss under Rule 12(b). Plaintiff demonstrates his misunderstanding of the issues by stating "the prospect of dismissal on opening exist only when . . . the case is doomed to defeat." Id. Although the Government's motion to dismiss is not after "opening," plaintiff's "case is doomed to defeat" because there is no jurisdictional basis for his claim.

A. Plaintiff Has Not Established A Jurisdictional Basis Under The Tucker Act Regarding His Back Pay Claim

1. The Back Pay Act Does Not Apply To The Uniformed Services

Mr. Pope continues to rely on the Back Pay Act, 5 U.S.C. § 5596, as a money-mandating basis for this Court's jurisdiction. Pl. Opp'n at 19. To that end, he argues that "the federalized National Guard is more akin to the civil service, than that of the Military." Id. This assertion is,

however, in direct conflict with the plain language of the statute, which provides that, for purposes of the Civil Service Reform Act and its catalog of legislative remedies, the "civil service" does not include the "positions in the uniformed services." 5 U.S.C. § 2101. Plaintiff's reliance on the Back Pay Act as a money-mandating statute is improper, as he was not a civil service employee.

2. The Use Of A Federally Procured Vehicle Is Insufficient To Grant Jurisdiction

Mr. Pope argues that this Court has jurisdiction over his claim because he allegedly was injured in a vehicle purchased using funds from the federal government. Pl. Opp'n, at 18. Relying on authority identified only as "In re Grand Jury Subpoena, Joshua Wolfe, No CR 06-909064 Mis MMC (MEJ) Northern District of California, US District Court," Mr. Pope asserts that "[i]f the Federal Government can gain jurisdiction, at it has in the Wolfe case, by claimed possible damage, not actual damage other than a broken tail light, to a San Francisco police vehicle that was partially funded by the Federal Government, then Federal Jurisdiction should similarly be allowed in Plaintiff's case." Pl. Opp'n, at 18 (noting that 18 U.S.C. § 844(f)(1) criminalizes "maliciously damaging or attempting to damage . . . any vehicle in whole or in part owned or possessed by any institution or organization receiving Federal financial assistance').

Assuming that the holding of In re Grand Jury Subpoena, Joshua Wolfe is precisely as plaintiff asserts,[1] subject matter jurisdiction in a United States District Court is not that same as

[1] Research uncovered an unpublished disposition in the Ninth Circuit, In re Subpoena, 430 Fed. Appx. 430 (9th Cir. 2006) with a fact pattern somewhat similar to that described in Mr. Pope's brief. In re Subpoena involved a recalcitrant witness appeal under 28 U.S.C. § 1826, in which the appellant contested his duty to comply with a grand jury subpoena seeking testimony and videotape concerning the burning of a police vehicle. Id. at 431. Without discussion, the Ninth Circuit determined that "the district court had jurisdiction [to issue a contempt order] pursuant to 28 U.S.C. §§ 1826, 1331." Id.

jurisdiction in the Court of Federal Claims. Jurisdiction in the Court of Federal Claims is based on the government's specific consent to suit. See United States v. Mitchell, 445 U.S. 535, 538 (1979) (quoting United States v. King, 395 U.S. 1, 4 (1969)) for the proposition that "a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'"). In other words, "[i]n the absence of clear congressional consent . . . 'there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States." Id. (quoting United States v. Sherwood, 312 U.S. 584, 587-88 (1941)). Mr. Pope does not--and, indeed, cannot--offer any evidence that Congress has waived sovereign immunity for suits in this Court on the basis that a "federally funded" vehicle was tangentially involved in the background of events. As such, he cannot establish jurisdiction over his claim on this basis.[2]

3. 10 U.S.C. § 1201 Is Not Money Mandating For Back Pay Claims

To the extent that Mr. Pope may be attempting to salvage his back pay claims by reference to 10 U.S.C. § 1201 as a money mandating statute establishing jurisdiction, see Pl. Opp'n, at 9, the argument lacks merit. "A statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s]." Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (quoting United States v. Mitchell, 463 U.S. 206, 217 (1983)). However, 10 U.S.C. § 1201 cannot fairly be interpreted as mandating compensation for back pay

---

[2] At another point in his complaint, Mr. Pope claims that the jurisdiction that exists in this Court to examine forced resignation attempts also provides this Court with jurisdiction over his back pay claim when "combined with the fact [p]laintiff's injury took place while driving a vehicle which was purchased with federal funds." Pl. Opp'n, at 21-22. Even putting aside the above discussion as to federally funded vehicles, cases premised on forced resignations are inapposite. Plaintiff's complaint does not allege that he was forced to resign, but rather acknowledges that he was "dismissed" from military service. Compl. ¶ 4.

claims, because, by its plain terms, it only mandates disability retirement claims under certain circumstances.[3]

4. Mr. Pope Is Not Entitled To Back Pay Because He Failed To Perform His Duties, Nor Is He Entitled to Combat-Related Special Compensation

Mr. Pope fails to respond to the government's arguments that he cannot receive back pay because he has not performed his duties, Def. Mot. To Dismiss, at 7-8, and to the government's arguments against his claim to entitlement to combat-related special compensation under 10 U.S.C. § 1413(a). Def. Mot. To Dismiss, 9-10. Accordingly, and for the reasons set forth in detail in the government's motion to dismiss, Mr. Pope's claims with respect to these two items of compensation should be dismissed.

B. This Court Lacks Jurisdiction Over Mr. Pope's Disability Retirement Claims

Mr. Pope also argues that this Court has jurisdiction over his disability retirement claim under 10 U.S.C. § 1201. Pl. Opp'n, at 9. As stated in our opening brief, this Court "has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance." Chambers v. United States, 417 F.3d 1218, 1225 (Fed. Cir. 2005). Jurisdiction over disability retirement claims "is conferred by Congress, not on this court, but on retiring boards and the Secretaries of the three armed services, to decide an officer's right to retirement for physical disability, and his consequent right to retired pay." Id. at 1224-25 (quoting Furlong v. United States, 152 F. Supp. 238, 240-41 (Ct. Cl. 1957)). Accordingly, plaintiff's disability retirement pay claims do not accrue until the appropriate

[3] Because the statute that Mr. Pope relies upon does not apply to his situation, his case must be dismissed under 12(b)(6) for failure to state a claim on which relief can be granted. See Fisher v. United States, 402 F.3d 1167, 1172-73 (Fed. Cir. 2005).

military board either finally denies, or refuses to hear, a disability retirement claim. Id. at 1224 (citing Real v. United States, 906 F.2d 1557, 1560 (Fed. Cir. 1990)).

Mr. Pope does not allege in his complaint that he has filed a disability retirement claim with the Army Board for Correction of Military Records ("ABCMR"). Rather, he indicates that he could have appealed the decision of the Army Discharge Review Board ("ADRB"), but chose not to do so. Compl. ¶ 3. In his opposition, Mr. Pope states for the first time that he went through the "Board of Corrections." Pl. Opp'n, at 27. Mr. Pope appears to have confused the ADRB with the ABCMR.[4] See Def. Mot. To Dismiss, at 13-14 (describing the authority of the ADRB and ABCMR). Indeed, investigation has confirmed that Mr. Pope has not filed a disability retirement claim with the Army Board for Correction of Military Records (ABCMR). See Decl. Of Gerard W. Schwartz, attached hereto as Exhibit A. Based on the declaration of Mr. Schwartz and Mr. Pope's acknowledgment that he did not appeal the ADRB determination, it is clear that he has not filed a disability retirement claim with the ABCMR. Accordingly, plaintiff's case should be "'dismissed as premature on the ground that the [he] did not seek or obtain a final decision within the administrative hierarchy.'" Chambers, 417 F.3d at 1225 (quoting Friedman v. United States, 310 F.2d 381, 396 (Ct. Cl. 1962)).

Discussing United States v. White Mountain Apache Tribe, 537 U.S. 465 (2003) and Fisher, 402 F.3d 1167, Mr. Pope attempts to establish jurisdiction in this Court by arguing at length that 10 U.S.C. § 1201 may fairly be read as a money mandating statute for purposes of the Tucker Act, see Pl. Opp. at 8-12. This argument is beside the point. Indeed, Fisher, which was

[4] The ADRB only has the authority to "change a discharge or dismissal, or issue a new discharge, to reflect its findings." 10 U.S.C. § 1553 (2005).

itself a disability retirement case, reached the question of whether 10 U.S.C. § 1201 is a money mandating statute in the context of a challenge to a final decision by the Air Force Board for Correction of Military Records. See 402 F.3d at 1170-71. Unlike the plaintiff in Fisher, Mr. Pope has neither sought nor obtained a final decision on his claim from the appropriate military board. This Court lacks jurisdiction over Mr. Pope's disability retirement claims because a military board has not evaluated his claim to entitlement to such retirement, and his claims should be dismissed accordingly. See Chambers, 417 F.3d at 1225.

C. This Court Lacks Jurisdiction To Review Veterans Affairs Disability Claims

Mr. Pope further claims he was disabled in the line of duty and is entitled to Veterans' Benefits, Compl. ¶ 6, which are administered by VA. Even putting aside the fact that Mr. Pope does not allege in his complaint that he ever applied for Veterans Benefits, as noted in our opening brief, any entitlement to Veterans Benefits requires the filing of a claim with the Secretary of Veterans' Affairs, whose determinations are appealable to the Board of Veterans Appeals, the United States Court of Appeals for Veterans Claims, and ultimately the United States Court of Appeals for the Federal Circuit. 38 U.S.C. §§ 5101(a), 7104, 7252, 7292 (2005). Plaintiff mischaracterizes these arguments as an assertion by the government that he "has no jurisdiction anyplace as to his inability to obtain benefits." Pl. Opp. at 17. That is not our position. Rather, the relevant statutory scheme establishes that this Court lacks jurisdiction to make the determination that Mr. Pope seeks. Nothing in Mr. Pope's opposition alters that conclusion.

D. Plaintiff's Request to be Reinstated Involves a Nonjusticiable Issue

Mr. Pope also requests the Court to "correct/reinstate [his] military records," along with

back pay, retirement and Veterans benefits. Compl., at 27, ¶ 30. In our opening brief, we established that this Court lacks the authority to "reinstate" plaintiff into the AGR program. See Murphy v. United States, 993 F.2d 871, 874 (Fed. Cir. 1993) (stating military decisions to release servicemembers from active duty are beyond judicial reach). Plaintiff now argues, without supporting factual or legal authority, that the National Guard "has been fully federalized, therefore removing any prior arguments of non reviewability of National Guard decisions." Pl. Opp. at 2. This bold assertion is not legally or factually supported and runs counter to well established precedent that this Court lacks authority to reinstate Mr. Pope into the AGR program. See Def. Mot. To Dismiss, at 11-12.

Plaintiff's argument is flawed for multiple reasons. First, the principle against judicial interference in military personnel decisions applies equally to the Federal Armed Services and the State National Guard. See e.g., Orloff v. Willoughby, 345 U.S. 83, 94 (1953) (refusing to revise the assignment of an Active Duty Regular Army Officer); Murphy, 993 F.2d at 874 (refusing to review the Air Force's decision to release an Air National Guard officer from active duty). The decision whether to reinstate Mr. Pope into the AGR program is a nonjusticiable military personnel issue, irrespective of his status in the State National Guard or the Federal United States Army.

Plaintiff's argument that the National Guard decisions in question are reviewable also fails because his claim that the National Guard has been "fully federalized" after the terrorist attacks of September 11, 2001, is factually incorrect. Pl. Opp. at 2. Such "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998). Plaintiff was a member of the Army

National Guard of the United States,[5] a reserve component of the United States Armed Forces[6] whose purpose is to "provide trained units and qualified persons available for active duty in the armed forces, in time of war or national emergency, and at such other times as the national security may require, to fill the needs of the armed forces." 10 U.S.C. § 10102. Furthering this purpose, the President has the authority to order the reserve components to active duty under certain circumstances, including after a Presidential declaration of national emergency. See 10 U.S.C. § 12302(a).

President Bush reacted to the September 11, 2001, terrorist attacks by declaring that a "national emergency exists by reason of the terrorist attacks at the World Trade Center, New York, New York, and the Pentagon, and the continuing and immediate threat of further attacks on the United States." See 66 Fed. Reg. 48,199, Presidential Proclamation 7463 (September 14, 2001). In his Proclamation, President Bush also invoked authority under 10 U.S.C. § 12302 – which is based upon a Presidential declaration of national emergency – to order reserve

---

[5] This is to be distinguished from the state National Guards. All persons who enlist in a State Guard unit simultaneously enlist in the National Guard of the United States, where they become part of the Enlisted Reserve Corps of the Army. But until ordered to active duty in the Army, they retain their status as members of a separate state Guard unit. 10 U.S.C. § 101(c); Perpich v. Dep't of Defense, 496 U.S. 334, 338-39 (1990) ("National Guard consists of two overlapping, but legally distinct, organizations. Congress, under its constitutional authority to 'raise and support armies' has created the National Guard of the United States, a federal organization comprised of state national guard units and their members.'" [citation omitted] . . . . [T]hese units also maintain an identity as State National Guards, part of the militia described in Art. I, § 8, of the Constitution . . . .").

[6] The other reserve components are the Army Reserve, the Naval Reserve, the Marine Corps Reserve, the Air National Guard of the United States, the Air Force Reserve, and the Coast Guard Reserve. 10 U.S.C. § 10101.

components to active duty. Id.[7]

The same day, President Bush issued Executive Order 13223, which delegates this authority to order reserves to active duty to the secretaries of the armed services. 66 Fed. Reg. 48,201-48,202 (2001), Executive Order 13223 (September 14, 2001). The combination of these three items – the declared national emergency,[8] the resulting authority to order reserves to active duty under 10 U.S.C. § 12302, and the delegation of that authority to the military branches – has led to the mobilization of individual National Guard units after the September 11, 2001, terrorist attacks. However, this mobilization is limited to not more than twenty-four consecutive months.

---

[7] The proclamation provides:

> NOW, THEREFORE, I, GEORGE W. BUSH, President of the United States of America, by virtue of the authority vested in me as President by the Constitution and the laws of the United States, hereby declare that the national emergency has existed since September 11, 2001, and, pursuant to the National Emergencies Act (50 U.S.C. 1601 et seq.), I intend to utilize the following statutes: sections 123, 123a, 527, 2201(c), 12006, *and 12302 of title 10, United States Code,* and sections 331, 359, and 367 of title 14, United States Code.

Id. (emphasis added).

[8] The declaration of emergency has been renewed annually by the President. See Notice of September 10, 2002, Continuation of the National Emergency with Respect to Certain Terrorist Attacks, 67 Fed. Reg. 58,317; Notice of September 10, 2003, Continuation of the National Emergency with Respect to Certain Terrorist Attacks, 68 Fed. Reg. 53,665; Notice of September 10, 2004, Continuation of the National Emergency with Respect to Certain Terrorist Attacks, 69 Fed. Reg. 55,313; Notice of September 8, 2005, Continuation of the National Emergency with Respect to Certain Terrorist Attacks, 70 Fed. Reg. 54,229; and Notice of September 5, 2006, Continuation of the National Emergency with Respect to Certain Terrorist Attacks, 71 Fed. Reg. 52,733 ("[b]ecause the terrorist threat continues, the national emergency declared on September 14, 2001 . . . must continue in effect beyond September 14, 2006 .").

10 U.S.C. § 12302(a).[9] Plaintiff's claim that the National Guard has been fully federalized is directly undermined by this authority, because more than twenty-four consecutive months have passed since the National Guard was allegedly "fully federalized." Pl. Opp. at 2.

Finally, Mr. Pope's argument that the National Guard decisions are reviewable fails because he had been involuntarily separated from the AGR program prior to the presidentially declared national emergency. Even if plaintiff's former National Guard unit had been mobilized under 10 U.S.C. § 12302(a) as a result of the September 11, 2001, terrorist attacks, he had already been separated from that unit. Compl. ¶ 4. Accordingly, plaintiff's arguments that the National Guard decisions are reviewable in this Court fail.[10]

E. This Court Does Not Have Jurisdiction Over Plaintiff's Due Process Claims

As established in our opening brief, absent another jurisdictional basis, this Court lacks jurisdiction to hear claims based solely on alleged constitutional violations. See Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989). Plaintiff argues that the regulatory violations he alleges are sufficient to grant jurisdiction. Pl. Opp., at 15, 21. As support, plaintiff cites to Fisher. Id. However, as explained above, Fisher involved a challenge to a military board

---

[9] There is a similar statute applicable to congressionally-declared national emergencies, as opposed to presidentially-declared national emergencies. See 10 U.S.C. § 12301(a) (2005). This statute allows for a mobilization of reserve units or servicemembers to active duty for "the duration of the war or emergency and for six months thereafter." Id. However, this authority has not been used to mobilize National Guard units or servicemembers after the September 11, 2001, attacks.

[10] Plaintiff also argues that judicial review is appropriate in this case, relying on Fisher. Pl. Opp'n, at 13-15. As discussed above, such review is not appropriate where the mandatory military board of review has not occurred. The other authorities cited by plaintiff are not consistent with Federal Circuit precedent, which establishes that "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province." E.g., Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983).

of corrections determination, which is mandatory for jurisdiction in this Court. See Fisher v. United States, 402 F.3d 1167, 1170-71 (Fed. Cir. 2005). This Court "has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance." Chambers v. United States, 417 F.3d 1218, 1225 (Fed. Cir. 2005). Because Fisher does not provide another jurisdictional basis, this Court lacks jurisdiction over Mr. Pope's Due Process claims. See Hamlet, 873 F.2d at 1416.

F. Plaintiff's Purported Takings Claims Should Be Dismissed

Plaintiff now claims for the first time that he has alleged a Fifth Amendment Takings claim. Pl. Opp at 22, 30-31. Even if this Court were to be inclined to attempt to construe the complaint as including a Takings claim, it is clear that plaintiff fails to identify in that document any vested property interest that was allegedly taken.

The Takings argument advanced in plaintiff's opposition also fails because plaintiff is not able to establish a cognizable property interest in back pay, disability pay, or VA benefits within the meaning of the Takings Clause of the Fifth Amendment. The threshold step for this Court in a Takings analysis is to "determine whether the [Takings] claimant possessed a cognizable property interest in the subject of the alleged taking for purposes of the Fifth Amendment . . . ." Adams v. United States, 391 F.3d 1212, 1214 (Fed. Cir. 2004). However, as a matter of law, it is well settled that employment in the military is not a vested property interest. See Doe v. United States, 66 Fed. Cl. 165, 178 (2006) ("[E]mployment as a military officer is not a vested property interest."), aff'd Doe v. United States, 2007 WL 1073870 (Fed. Cir. Apr. 5, 2007) (unpub.); Norman v. United States, 392 F.2d 255, 259 (Ct. Cl. 1968) ("The principle is well established that there is no vested right to Federal employment or to the privileges of retirement thereby.");

Paskert v. United States, 20 Cl. Ct. 65, 77 (1990) ("Service members have no right to remain on active duty, and their rights are defined by the applicable statutes and regulations."). Because plaintiff fails to establish this threshold issue of a valid property interest, any newly stated Takings claim fails.

II. Plaintiff Fails To State A Claim Upon Which Relief Can Be Granted.

Plaintiff fails to address the substance of the Government's motion to dismiss for failure to state a claim upon which relief can be granted. Plaintiff does make a broad statement that he "has stated at least the minimum elements to show that a legitimate case does in fact exist." Pl. Opp. at 7. Plaintiff fails to address the Government's contention that the relief requested by the ADRB was beyond the authority of that board. Def. Mot. To Dismiss, at 13-14. Accordingly, plaintiff's request to be reinstated for an allegedly improper discharge should be dismissed.

CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant its motion to dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Bryant G. Snee
BRYANT G. SNEE
Deputy Director

OF COUNSEL:

s/A. Bondurant Eley
A. BONDURANT ELEY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, DC 20530
Tel: (202) 616-8254
Fax: (202) 514-8624

MAJOR JERRETT DUNLAP
United States Army Litigation Division
Military Personnel Branch
901 N. Stuart Street, Suite 400
Arlington, VA 22203-1837
Tele: (703) 696-1628
Fax: (703) 696-8126

June 4, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2007, a copy of the foregoing "Defendant's Reply in Support of Its Motion to Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ A. Bondurant Eley